Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohhlegal.com
Carolyn M. Aguilar, Esq. (SBN: 289550)
caguilar@ohhlegal.com
**ORBACH HUFF + HENDERSON LLP**
6200 Stoneridge Mall Road, Suite 225
Pleasanton, California 94588
Tel: (510) 999-7908; Fax: (510) 999-7918

Attorneys for Defendants OFFICERS JESUS MARTINEZ and KYLE GRIFFIN

HYDEE FELDSTEIN SOTO, City Attorney
SCOTT MARCUS, Chief Assistant City Attorney (SBN: 184980)
CORY M. BRENTE, Senior Assistant City Attorney (SBN: 115453)
CHRISTIAN R. BOJORQUEZ, Deputy City Attorney (SBN: 192872)
christian.bojorquez@lacity.org
200 N. Main Street, 6th Floor, City Hall East
Los Angeles, California 90012
Tel: (213) 978-7023; Fax: (213) 978-8785

Attorneys for Defendant CITY OF LOS ANGELES

ORBACH HUFF + HENDERSON LLP

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIBEL MURILLO, individually and as successor-in-interest Of The Estate of deceased, JONATHAN MURILLO-NIX,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES, a governmental entity; JESUS MARTINEZ, individually; KYLE GRIFFIN, individually; and DOES 1- 10, inclusive,<br><br>Defendants. | Case No.  22-cv-03188-DMG (SKx)<br><br>**DEFENDANTS' JOINT NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>DATE:      December 15, 2023<br>TIME:      2:00 p.m.<br>DEPT:      Courtroom 8C<br>JUDGE:   Hon. Dolly M. Gee |

# TABLE OF CONTENTS

**Page(s)**

NOTICE OF MOTION ........................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................... 4

I.    FACTUAL BACKGROUND ...................................................................... 4

II.   LEGAL ARGUMENT ................................................................................ 7

    A.    The Officers' Use of Force Was Reasonable ................................ 8

    B.    The Officers' Actions Did Not "Shock the Conscience" ............. 13

    C.    The Officers are Entitled to Qualified Immunity ........................ 15

    D.    Plaintiff's State Law Claims Fail ............................................... 17

    E.    Plaintiff's Bane Act Claim Fails ................................................ 20

    F.    The Claim for Punitive Damages is Deficient ............................ 21

III.  CONCLUSION ......................................................................................... 22

CERTIFICATE OF COMPLIANCE .................................................................. 23

ORBACH HUFF + HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Atkinson v. Cnty of Tulare,*
 790 F.Supp.2d 1188 (E.D. 2011) .................................................................. 18

*Blanford v. Sacramento County,*
 406 F.3d 1110 (9th Cir. 2005) ................................... 10, 11, 13, 16, 17

*Buchanan v. City of San Jose,*
 782 F. App'x 589 (9th Cir. 2019) ................................................................. 9

*Carter v. City of Carlsbad,*
 799 F.Supp.2d 1147 (S.D. Cal. 2011) ........................................................ 17

*Celotex Corp. v. Catrett,*
 477 U.S. 317 (1986) ...................................................................................... 7

*City & Cnty. of San Francisco v. Sheehan,*
 135 S. Ct. 1765 (2015) ........................................................................ 16, 17

*City of Escondido v. Emmons,*
 139 S. Ct. 500 (2019) .................................................................................. 16

*Cnty. of Sacramento v. Lewis,*
 523 U.S. 833 (1998) .................................................................................... 14

*Dang v. Cross,*
 422 F.3d 800 (9th Cir. 2005) ...................................................................... 21

*Est. of Hernandez v. City of Los Angeles,*
 No. 220CV04477SBKSX, 2021 WL 4139157 (C.D. Cal. Aug. 10, 2021) ........... 12, 13

*Estate of Larsen v. Murr,*
 511 F.3d 1255 (10th Cir. 2008) .................................................................. 11

*Estate of Serrano v. Trieu,*
 2016 U.S. Dist. LEXIS 37227 (N.D. Cal. Mar. 21, 2016) ..................... 11, 13

*Estate of Toribio v. City of Santa Rosa,*
 381 F.Supp.3d 1179 (N.D. Cal. 2019) ............................................ 10, 13, 17

ORBACH HUFF + HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*George v. Morris*,
  736 F.3d 829 (9th Cir. 2013) ........................................................ 9

*Glenn v. Washington County*,
  673 F.3d 864 (9th Cir. 2011) ........................................................ 9

*Gonzalez v. City of Anaheim*,
  747 F.3d 789 (9th Cir. 2014) ........................................................ 8

*Graham v. Connor*,
  490 U.S. 386 (1989) .................................................... 7, 8, 9, 12

*Groh v. Ramirez*,
  540 U.S. 551 (2004) ...................................................... 17

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ...................................................... 15

*Hayes v. County of San Diego*,
  736 F.3d 1223 (9th Cir. 2013) ................................................ 14, 15

*J.P. v. City of Porterville*,
  801 F. Supp. 965 (E.D. Cal. 2011) ........................................ 14

*Kisela v. Hughes*,
  138 S. Ct. 1148 (2018) ...................................... 10, 11, 16, 17

*McLenagan v. Karnes*,
  27 F.3d 1002 (4th Cir. 1994) ............................................ 11

*Pearson v. Callahan*,
  555 U.S. 223 (2009) ...................................................... 17

*Plumhoff v. Rickard*,
  134 S. Ct. 2012 (2014) ................................................ 12, 17

*Porter v. Osborn*,
  546 F.3d 1131 (9th Cir. 2008) ............................................ 14

*Reese v. Anderson*,
  926 F.2d 494 (5th Cir. 1991) ............................................ 11

ORBACH HUFF + HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*Reese v. Cty. of Sacramento*,
   888 F.3d 1030 (9th Cir. 2018) .................................................................21

*Rhodes v. McDaniel*,
   945 F.2d 117 (6th Cir. 1991) ..................................................................11

*Richards v. Las Vegas Metr. Police Dep't*,
   No. 22-15745, 2023 WL 2945313 (9th Cir. Apr. 14, 2023).......................10

*Richards v. Wills*,
   No. 2:19-CV-02043-JAD (BNW), 2022 WL 1128600 (D. Nev. Apr. 15, 2022) ........10

*Roy v. Inhabitants of Lewiston*,
   42 F.3d 691 (1st Cir. 1994).....................................................................11

*Ryder v. City of Topeka*,
   814 F.2d 1412 (10th Cir. 1987) ..............................................................11

*Scott v. Harris*,
   550 U.S. 372 (2007).................................................................................15

*Scott v. Henrich*,
   39 F.3d 912 (9th Cir. 1994) ......................................................................8

*Sherrod v. Berry*,
   856 F.2d 802 (7th Cir. 1988) .............................................................11, 12

*Smith v. Agdeppa*,
   81 F.4th 994 (9th Cir. 2023.) .............................................................15, 16

*Smith v. City of Hemet*,
   394 F.3d 689 (9th Cir. 2005) .............................................................10, 12

*Tennessee v. Garner*,
   471 U.S. 1 (1985).................................................................................7, 8

*Terry v. Ohio*,
   392 U.S. 1 (1975)....................................................................................8

*Thompson v. Hubbard*,
   257 F.3d 896 (8th Cir. 2001) ..................................................................12

ORBACH HUFF + HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*Watkins v. City of San Jose*,
  No. 15-CV-05786-LHK, 2017 WL 1739159 (N.D. Cal. May 4, 2017) ................. 9, 10

*Wilkinson v. Torres*,
  610 F.3d 546 (9th Cir. 2010) ........................................................................ 14

*Zion v. Cty. of Orange*,
  874 F.3d 1072 (9th Cir. 2017) ...................................................................... 15

**<u>State Cases</u>**

*Austin B. v. Escondido Union School Dist*,
  149 Cal.App.4th 860 (2007) .......................................................................... 20

*Barrett v. Superior Court*,
  222 Cal.App.3d 1176 (1990) .......................................................................... 19

*Brown v. Rensweiler*,
  171 Cal.App.4th 516 (2009) .......................................................................... 18

*Conway v. Cnty of Tuolumne*,
  231 Cal.App.4th 1005 (2014) ........................................................................ 20

*Cornell v. City & County of San Francisco*,
  17 Cal.App.5th 766 (2017) ...................................................................... 20, 21

*Doe v. Capital Cities*,
  50 Cal.App.4th 1038 (1996) .......................................................................... 20

*Hayes v. City of San Diego (Hayes II)*,
  57 Cal.4th 622 (2013) ................................................................. 7, 18, 19, 20

*Koussaya v. City of Stockton*
  54 Cal.App.5th 909 (2020) ...................................................................... 19, 20

*Mendoza v. City of West Covina*,
  206 Cal.App.4th 702 (2012) .......................................................................... 18

ORBACH HUFF + HENDERSON LLP

Defs' Joint Notice of Motion & MSJ or, in the Alternative, Partial Summary Judgment; P&A [22-cv-3188-DMG (SKx)]

# TABLE OF AUTHORITIES

Page(s)

**Federal Statutes**

42 U.S.C. section:
  1983 ................................................................................................................. 1

**State Statutes**

Civil Code section:
  52.1 ................................................................................................................. 1

Code of Civil Procedure section:
  377.60 ............................................................................................................ 19

Government Code section:
  815.2 ......................................................................................................... 2, 20
  820.2 ......................................................................................................... 2, 20

Penal Code section:
  835(a) ....................................................................................................... 19, 20

**Federal Rules**

Federal Rules of Civil Procedure:
  56(a) ............................................................................................................... 7

**Local Rules**

Local Rule:
  7-3 .................................................................................................................. 2
  11-6.1 ............................................................................................................ 23

ORBACH HUFF + HENDERSON LLP

- vi -

# NOTICE OF MOTION

PLEASE TAKE NOTICE that on December 15, 2023, at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Dolly M. Gee, United States District Court Judge, in Courtroom 8C of the above-entitled Court, Defendants CITY OF LOS ANGELES ("City") and OFFICERS JESUS MARTINEZ ("Officer Martinez" or "Officers") and KYLE GRIFFIN ("Officer Griffin" or "Officers") (collectively "Defendants") will and hereby do move this Court for Summary Judgment or, in the alternative, Partial Summary Judgment as to the entirety of Plaintiff Maribel Murillo's ("Plaintiff") claims,[1] which are as follows:

**Second Claim** – Excessive Force (42 U.S.C. § 1983)

**Fourth Claim** – Substantive Due Process (42 U.S.C. § 1983)

**Eighth Claim** – Battery (State Law/Wrongful Death)

**Ninth Claim** – Negligence (State Law/Wrongful Death)

**Tenth Claim** – Civil Rights Violation (Civil Code § 52.1)

The specific issues for adjudication include the following:

1.  Was the use of deadly force by Officers Martinez and Griffin objectively reasonable in response to the totality of the circumstances, which included Plaintiff's decedent, Jonathan Murillo-Nix ("Murillo-Nix") charging the Officers with a knife?

2.  Are Officers Martinez and Griffin entitled to qualified immunity for their decisions and implementations on the appropriateness of using lethal force to save both their lives and the lives of others in response to the imminent threat posed by Murillo-Nix?

///

///

---

[1] On November 2, 2023, the parties filed a Stipulation for Dismissal of Certain Claims, which dismissed Plaintiff's *Monell* claims (Fifth, Sixth, and Seventh Claims), Unlawful Detention and Arrest (First Claim), and Denial of Medical Care (Third Claim).

ORBACH HUFF + HENDERSON LLP

3.      Do the Officers' actions of using lethal force to defend themselves from an armed individual that is charging directly at them and who has closed to within ten feet before firing in self-defense "shock the conscience?"

4.      If the use of deadly force by the Officers was objectively reasonable, are Plaintiff's state law claims similarly precluded due to lack of a "wrongful" act?

5.      Are Plaintiff's state law claims alternatively precluded by the immunities promulgated within the Government Code, including sections 815.2(b) and 820.2?

6.      Is Plaintiff's Bane Act Claim alternatively precluded by the complete absence of any evidence to suggest that the Officers' actions were undertaken for the purpose of interfering with a protected right?

7.      Is Plaintiff's claim for punitive damages unsupported and deficient given the complete absence of any evidence to prove the Officers acted with malice, oppression, or reckless disregard toward Murillo-Nix?

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which has been ongoing, but most recently occurred on October 27, 2023.  Despite the parties' discussions, the issues raised in this Motion could not be resolved.

///
///
///
///
///
///
///
///
///

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Kevin Gilbert, Tracy Ng, and Kari Mar with the exhibits attached to each Declaration, the Separate Statement of Uncontroverted Facts, the pleadings and papers on file herein and on such oral and written material as may be presented at the hearing of this Motion.

Dated:  November 3, 2023     **ORBACH HUFF + HENDERSON LLP**

By: _/s/ Kevin E. Gilbert_
    Kevin E. Gilbert
    Carolyn M. Aguilar
    Attorneys for Defendants
    OFFICER JESUS MARTINEZ and
    OFFICER KYLE GRIFFIN

Dated:  November 3, 2023     **HYDEE FELDSTEIN SOTO**, City Attorney
                                         **SCOTT MARCUS**, Chief Asst. City Attorney
                                         **CORY M. BRENTE**, Senior Asst. City Attorney

By: _/s/ Christian Bojorquez_
    Christian Bojorquez, Deputy City Attorney
    Attorneys for Defendant
    CITY OF LOS ANGELES

ORBACH HUFF + HENDERSON LLP

Defs' Joint Notice of Motion & MSJ or, in the Alternative, Partial Summary Judgment; P&A [22-cv-3188-DMG (SKx)]

ORBACH HUFF + HENDERSON LLP

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants CITY OF LOS ANGELES ("City") and OFFICERS JESUS MARTINEZ ("Officer Martinez" or "Officers") and KYLE GRIFFIN ("Officer Griffin" or "Officers") (collectively "Defendants") submit this memorandum in support of their Joint Motion for Summary Judgment or, in the alternative, Partial Summary Judgment.

## I.   FACTUAL BACKGROUND[2]

On February 1, 2022, at 2:14 a.m., Joshua Echeverria ("Joshua"), the then-21-year-old brother of decedent Jonathan Murillo-Nix ("Murillo-Nix"), called 9-1-1 and reported, "my older brother is acting crazy right now.  He's trying to attack my dad right now with knives."  SUF1.  A minute later, Elenilson Echeverria ("Elenilson"), Murillo-Nix's stepfather, also called 9-1-1 and reported, "I need help. . .[banging sounds] . . My stepson is with knives and he said he's trying to kill everybody here at home."  SUF2.  Elenilson reported that he was "drunk, drunk, drunk . . . . But he's with two knives and he said he's going to kill everybody here."  SUF4.

Officers arrived at approximately 2:19 a.m., approximately 5 minutes after the first call was placed.  SUF5.  Immediately after arriving on site, the officers quickly began speaking with Elenilson from his open bedroom window.  SUF6.  Elenilson again informed the officers that Murillo-Nix was armed with two knives, would not let anyone out of their rooms, and was trying to kill everybody.  SUF7.  While speaking with Elenilson, Murillo-Nix could be heard banging on the door.  SUF9.  Fearing for the family's well-being, the officers quickly entered the property and went to the back of the home.  SUF10-11.  Several officers attempted to speak with Murillo-Nix to convince him to come out of the home peacefully.  SUF12.  Meanwhile, the officers also ensured that the remaining family members were evacuated, all of whom exited through the bedroom windows.  SUF13-14.

///

---

[2] The entirety of the incident was recorded through multiple videos, which are attached to the Declaration of Kevin E. Gilbert as Exhibits E-I, K-M, O-Q, and T.

Officers then established a perimeter around the residence to contain Murillo-Nix. SUF15.  The officers also set up a command post (CP) and relocated the evacuated family (Plaintiff, Elenilson, Joshua, and another son) to the CP area down the block. SUF16.  The sergeant on scene also requested an ambulance be stationed at the CP. SUF17.  The ambulance arrived on scene before 3:00 a.m.  SUF18.

From the moment the officers entered the home and over the next 79 minutes, officers, including Officer Martinez, attempted to negotiate with Murillo-Nix to come out of the house peacefully and without a weapon.  SUF19.  The officers repeatedly warned Murillo-Nix to come out unarmed or force, including deadly force, may be used.  SUF21. Murillo-Nix never complied with any of the officers' commands.  SUF22.  While the officers were attempting to negotiate with Murillo-Nix, he often made threats to his family and others, as well as threw items from the window at the front of the home. SUF23.  Several officers throughout the incident were armed with less-lethal weapons at various times, including Officer Schlesinger, Officer Gutierrez, and Officer Tykhomryov. SUF24.

At approximately 3:42 a.m. Murillo-Nix suddenly exited from the home while grasping two knives – one in each hand.  SUF25.  One was approximately 4 inches long and the other approximately 8 inches.  SUF26.  An officer called out to Murillo-Nix that they were not trying to hurt him, but that they were not going anywhere.  An announcement was also made over the police radio that Murillo-Nix had exited the residence with two knives in his hands.  SUF27.  Murillo-Nix then began running toward the front of the house, which resulted in Officer Schlesinger firing his 40mm less-lethal weapon at Murillo-Nix.  SUF28.  Murillo-Nix, however, was undeterred, and kept running toward the front driveway of the home toward additional officers.  SUF29. Officer Tykhomryov also attempted to stop Murillo-Nix's flight toward the front of the home, firing at Murillo-Nix once from his 40mm less-lethal weapon.  SUF30.

///

///

ORBACH HUFF + HENDERSON LLP

Upon seeing Murillo-Nix armed with at least one knife in his hand[3] and running toward several fellow officers, Officer Gutierrez immediately fired 3 rounds from his bean bag launcher.  SUF31.  The 40mm less-lethal and bean bag rounds were all ineffective at impeding Murillo-Nix's advance.  SUF32.

Murillo-Nix continued sprinting down the driveway toward Officers Griffin and Martinez.  SUF33.  Seeing that Murillo-Nix was still quickly advancing toward them with at least one knife in hand, Officer Griffin fired 4 rounds from his firearm at Murillo-Nix, with the first shot fired when Murillo-Nix had closed to approximately 7 feet from Officer Griffin and was continuing to advance.  SUF34.  Officer Martinez had been on the PA system, but when he saw Murillo-Nix running toward them, he dropped the microphone and grabbed his handgun.  SUF35.  Officer Martinez fired 3 shots at Murillo-Nix, with the first being fired when Murillo-Nix had closed to approximately 4 feet away and was continuing to advance.  SUF35.  Notably, all seven shots from the Officers were fired in less than 2 seconds.  SUF36.  From the moment Officer Schlesinger fired his 40mm from the back of the house at Murillo-Nix, until the last firearm was fired after Murillo-Nix ran from the rear of the house all the way to the threshold of the driveway and sidewalk at the front of the residence, only 10 seconds had elapsed.  SUF37.  Ultimately, Murillo-Nix fell at the Officers' feet, with the final shots fired when he was a mere arms-length away.

The officers called for ambulance assistance seconds after the final shot was fired.  SUF38.  While medical aid was being provided, it was discovered that Murillo-Nix was no longer holding the two knives.  The subsequent investigation revealed that one knife was dropped when one of the less-lethal rounds was fired.  The second knife was discovered in the adjacent yard, only a few feet away from where Murillo-Nix was shot.  However, the handle of the knife appeared to have exploded.  After analysis of the video from the incident and Murillo-Nix's injuries, it was discovered that one of the shots by

---

[3] Unbeknownst to the Officers at that time, Murillo-Nix had dropped one of the two knives in response to one of the less-lethal rounds.  However, both Officers received the notification that Murillo-Nix was armed with two knives as he was exiting the home.  SUF27.

ORBACH HUFF + HENDERSON LLP

either Griffin or Martinez struck Murillo-Nix's hand, causing one of the knives to be projected into the yard, splintering the handle.  SUF39.  While both of the Officers observed the knife in Murillo-Nix's hand as he was a mere 7 feet away, rushing towards them and in the lights from the police vehicle in the driveway, neither of the Officers were aware that the knife had been shot out of his hand.  While a frame-by-frame analysis of the videos show the knife being projected out of Murillo-Nix's hand and into the darkness after the Officers began shooting, it was not otherwise visible in real-time and in the dark of night.

## II.   LEGAL ARGUMENT[4]

Summary judgment is appropriate where the record, taken in the light most favorable to the opposing party, indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment must present evidence that negates an essential element of the opposing party's case or show that the opposing party does not have evidence necessary to support its case.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

In a case involving excessive force, courts examine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them."  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  This inquiry "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  *Id*. at 396, quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985).  Because "police officers are often forced to make split-second judgments," reasonableness "must be judged from the perspective of a

---

[4] In hopes of promoting judicial efficiency, and since the standards for adjudicating the state claims are essentially identical, this Motion groups Plaintiff's claims by category with the use of force claims (Second, Eighth, Ninth, and Tenth claims) addressed first, followed by Plaintiff's Substantive Due Process claim.  See *Hayes v. City of San Diego (Hayes II)*, 57 Cal.4th 622, 632 (2013), citing *Graham v. Connor*, 490 U.S. 386, 396 (1989) confirming that in determining whether an officer breached a duty of care, California Courts apply the same standards applicable in federal cases.

Defs' Joint Notice of Motion & MSJ or, in the Alternative, Partial Summary Judgment; P&A [22-cv-3188-DMG (SKx)]

ORBACH HUFF + HENDERSON LLP

reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Id.* at 396-97

(citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1975)).

Here, the Officers' conduct was objectively reasonable and thus did not violate the

Fourth Amendment.  Even assuming arguendo that their actions could possibly rise to the

level of a constitutional violation, the Officers are nonetheless entitled to qualified

immunity.  Pursuant thereto, Defendants are entitled to summary judgment as the use of

deadly force was objectively reasonable in response to Murillo-Nix's imminent threat.

## A.   The Officers' Use of Force Was Reasonable

The use of deadly force was, and always is, undesirable.  However, just because an

action is undesired does not mean it is improper.  Here, the entirety of the incident was

captured on video, which depicts Murillo-Nix armed with two knives, exiting the house

and running directly towards the Officers.  It was not until he closed to within 7 feet that

the first lethal shot was fired, with the final shot while Murillo-Nix was just an arms-

length away, ultimately falling at the Officers' feet.  In total, the Officers had under 2

seconds to evaluate and respond to Murillo-Nix's attack.  Based upon these undisputed

facts, there can be no question that the Officers were entitled to use lethal force to defend

their lives.

When evaluating a Fourth Amendment claim, "[i]t is imperative that the facts be

judged against an objective standard." *Terry*, 392 U.S. at 21.  "Factors relevant to

assessing whether an officer's use of force was objectively reasonable include 'the

severity of the crime at issue, whether the suspect poses an immediate threat to the safety

of officers or others, and whether he is actively resisting arrest or attempt to evade arrest

by flight." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014) (en banc),

quoting *Graham*, 490 U.S. at 396.  As a general rule, "[a]n officer's use of deadly force is

reasonable [ ] if the 'officer has probable cause to believe that the suspect poses a

significant threat of death or serious physical injury to the officer or others." *Scott v.*

*Henrich*, 39 F.3d 912, 914 (9th Cir. 1994), quoting *Garner*, 471 U.S. at 3 (emphasis

omitted).  "Other relevant factors include the availability of less intrusive alternatives to

ORBACH HUFF + HENDERSON LLP

- 8 -

the force employed, whether proper warnings were given and whether it should have been apparent to officers that the person they used force against was emotionally disturbed." *Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011). But the "most important" factor is "whether the suspect posed an immediate threat to the safety of the officers or others." *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) (citation omitted). Even the most cursory review of the undisputed facts – and especially the video of this incident – confirms that the Officers' actions were objectively reasonable.

Turning to the first *Graham* factor (the severity of the crime at issue), Murillo-Nix had threatened to kill his entire family. Indeed, the officers were summoned to the property only after 9-1-1 calls were placed by two separate family members. SUF1-2. Upon arrival, the officers observed a crazed Murillo-Nix, who was not only threatening the family, but also attempting to break down the bedroom doors to reach them, which resulted in the officers going so far as to extract the family out of the windows for the two bedrooms that they were hiding in. SUF9, 13. Despite the officers' extensive efforts to deescalate the situation, Murillo-Nix continued to act aggressively and issue verbal threats up until the moment of the shooting.

Next, there can be absolutely no dispute that Murillo-Nix posed an imminent threat. The Officers resorted to lethal force only after all other measures (including verbal warnings, directions to drop the knives and exit the home slowly, 40mm less-lethal rounds and bean bag rounds) had failed, and while Murillo-Nix was charging towards them with a knife in-hand. SUF12-35. Indeed, the Officers waited until Murillo-Nix was a mere 7 feet away before firing their first shot, with the final shot less than 2 seconds later, when Murillo-Nix landed at the Officers feet. SUF34-36. Courts have consistently found the use of lethal force reasonable and lawful in far less threatening situations. See *Watkins v. City of San Jose*, No. 15-CV-05786-LHK, 2017 WL 1739159, at *10 (N.D. Cal. May 4, 2017), aff'd sub nom.; *Buchanan v. City of San Jose*, 782 F. App'x 589 (9th Cir. 2019) ("Although the officers may have been in more danger if the officers had waited for Decedent to advance closer to the officers, the pace of Decedent's advance and

- 9 -

his failure to follow direct commands to drop the knife and get on the ground indicate that the officers had probable cause to believe that the suspect pose[d] a significant threat of death or serious physical injury to the officer[s].") (citation omitted).

It is well settled that "where a suspect threatens an officer with a weapon such as a gun or a knife, the officer is justified in using deadly force." *Smith v. City of Hemet*, 394 F.3d 689, 704 (9th Cir. 2005); *Kisela v. Hughes*, 138 S. Ct. 1148, 153 (2018) (reversing denial of qualified immunity where an erratic, knife-armed suspect who was hacking a tree moved toward a civilian in a perceived-threatening manner, despite officer commands to drop the knife, the officer's use of deadly force was entitled to judgment); *Richards v. Wills*, No. 2:19-CV-02043-JAD (BNW), 2022 WL 1128600, at *1 (D. Nev. Apr. 15, 2022) (shovel wielding suspect advanced on civilians), affirmed sub nom.; *Richards v. Las Vegas Metr. Police Dep't*, No. 22-15745, 2023 WL 2945313, at *1 (9th Cir. Apr. 14, 2023); *Watkins v. City of San Jose*, No. 15-CV-05786-LHK, 2017 WL 1739159, at *8 (N.D. Cal. May 4, 2017) (suspect running toward officers with a knife in his hand).  For example, in *Estate of Toribio v. City of Santa Rosa,* 381 F.Supp.3d 1179 (N.D. Cal. 2019) ("*Toribio*"), an officer fired five shots at a knife-wielding suspect, who appeared to be charging the officers.  However, it turned out the suspect had only been running to a bathroom.  *Id.* at 1189.  The court in *Toribio* nonetheless concluded that no Fourth Amendment violation occurred, despite that the officer might have mistakenly assumed the suspect was charging him.  *Id.*

This principle was also confirmed in *Blanford v. Sacramento County*, 406 F.3d 1110 (9th Cir. 2005).  After erratic conduct in a residential neighborhood, a sword-armed suspect failed to comply with officers' commands to drop the weapon, and then approached a home – beginning to pass through an outer gate before the first shot and attempting to open the garage door before the other shots.  *Id.* at 1112-1114.  The *Blanford* Court held that, even when the sword-armed suspect began to turn away from the officers' position for the third of three volleys of shots, all of the officers' uses of deadly force were reasonable because the suspect continued to wield the sword in a

ORBACH HUFF + HENDERSON LLP

threatening manner despite multiple officer commands. *Id*. at 1112-1119; see also *Kisela*, 138 S. Ct. at 1153 (citing *Blanford* with approval on use of force precedent). See also *Roy v. Inhabitants of Lewiston*, 42 F.3d 691, 696 (1st Cir. 1994) (where knife-armed suspect approached officers, use of deadly force was reasonable); *Rhodes v. McDaniel*, 945 F.2d 117, 120 (6th Cir. 1991) (where machete-armed suspect approached officers, use of deadly force was reasonable); *Estate of Larsen v. Murr*, 511 F.3d 1255, 1260-61 (10th Cir. 2008) (finding "no genuine issue of material fact" where parties disputed whether decedent, who was armed with knife and advancing on officer, was seven or twenty feet away when officer shot him; holding a "reasonable officer need not await the 'glint of steel' before taking self-protective action" because "by then, it is often too late to take safety precautions") (internal citations omitted).

A similar conclusion was reached in *Estate of Serrano v. Trieu*, 2016 U.S. Dist. LEXIS 37227 (N.D. Cal. Mar. 21, 2016). After taking notice of the fact that officers are trained that because a knife-armed suspect can so rapidly close a distance of under 21 feet, officers should treat a knife-armed suspect within 21 feet as an imminent threat of death or serious bodily injury. *Id*. at *18-20 (reviewing cases showing such training), the *Serrano* court held that where a knife-armed suspect advanced on an officer, the officer's use of deadly force was reasonable as a matter of law. *Id*. at *5-9, 14-26.

The fact that no weapon was ultimately found in Murillo-Nix's hand at the conclusion of the shooting is of no significance. For starters, the evidence confirms that the knife he was armed with at the time of the shooting was shot out of his hand. SUF38. The cases are numerous finding the use of deadly force reasonable where it is later discovered that the suspect was unarmed; reasonableness is determined based upon the information available to the officer at the time the force is applied, not based upon later-acquired information. See, e.g., *Sherrod v. Berry*, 856 F.2d 802, 804-05 (7th Cir. 1988); *McLenagan v. Karnes*, 27 F.3d 1002, 1005 (4th Cir. 1994); *Reese v. Anderson*, 926 F.2d 494, 496, 500-01 (5th Cir. 1991); *Ryder v. City of Topeka*, 814 F.2d 1412, 1421 (10th Cir. 1987). "An officer is not constitutionally required to wait until he sets eyes upon the

ORBACH HUFF + HENDERSON LLP

weapon before employing deadly force to protect himself against a fleeing suspect who turns and moves as though to draw a gun." *Thompson v. Hubbard*, 257 F.3d 896, 899 (8th Cir. 2001).  Indeed, the *Sherrod* court held that evidence the suspect was unarmed is not only irrelevant, but also inadmissible in evidence.  *Sherrod*, 856 F.2d at 805-07.

Significantly, it is well-established that the number of gunshots is irrelevant, so long as the use of deadly force was reasonable.  *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2021-22 (2014) ("if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended").  Rather, the "most important" factor under *Graham* is whether the suspect posed an "immediate threat to the safety of the officers or others."  *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005).

Presumably, Plaintiff will argue that the final shot appears to be fired as Murillo-Nix was headed to the ground.  However, that argument fails on two fronts.  First, it is based upon the 20/20 vision of hindsight, by relying on a slowed-down and enhanced video of the incident.  The High Court has expressly rejected such notions, confirming that the "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.  More importantly, just because an assailant may be ducking or dropping to the ground does not mean they are not an imminent threat.  In fact, a virtually identical argument was rejected by this Court only recently in *Est. of Hernandez v. City of Los Angeles,* No. 220CV04477SBKSX, 2021 WL 4139157, at *5 (C.D. Cal. Aug. 10, 2021).  In *Hernandez*, the Plaintiffs argued that the officer's use of lethal force was unreasonable because the second and third volley of shots (which included the fatal shots) were fired only after the decedent had fallen to the ground.  As the *Hernandez* court confirmed, just because a suspect has fallen to the ground does not mean the threat has ended.

///

///

The opinion in *Hernandez* is also instructive on how such claims should be evaluated, stating:

> "Moreover, it is important to evaluate the shooting in the real-world context in which it occurred. A judicial description of a shooting as involving "volleys" is analytically useful so long as it is not used—wittingly or unwittingly—to distort the split-second reality unfolding before the officer who has to make life-and-death decisions with imperfect information and without much time to reflect. The six shots in this case were fired in approximately six seconds. Even after the first two shots, Decedent remarkably continued to rise in the direction of the officer. The question is not whether another officer might have waited to evaluate the rising man's next move to see if he would stop, charge at the officer, or advance toward the crowd. The question is whether firing six shots under these circumstances was unconstitutional. The Supreme Court answered that question in Plumhoff: the shooting must stop when "the threat has ended." 572 U.S. at 777-78."

*Hernandez*, 2021 WL 4139157, at *5

When evaluated in light of *Hernandez* and the Supreme Court's other similar holdings, there is no question that the Officers' use of lethal force was objectively reasonable.  While the officer in *Hernandez* was 44 feet away and had at least 6 seconds to respond, the Officers here were a mere 7 feet away from Murillo-Nix and had less than 2 seconds.  Indeed, none of the cited cases involved imminent threats that were as close as Murillo-Nix, nor as rapidly evolving.

The actions of Murillo-Nix were far more egregious than those addressed in *Toribio, Trieu, Blanford*, or *Hernandez*, all of which found the use of lethal force to be objectively reasonable.  Consistent therewith, the use of lethal force by the Officers over a 2 second span and after Murillo-Nix had advanced to within 7 feet while armed and continuing to run was appropriate and summary judgment should be granted as to the Second, Eighth, Ninth, Tenth and Fourth claims, if not the entirety of Plaintiff's claims.

## B.   The Officers' Actions Did Not "Shock the Conscience"

Plaintiff's Fourth claim avers that the Officers denied them due process.  Initially, "[w]here a claim for interference with familial relationships is integrally predicated upon,

ORBACH HUFF + HENDERSON LLP

or entwined with, other conduct that is alleged to be unconstitutional, a finding that the other conduct was constitutional generally will preclude recovery for interference with familial relationship." *J.P. v. City of Porterville*, 801 F. Supp. 965, 988-989 (E.D. Cal. 2011). Assuming arguendo that a constitutional violation did occur, Plaintiff's claim still fails.

To state a substantive due process claim under the Fourteenth Amendment, a plaintiff must show that the conduct at issue "shocks the *conscience*." Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008). But if an officer is confronted with a fast-paced situation in which deliberation is not practical, his or her conduct will only shock the conscience if the act was committed with a "purpose to harm unrelated to law enforcement activities." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). "Deliberation" is not to be interpreted in the narrow, technical sense of the word used in criminal law. *Porter v. Osborn*, 546 F.3d 1131, 1140 (9th Cir. 2008), citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 851 n. 11 (1998). In a fast-paced situation, "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 836 (1998). Prior precedent has confirmed that even a five-minute altercation that ended in a shooting left no time for an officer's deliberation. *Porter*, 546 F.3d at 1139

An officer acts with a purpose to harm to "induce ... lawlessness, or to terrorize, cause harm, or kill." *Lewis*, 523 U.S. at 855. This determination requires "an appraisal of the totality of facts in a given case." *Id*. at 850. In the seconds between Murillo-Nix exiting the residence while armed with two knives, rushing directly at the officers and him ultimately coming to rest at the Officers' feet, the Officers did not have time to deliberate. They were forced to make split-second decisions to save their own lives. Further, there is no evidence that the Officers acted with a purpose to harm Murillo-Nix for reasons that were unrelated to legitimate law enforcement objectives. SUF41. *Hayes v. County of San Diego*, 736 F.3d 1223, 1230 (9th Cir. 2013). Instead, the shooting

- 14 -

ORBACH HUFF + HENDERSON LLP

served the legitimate law enforcement purpose of stopping a dangerous suspect from inflicting great bodily injury or death on another.  *See Zion v. Cty. of Orange*, 874 F.3d 1072, 1077 (9th Cir. 2017); *Hayes*, 736 F.3d at 1230-31.  Accordingly, Plaintiff's Fourth claim fails.

## C.    The Officers are Entitled to Qualified Immunity

Although the Officers' actions were objectively reasonable, they are further protected by numerous immunities.  Critically, qualified immunity shields government officials from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In analyzing whether qualified immunity applies, a Court addresses two questions: 1) did the defendant's conduct violate a constitutional right, and 2) was the right at issue clearly established, such that every reasonable officer would have understood his conduct to be improper.  *Scott v. Harris*, 550 U.S. 372, 377 (2007); *Smith v. Agdeppa,* 81 F.4th 994, 1001 (9th Cir. 2023.)  This Motion addresses the second question –whether Murillo-Nix's rights under the facts of this case were clearly established.  As stated by the Ninth Circuit:

> For a right to be clearly established, it must be "sufficiently clear that every reasonable official would understand that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015) (per curiam) (quoting *Reichle [v. Howards]*, 566 U.S. [658,] 664 [(2012)]). This is a high standard: "existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. at 12 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, (2011)).  This means that "every 'reasonable official would understand that what he is doing' is unlawful." *[D.C.] v. Wesby*, 138 S. Ct. [577] 589 [(2018)] (quoting *[Ashcroft v.] al-Kidd*, 563 U.S. [731] 741–42 [(2011)]). The "rule must be 'settled law,' which means it is dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority.'" *Wesby*, 138 S. Ct. at 589–90 (first quoting *Hunter v. Bryant*, 502 U.S. 224, 228, (1991) (per curiam); then quoting *al-Kidd*, 563 U.S. at 735). This "demanding" requirement "protects 'all but the plainly incompetent or those who knowingly violate the law'" and calls for "a high 'degree of specificity.'" *Wesby*, 138 S. Ct. at 589–91 (first quoting *Malley v. Briggs*,

ORBACH HUFF + HENDERSON LLP

475 U.S. 335, 341 (1986); then quoting *Mullenix*, 577 U.S. at 13); *see also Rivas-Villegas v. Cortesluna*, 142 S.Ct. 4, 7-8 (2021) (per curiam). *Agdeppa*, 81 F.4th at 1001–02.

As "is particularly important in excessive force cases," "the clearly established right must be defined with specificity." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). "[The Supreme Court] has repeatedly told courts . . . not to define clearly established law at a high level of generality." *Id.,* citing *Kisela v. Hughes,* 138 S. Ct. 1148, 1152 (2018). Although there appear to be no cases that squarely govern the specific facts of this case (which by itself confirms the Officers' entitlement to qualified immunity), *Kisela* and *Sheehan* are instructive and demonstrate the Officers' entitlement to qualified immunity.

In *Kisela,* officers responded to a call that a woman (Hughes) was hacking a tree with a large kitchen knife. *Kisela*, at 1151. While a woman (Chadwick) was talking to the officers, Hughes came out of the house, brandishing a large kitchen knife. *Id.* Hughes matched the description of the woman described in the call, and the officers drew their weapons and told Hughes to drop the knife. *Id.* Hughes did not comply or even acknowledge the officers' presence. *Id.* Concerned for Chadwick, one officer (Kisela) fired four times at Hughes through the fence. *Id.*

Without considering whether the officer's actions were unlawful, the Supreme Court found that the officer was entitled to qualified immunity. In reversing the Ninth Circuit, the Supreme Court noted inapposite of the Ninth Circuit's conclusion that "the most analogous Circuit precedent favors *Kisela*," citing to *Blanford. Id.* at 1153. The High Court went on to state that based on the decision in *Blanford* and the great similarities between the cases, "a reasonable officer could have believed [that the use of deadly force did not violate the Fourth Amendment] was true in the instant case."

In *Sheehan,* officers were called to a group home where a resident (Sheehan) began acting erratically and threatened to kill her social worker and closed herself in her room. *City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1770 (2015). Upon arrival,

- 16 -

ORBACH HUFF + HENDERSON LLP

the officers entered Sheehan's room, where Sheehan immediately grabbed a knife and threatened to kill the officers. *Id.* The officers retreated and closed the door again to re-assess the situation. *Id.*, at 1770-71. Concerned that Sheehan could escape and harm someone else, the officers re-entered the room and used pepper spray to try and subdue Sheehan. *Id.*, at 1771. When that proved ineffective, the officers then shot Sheehan multiple times. *Id.* Both the Ninth Circuit and Supreme Court agreed that the officers' use of force in entering Sheehan's room the second time was reasonable. *Id.* at 1775. While the High Court in *Sheehan* declined to decide whether a constitutional violation occurred, it stressed that without clearly established law providing "fair and clear warning of what the Constitution requires," the officers were entitled to qualified immunity. *Sheehan*, at 1777, 1778, citing *Plumhoff,* 572 U.S. at 779.

Even if judged in hindsight and had the Officers made a mistake or misjudged the actual threat posed by Murillo-Nix, they are nonetheless entitled to qualified immunity. The protection of qualified immunity applies regardless of whether the officer's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004). There is no telling what Murillo-Nix could or may have done if the Officers had not responded as quickly as they did – and there is no case law squarely governing the facts of this case to indicate that their actions were unlawful. In fact, as demonstrated in *Toribio, Blanford, Kisela*, and *Sheehan,* the Officers undoubtedly could have concluded their actions were lawful. Thus, they are entitled to qualified immunity, thereby precluding all of Plaintiff's federal claims as against the Officers.

### D.    Plaintiff's State Law Claims Fail

Plaintiff further asserts state law claims for negligence and battery, based upon wrongful death. Although these claims are addressed coterminous with the analogous federal claims,[5] they are subject to further defenses. Plaintiff must prove that the Officers

---

[5] State negligence, assault, and battery claims based on an excessive force theory are measured under the reasonableness standard of the Fourth Amendment. *Carter v. City of Carlsbad*, 799 F.Supp.2d 1147,

ORBACH HUFF + HENDERSON LLP

acted unreasonably under the totality of the circumstances.  *Hayes v. County of San Diego*, 57 Cal.4th 622, 639 (2014); *Brown v. Rensweiler,* 171 Cal.App.4th 516, 526-528 (2009).  When a negligence claim is made against a police officer for a use of force, the totality of circumstances test is used.  *Hayes*, 57 Cal.4th at 639.  The most important of these factors, however, is whether the suspect posed an immediate threat to the officers or others, as measured objectively under the circumstances.  *Mendoza v. City of West Covina*, 206 Cal.App.4th 702, 712 (2012).

The undisputed evidence is that the Officers used objectively reasonable force given the circumstances:  The Officers were aware Murillo-Nix was armed with at least one knife (if not two), and had made threats to kill his stepfather and others (SUF7-14, 19-23, 27); the Officers had only seconds to respond to Murillo-Nix sprinting toward them while brandishing two knives (SUF37); the Officers attempted to use less-lethal force, including a 40mm and beanbag shots, which all were ineffective at stopping or slowing Murillo-Nix (SUF29, 32); to stop the deadly imminent threat, the Officers discharged their service weapons to stop Murillo-Nix's deadly advance (SUF34-35).  Based on these undisputed facts, especially given the threat to the Officers' lives that Murillo-Nix presented, any reasonable officer would have acted the same way under the circumstances.

Under California law "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than a 20/20 vision of hindsight."  *Hayes*, 57 Cal.4th at 632.  "We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day.  What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure."  *Brown*, 171 Cal.App.4th at 528.  As long as an officer's conduct "falls within the range of

---

1164 (S.D. Cal. 2011); *Atkinson v. Cnty of Tulare*, 790 F.Supp.2d 1188, 1211 (E.D. 2011).  Accordingly, Plaintiff's state law claims fail for the same reasons that the federal claims fail.  Specifically, Plaintiff cannot present evidence that shows that that the Officers used objectively unreasonable force under all of the circumstances.

Defs' Joint Notice of Motion & MSJ or, in the Alternative, Partial Summary Judgment; P&A [22-cv-3188-DMG (SKx)]

ORBACH HUFF + HENDERSON LLP

conduct that is reasonable under the circumstances, there is no requirement that he or she choose the 'most reasonable' action or the conduct that is the least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, in order to avoid liability for negligence." *Hayes*, 57 Cal.4th at 632.  Thus, whether the Officers could or should have done something different under the circumstances is irrelevant.  The only relevant question is whether their use of force was within the range of reasonable conduct in response to the circumstances.

"A police officer's use of deadly force is reasonable if 'the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *Brown*, 171 Cal.App.4th at 528.  Accordingly, an "officer may reasonably use deadly force when he or she confronts an armed suspect in close proximity whose actions indicate an intent to attack." *Id*.  Additionally, the Officers were under no obligation to retreat from Murillo-Nix's advance and were lawfully authorized to act in defense of Murillo-Nix's intent to harm them.  Cal. Pen. Code § 835(a).

Plaintiff's state law claim for wrongful death is similarly precluded as there was no "wrongful act" as is required under Code of Civil Procedure section 377.60.  A "wrongful act" means any kind of tortious act.  *Barrett v. Superior Court*, 222 Cal.App.3d 1176, 1184 (1990).  As confirmed by one court, "a police officer's use of deadly force against a suspect will be considered reasonable where the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.  Thus, an officer may reasonably use deadly force when he or she confronts an armed suspect in close proximity whose actions indicate an intent to attack." *Koussaya v. City of Stockton,* 54 Cal.App.5th 909, 937-938 (2020), citations and internal quotes omitted.

There can be absolutely no question that the Officers' actions were reasonable.  As confirmed in the videos of the incident, the Officers were on-site for more than an hour prior to the shooting, during which they continually attempted to deescalate the situation

Defs' Joint Notice of Motion & MSJ or, in the Alternative, Partial Summary Judgment; P&A [22-cv-3188-DMG (SKx)]

through verbal discussions with Murillo-Nix.  SUF12, 19, 21, 22, 23.  Unfortunately, he refused to comply, instead deciding to attack the Officers.  With two knives in hand, he ran out of the house and charged the Officers.  SUF25, 28, 31, 33-35.  Only after the armed Murillo-Nix closed to within 7 feet did the Officers respond with lethal force as necessary to defend their own lives.  SUF34-35.  The final shot was fired less than 2 seconds later, and after Murillo-Nix had reached only an arms-length away.  SUF34-36. Consistent with *Koussaya* and Penal Code section 835(a), the Officers were entitled to use lethal force in response to Murillo-Nix's imminent threat.

Presumably, Plaintiff's retort will be that a different tactic should have been employed.  But such arguments fail.  So long as an officer's conduct falls within the range of "reasonable" conduct, there is no requirement to use the "most reasonable" action that is the least likely to cause harm.  *Koussaya* at 936.  Furthermore, a police officer's tactical decisions are subject to discretionary immunity.  Cal. Gov. Code § 820.2; *Hayes,* 57 Cal.4th at 632; *Conway v. Cnty of Tuolumne,* 231 Cal.App.4th 1005, 1018 (2014).

Finally, Plaintiff's state law claims against the City are premised solely on a respondeat superior theory, under Government Code section 815.2.  Yet the City can be liable only if the Officers are liable.  *Doe v. Capital Cities,* 50 Cal.App.4th 1038, 1054-55 (1996).  As none of the Officers' actions were unreasonable, the City cannot be held liable.  Pursuant to the foregoing, summary judgment must be granted as to all of Plaintiff's state law claims.

### E.   Plaintiff's Bane Act Claim Fails

"The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union School Dist,* 149 Cal.App.4th 860, 883 (2007).  In addition, based on *Cornell v. City & County of San Francisco,* 17 Cal.App.5th 766 (2017), the Bane Act also requires a

ORBACH HUFF + HENDERSON LLP

showing of "specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043-45 (9th Cir. 2018), quoting *Cornell*, 17 Cal.App.5th at 801.  Thus, under *Cornell* and *Reese*, to establish liability under the Bane Act, a plaintiff must show that the officer "intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances." *Reese*, 888 F.3d at 1045.

Plaintiff cannot prove either prong of the Bane Act.  First, as to whether the Officers interfered with Murillo-Nix's constitutional rights by threat, intimidation, or coercion, the answer is no.  When he was shot, Murillo-Nix was armed with a knife; he directly violated repeated commands and warning that he come out without a knife; and he had the ability and apparent intent to stab Officer Martinez and/or Officer Griffin within seconds.  SUF25, 28-35.  As Murillo-Nix had no right to come out of the house armed with a knife and pose an imminent deadly threat to the Officers and others, Plaintiff fails the first prong.

As to the second prong, Plaintiff cannot prove that the Officers intended not only the force, "but its unreasonableness, its character as more than necessary under the circumstances." *Reese*, 888 F.3d at 1045.  Each of the Officers fired within a span of less than 2 seconds to prevent Murillo-Nix from stabbing them.  SUF36.  There is no evidence to support that either Officer Martinez or Officer Griffin had a subjective intent to harm Murillo-Nix.  SUF41, 45.  Accordingly, Plaintiff's Bane Act claim fails.

## F.    The Claim for Punitive Damages is Deficient

Finally, there is no merit to any punitive damages claims because: (a) there is no evidence that the Officers acted with malice, oppression, or reckless disregard toward Murillo-Nix (SUF41, 45); and (2) the City, a public entity, cannot be liable for punitive damages under the governing law.  See *Dang v. Cross*, 422 F.3d 800, 810 (9th Cir. 2005). Should summary judgment not otherwise be granted in its entirety, Defendants request that partial summary judgment be granted, dismissing the claim for punitive damages.

///

- 21 -

## III.   CONCLUSION

For the reasons stated above, Defendants respectfully request this Motion be granted in its entirety.

Dated:  November 3, 2023     **ORBACH HUFF + HENDERSON LLP**

By: _/s/ Kevin E. Gilbert_
     Kevin E. Gilbert
     Carolyn M. Aguilar
     Attorneys for Defendants
     OFFICER JESUS MARTINEZ and
     OFFICER KYLE GRIFFIN

Dated:  November 3, 2023     **HYDEE FELDSTEIN SOTO**, City Attorney
**SCOTT MARCUS**, Chief Asst. City Attorney
**CORY M. BRENTE**, Senior Asst. City Attorney

By: _/s/ Christian Bojorquez_
     Christian Bojorquez, Deputy City Attorney
     Attorneys for Defendant
     CITY OF LOS ANGELES

Defs' Joint Notice of Motion & MSJ or, in the Alternative, Partial Summary Judgment; P&A [22-cv-3188-DMG (SKx)]

ORBACH HUFF + HENDERSON LLP

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,600 words, which complies with the word limit of L.R. 11-6.1.

Dated:  November 3, 2023        Respectfully submitted,
                                **ORBACH HUFF + HENDERSON LLP**

                                By: _/s/ Kevin E. Gilbert_
                                    Kevin E. Gilbert
                                    Carolyn M. Aguilar
                                    Attorneys for Defendants
                                    OFFICER JESUS MARTINEZ and
                                    OFFICER KYLE GRIFFIN