# EXHIBIT A

**EXHIBIT A** to the Declaration of Kevin E. Gilbert.  A true and correct copy of the audio of the first 911 call (without time stamp).

Please click on the following link:



# EXHIBIT B

**EXHIBIT B** to the Declaration of Kevin E. Gilbert.  A true and correct copy of the audio of the first 911 call (with time stamp).

Please click on the following link:



# EXHIBIT C

**EXHIBIT C** to the Declaration of Kevin E. Gilbert.  A true and correct copy of the audio of the second 911 call (without time stamp).

Please click on the following link:



# EXHIBIT D

**EXHIBIT D** to the Declaration of Kevin E. Gilbert.  A true and correct copy of the audio of the second 911 call (with time stamp).

Please click on the following link:



# EXHIBIT E

## BODY-WORN VIDEO PROPOSED TO BE FILED UNDER SEAL

**EXHIBIT E** to the Declaration of Kevin E. Gilbert.  A true and correct copy of the video from Officer Jose Mendoza's body-worn camera for the subject incident.

Please click on the following link:



# EXHIBIT F

## BODY-WORN VIDEO PROPOSED TO BE FILED UNDER SEAL

**EXHIBIT F** to the Declaration of Kevin E. Gilbert.  A true and correct copy of the video from Officer Isaac Ipsen's body-worn camera for the subject incident.

Please click on the following link:



# EXHIBIT G

## BODY-WORN VIDEO PROPOSED TO BE FILED UNDER SEAL

**EXHIBIT G** to the Declaration of Kevin E. Gilbert.  A true and correct copy of the video from Officer Cesar Barba's body-worn camera for the subject incident.

Please click on the following link:



# EXHIBIT H

## BODY-WORN VIDEO PROPOSED TO BE FILED UNDER SEAL

**EXHIBIT H** to the Declaration of Kevin E. Gilbert.  A true and correct copy of the video from Sergeant Francisco Alferez's body-worn camera for the subject incident.

Please click on the following link:



# EXHIBIT I

## BODY-WORN VIDEO PROPOSED TO BE FILED UNDER SEAL

**EXHIBIT I** to the Declaration of Kevin E. Gilbert.  A true and correct copy of the video from Officer Nicholas Knolls' body-worn camera for the subject incident.

Please click on the following link:



# EXHIBIT J

LOS ANGELES POLICE DEPARTMENT
Date: 3/24/2023 8:33:57 AM      User: N4554

PD22020100000313

## INCIDENT RECALL

| Incident | Time | Type | Pri | Dispo | Address Location | | Bldg | Apt | Caller Name Address Phone | P-Unit | Close Date/ Time | Operator |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | BEAT | TEAM/Dist AREA | | | | | | |
| PD22020100000313 | 02:15 | 245SN | 3 | BWVY DICVY RPTSY | 12935 DESMOND ST | | | | MALE | PD/16A11-W3 | 02/01/22 18:34 | N3877 |
| | | | | | 1601 | 16 | | | 213 392 0651 | Contact Complainant: No | | |

| Date | | Trans Type | Cons | Operator |
|---|---|---|---|---|
| 2/1/22 02:15:55 | Prem/Haz Check: Prem/Haz Check Title:1601 Owner Name:N. Kemp/ N2719 Auth.Empl:alferez/ 31625 Type:SPECIAL INSTRUCTIONS Description:Special Instructions Proximity:Outer Location:13070 VAUGHN ST Comment:Daniel Barajas: 9 radio calls generated at location since 2020. calls have been investigated, no crime, Subject is 5150. PLEASE DO NOT DISPATCH UNIT AND CLOSE CALL ; Title:1601 Owner Name:McConnell Residence Auth.Empl:35316/33389 Type:SPECIAL INSTRUCTIONS Description:Special Instructions Proximity:Inner Location:12938 EUSTACE ST Comment:ENTERED 02/08/20 **NUMEROUS B/O EMERGENCY CALLS AT LOCATIONS, CAUSING CODE 3 RESPONSES, DETENTION OF POSSIBLE SUSPECTS INVOLVED IN ADW/BOMB THREATS/ARMED SUSPECTS/KIDNAPPING, ETC. (POSSIBLE SWATTING). 9-1-1 ABUSE REPORT COMPLETED. IF CALL IS GENERATED FROM 818-899-3850 OR CALLER IDENTIFIES AS MCCONNELL FAMILY MEMBER SEND ACCORDINGLY, OTHERWISE DOWNGRADE ANY PRIORITY CALLS TO CODE TWO. SUSPECT IS POSSIBLY THE NEIGHBOR THAT RESIDES ACROSS THE STREET AND HAS DESCRIBED THE SUSPECT TO OPERATORS AS M/B, 16-17 YEARS THAT IS RESIDENT OF THE ADDRESS. ** NOTIFY ANY AREA SUPERVISOR TO RESPOND*** OBTAIN CALLER INFORMATION FOR ARREST. | PREM/HAZ | V41 | N3877 |
| 2/1/22 02:15:55 | Incident Created: Location: 12935 DESMOND ST Latitude: 34.28544361 Longitude -118.41444901 City: PAC Cross Streets: 11800 PHILLIPPI AV / 11800 SPROULE AV Incident Type: 245SN Priority: 3 | INC CREATE | V41 | N3877 |
| 2/1/22 02:15:55 | Comments: 747 476 2603 | CMNTS | V41 | N3877 |
| 2/1/22 02:15:55 | Jurisdiction: Area: 16, Beat: 1601, Sector: FH01 | INC CREATE | V41 | N3877 |
| 2/1/22 02:16:11 | Fixed: [PATROL] 16A11-W3#[PATROL] 16A23-W3, 16X41-W3, *16A35-W3, 16A77-W3, 16A81-W3, 16A59-W3, *16X58-W5 | REC | V69 | N6262 |
| 3/24/22 02:16:49 | Dispatch: PD/16A11-W3 | DPTCH | V69 | N6262 |
| 2/1/22 02:16:49 | Primary Unit: Primary:: PD/16A11-W3 (NULL) | PRIM UNIT | V69 | N6262 |
| 2/1/22 02:16:49 | Unit:PD/16A11-W3 Unit Status: NoNeedDisplay: False, UnitStatusChange: ER (EX) | UNIT STAT | V69 | N6262 |
| 2/1/22 02:16:49 | Unit:PD/16A11-W3 Unit Location: City: : PAC, Location:: 12935 DESMOND ST (MISSION 1) | UNIT MGMT | V69 | N6262 |
| 2/1/22 02:16:49 | Dispatch: AlarmLevel: 0, AssignedUnitsWithOfficers: PD/16A11-W3 (Officers: PD/IPSEN ISAAC, PD/MENDOZA JOSE), DispatchedTime: 2022-02-01 02:16:49 | DPTCH | V69 | N6262 |
| 2/1/22 02:16:49 | Incident Status: IncStatName: Active (Pending) | INC STAT | V69 | N6262 |
| 2/1/22 02:16:49 | Not Requested: Recommendations not requested | REC | V69 | N6262 |
| 2/1/22 02:17:04 | Comments: 16A11 C3 FILMORE/BORDEN | CMNTS | V69 | N6262 |
| 2/1/22 02:17:18 | Incident Updated: Mod Circum: EW | INC UPDT | V41 | N3877 |
| 2/1/22 02:17:18 | Comments: SUSP / BROTHER ^JONATHAN MURILLO^ M/B, 23 YRS, NFD. SUSP ARMED WITH A KNIFE ATT TO HIT PR & FAMILY, SUSP BANGING ON WALLS, UNK IF SUFFERS FROM MENTAL ILLNESS | CMNTS | V41 | N3877 |
| 2/1/22 02:17:18 | Response Message: EDGED WEAPON PROTOCOL: *DISPATCH A CODE SAM/CODE SAM 40 EQUIPPED UNIT AND SUPERVISOR ON CALLS WITH EDGED WEAPONS*[Agency/IRF] | RESP MSG | SystemDevice | SYSTEM |
| 2/1/22 02:17:27 | Comments: PHONE NUMBER INFO PUT IN ERROR BY EBO | CMNTS | V41 | N3877 |
| 2/1/22 02:17:30 | Dispatch: PD/16A23-W3 | DPTCH | V69 | N6262 |
| 2/1/22 02:17:30 | Unit:PD/16A23-W3 Unit Status: NoNeedDisplay: False, UnitStatusChange: ER (EX) | UNIT STAT | V69 | N6262 |
| 2/1/22 02:17:30 | Unit:PD/16A23-W3 Unit Location: City: : PAC, Location:: 12935 DESMOND ST | UNIT MGMT | V69 | N6262 |

CITY   0001

| Time | Description | Type | Col1 | Col2 | Col3 |
|---|---|---|---|---|---|
| 2/1/22 02:17:30 | Dispatch: AlarmLevel: 0, AssignedUnitsWithOfficers: PD/16A23-W3 (Officers: PD/GARCIA BRIAN, PD/SCHLESINGER ERIC), DispatchedTime: 2022-02-01 02:17:30 | DPTCH | V69 | N6262 | |
| 2/1/22 02:17:30 | Not Requested: Recommendations not requested | REC | V69 | N6262 | |
| 2/1/22 02:17:48 | Person 1 Added: Person 1 Added: FirstName: JOSHUA; LastName: HECHEVARIA; Phone: 747 2747295 ; | PER INFO | V41 | N3877 | |
| 2/1/22 02:17:52 | Comments: Dup: SUSP STEPSON M/B 24 YRS, BLK CLOTHING, ARMED W/KNIFE, POSS UNDER INFLUENCE OF NARCO, MAKING THREATS, ALL FAMILY MEMBERS ARE LOCKED IN THEIR ROOMS | CMNTS | M49 | N2724 | 02 |
| 2/1/22 02:17:52 | Duplicate Call: | DUP CALL | M49 | N2724 | |
| 2/1/22 02:17:52 | Person 2 Added (Duplicate Call): Person 2 Added (Duplicate Call): FirstName: MALE; Phone: 213 3920651 ; | PER INFO | M49 | N2724 | |
| 2/1/22 02:18:33 | Comments: PR LOCKED IN HIS BEDROOM | CMNTS | M49 | N2724 | |
| 2/1/22 02:18:38 | Comments: 16A11 CODE SAM/SAM 40 EQUIPPED | CMNTS | V69 | N6262 | |
| 2/1/22 02:18:43 | Dispatch (Pre-assigned): PD/16L120-W3 | DPTCH | V69 | N6262 | |
| 2/1/22 02:18:43 | Dispatch (Pre-assigned): AlarmLevel: 0, AssignedUnitsWithOfficers: PD/16L120-W3 (Officers: PD/ALFEREZ FRANCISCO), DispatchedTime: 2022-02-01 02:18:43 | DPTCH | V69 | N6262 | |
| 2/1/22 02:18:43 | Not Requested: Recommendations not requested | REC | V69 | N6262 | |
| 2/1/22 02:19:22 | Unit:PD/16A11-W3 Unit Status: UnitStatusChange: AS (ER) | UNIT STAT | V69 | N6262 | |
| 2/1/22 02:19:51 | Unit:PD/16A23-W3 Unit Status: UnitStatusChange: AS (ER) | UNIT STAT | V69 | N6262 | |
| 2/1/22 02:20:01 | Comments: CORRECTION SUSP IS INSIDE OF THE HOUSE BANGING ON THE BEDROOM DOOR, PR CANNOT SEE SUSP, PR LOCKED IN THE ROOM | CMNTS | V41 | N3877 | |
| 2/1/22 02:20:42 | Dispatch: PD/16L120-W3 | DPTCH | V69 | N6262 | |
| 2/1/22 02:20:42 | Unit:PD/16L120-W3 Unit Status: UnitStatusChange: DS (CL) | UNIT STAT | V69 | N6262 | |
| 2/1/22 02:20:42 | Unit:PD/16L120-W3 Unit Location: City: : PAC, Location:: 12935 DESMOND ST | UNIT MGMT | V69 | N6262 | |
| 2/1/22 02:20:46 | Unit:PD/16L120-W3 Unit Status: UnitStatusChange: ER (DS) | UNIT STAT | V69 | N6262 | |
| 2/1/22 02:21:03 | Comments: 16A23 MEETING W/ PR | CMNTS | V69 | N6262 | |
| 2/1/22 02:21:07 | Comments: PR TALKING TO PD THRU WINDOW | CMNTS | M49 | N2724 | |
| 2/1/22 02:21:31 | Comments: PR ADVD PD IS TALKING TO HIS STEP DAD, EBO VERIFIED WITH UNIT 16A23 ACK'D, EBO DISCONNECTED PHONE | CMNTS | V41 | N3877 | |
| 2/1/22 02:21:56 | Comments: 16A23 REQ AIR UNIT | CMNTS | V69 | N6262 | |
| 2/1/22 02:22:10 | Comments: EBO DISCONNECTED | CMNTS | M49 | N2724 | |
| 2/1/22 02:22:23 | Dispatch: PD/16A81-W3 | DPTCH | V69 | N6262 | |
| 2/1/22 02:22:23 | Unit:PD/16A81-W3 Unit Status: NoNeedDisplay: False, UnitStatusChange: AS (EX) | UNIT STAT | V69 | N6262 | |
| 2/1/22 02:22:23 | Unit:PD/16A81-W3 Unit Location: City: : PAC, Location:: 12935 DESMOND ST (MISSION 2) | UNIT MGMT | V69 | N6262 | |
| 2/1/22 02:22:23 | Dispatch: AlarmLevel: 0, AssignedUnitsWithOfficers: PD/16A81-W3 (Officers: PD/TYKHOMYROV GEORGIY, PD/BARBA CESAR), DispatchedTime: 2022-02-01 02:22:23 | DPTCH | V69 | N6262 | |
| 2/1/22 02:22:23 | Not Requested: Recommendations not requested | REC | V69 | N6262 | |
| 2/1/22 02:24:54 | Comments: 16A11 REAR OF RESD, HAVE UNITS RESPONDING RESPOND TO THE REAR OF LOC, SUSP ARMED W/ 2 KNIVES REFUSING TO EXIT RESD, | CMNTS | V69 | N6262 | |
| 2/1/22 02:25:02 | Unit:PD/16L120-W3 Unit Status: Submitted:: 2022-02-01 02:25:02, UnitStatusChange: AS (ER) | UNIT STAT | PD530177 | 31625 | |
| 2/1/22 02:26:49 | Unit:PD/16A11-W3 Unit Status: UnitStatusChange: HB (AS) | UNIT STAT | V69 | N6262 | |
| 2/1/22 02:26:57 | Dispatch: PD/16A59-W3 | DPTCH | V69 | N6262 | |
| 2/1/22 02:26:57 | Unit:PD/16A59-W3 Unit Status: NoNeedDisplay: False, UnitStatusChange: ER (CL) | UNIT STAT | V69 | N6262 | |
| 2/1/22 02:26:57 | Unit:PD/16A59-W3 Unit Location: City: : PAC, Location:: 12935 DESMOND ST | UNIT MGMT | V69 | N6262 | |
| 2/1/22 02:26:57 | Dispatch: AlarmLevel: 0, AssignedUnitsWithOfficers: PD/16A59-W3 (Officers: PD/KARPMAN ILYA, PD/OLIVARES JEAN PAU), DispatchedTime: 2022-02-01 02:26:57 | DPTCH | V69 | N6262 | |
| 2/1/22 02:26:57 | Not Requested: Recommendations not requested | REC | V69 | N6262 | |
| 2/1/22 02:27:06 | Comments: 16A11 REQ B/U 415M W/ KNIFE | CMNTS | V69 | N6262 | |
| 2/1/22 02:27:56 | Comments: 16A11 VERIFY ALL RESD EXITED LOC | CMNTS | V69 | N6262 | |
| 2/1/22 02:28:05 | Comments: 16L120 INC COMMANDER | CMNTS | V69 | N6262 | |
| 2/1/22 02:32:19 | Dispatch: PD/16A35-W3 | DPTCH | V69 | N6262 | |
| 2/1/22 02:32:19 | Unit:PD/16A35-W3 Unit Status: NoNeedDisplay: False, UnitStatusChange: ER (CL) | UNIT STAT | V69 | N6262 | |

| | | | |
|---|---|---|---|
| 2/1/22 02:32:19 | Unit:PD/16A35-W3 Unit Location: City: , Location:: 12935 DESMOND ST (FTHL STATION) | UNIT MGMT | V69 | N6262 |
| 2/1/22 02:32:19 | Dispatch: AlarmLevel: 0, AssignedUnitsWithOfficers: PD/16A35-W3 (Officers: PD/KNOLLS NICHOLAS, PD/MARTINEZ SABRINA), DispatchedTime: 2022-02-01 02:32:19 | DPTCH | V69 | N6262 |
| 2/1/22 02:32:19 | Not Requested: Recommendations not requested | REC | V69 | N6262 |
| 2/1/22 02:32:30 | Unit:PD/16A35-W3 Unit Status: UnitStatusChange: AS (ER) | UNIT STAT | V69 | N6262 |
| 2/1/22 02:34:02 | Dispatch: PD/16G60-W7 | DPTCH | V69 | N6262 |
| 2/1/22 02:34:02 | Unit:PD/16G60-W7 Unit Status: NoNeedDisplay: False, UnitStatusChange: ER (CL) | UNIT STAT | V69 | N6262 |
| 2/1/22 02:34:02 | Unit:PD/16G60-W7 Unit Location: City: : PAC, Location:: 12935 DESMOND ST | UNIT MGMT | V69 | N6262 |
| 2/1/22 02:34:02 | Dispatch: AlarmLevel: 0, AssignedUnitsWithOfficers: PD/16G60-W7 (Officers: PD/MERIDA JOSUE), DispatchedTime: 2022-02-01 02:34:02 | DPTCH | V69 | N6262 |
| 2/1/22 02:34:02 | Not Requested: Recommendations not requested | REC | V69 | N6262 |
| 2/1/22 02:34:16 | Unit:PD/16A59-W3 Unit Status: UnitStatusChange: AS (ER) | UNIT STAT | V69 | N6262 |
| 2/1/22 02:34:33 | Comments: 16L120 REQ 16G60 TO RESPOND, SETUP COMMAND POST SPROULE/DESMOND | CMNTS | V69 | N6262 |
| 2/1/22 02:34:54 | Not Requested: Recommendations not requested | REC | V69 | N6262 |
| 2/1/22 02:34:57 | Dispatch: PD/16X41-W3 | DPTCH | V69 | N6262 |
| 2/1/22 02:34:57 | Unit:PD/16X41-W3 Unit Status: NoNeedDisplay: False, UnitStatusChange: AS (CL) | UNIT STAT | V69 | N6262 |
| 2/1/22 02:34:57 | Unit:PD/16X41-W3 Unit Location: City: : PAC, Location:: 12935 DESMOND ST (HWD WY W/ 5 FWY 8WLY044) | UNIT MGMT | V69 | N6262 |
| 2/1/22 02:34:57 | Dispatch: AlarmLevel: 0, AssignedUnitsWithOfficers: PD/16X41-W3 (Officers: PD/CARLOS JOSHUA, PD/FRAZER DANIEL), DispatchedTime: 2022-02-01 02:34:57 | DPTCH | V69 | N6262 |
| 2/1/22 02:34:57 | Not Requested: Recommendations not requested | REC | V69 | N6262 |
| 2/1/22 02:36:44 | Comments: < 16L120 REQ R/A DESMOND/DRONFIELD TO STAND BY > | CMNTS | V69 | N6262 |
| 2/1/22 02:36:52 | Priority Ack'd: historyPriorityComments: 2022-02-01 02:36:44|, historyPriorityUpdates: | ACK | V75 | G9833 |
| 2/1/22 02:38:12 | Comments: FD 103/INC 107 | CMNTS | V77 | V9504 |
| 2/1/22 02:38:12 | Priority Ack'd: historyPriorityComments: 2022-02-01 02:36:44|, historyPriorityUpdates: | ACK | V77 | V9504 |
| 2/1/22 02:38:55 | Comments: 16L120 SPEAKING W/ SUSP 1 SIDE FRONT BEDROOM | CMNTS | V69 | N6262 |
| 2/1/22 02:39:10 | Unit:PD/16G60-W7 Unit Status: UnitStatusChange: AS (ER) | UNIT STAT | V69 | N6262 |
| 2/1/22 02:39:28 | Comments: CP- DESMOND/SPROULE | CMNTS | V77 | V9504 |
| 2/1/22 02:39:37 | Comments: 16G60 HAS CP SPROULE/DESMOND | CMNTS | V69 | N6262 |
| 2/1/22 02:39:53 | Unit:PD/16G60-W7 Unit Location: City: : NULL (PAC), Location:: CP DESMOND/SPROULE (12935 DESMOND ST) | UNIT MGMT | V69 | N6262 |
| 2/1/22 02:40:24 | Not Requested: Recommendations not requested | REC | V77 | V9504 |
| 2/1/22 02:40:28 | Comments: 16L120 REQ TAC, OVBT1CH41 | CMNTS | V69 | N6262 |
| 2/1/22 02:40:38 | Dispatch: PD/OVBT1CH41 | DPTCH | V77 | V9504 |
| 2/1/22 02:40:38 | Unit:PD/OVBT1CH41 Unit Status: NoNeedDisplay: False, UnitStatusChange: AS (CL) | UNIT STAT | V77 | V9504 |
| 2/1/22 02:40:38 | Unit:PD/OVBT1CH41 Unit Location: City: : PAC, Location:: 12935 DESMOND ST | UNIT MGMT | V77 | V9504 |
| 2/1/22 02:40:38 | Dispatch: AlarmLevel: 0, AssignedUnitsWithOfficers: PD/OVBT1CH41, DispatchedTime: 2022-02-01 02:40:38 | DPTCH | V77 | V9504 |
| 2/1/22 02:40:38 | Not Requested: Recommendations not requested | REC | V77 | V9504 |
| 2/1/22 02:42:05 | Not Requested: Recommendations not requested | REC | V69 | N6262 |
| 2/1/22 02:42:17 | Not Requested: Recommendations not requested | REC | V77 | V9504 |
| 2/1/22 02:42:22 | Unit:PD/16G64 Temp Unit Created: | UNIT MGMT | V69 | N6262 |
| 2/1/22 02:42:22 | Unit:PD/16G64 Unit Status: NoNeedDisplay: True, UnitStatusChange: AS (NULL) | UNIT STAT | V69 | N6262 |
| 2/1/22 02:42:22 | Dispatch: PD/16G64 | DPTCH | V69 | N6262 |
| 2/1/22 02:42:22 | Dispatch: AlarmLevel: 0, AssignedUnitsWithOfficers: PD/16G64, DispatchedTime: 2022-02-01 02:42:22 | DPTCH | V69 | N6262 |
| 2/1/22 02:42:22 | Not Requested: Recommendations not requested | REC | V69 | N6262 |
| 2/1/22 02:42:26 | Comments: DOC OFCR LEMPE NTFD | CMNTS | V77 | V9504 |
| 2/1/22 02:44:34 | Dispatch: PD/16Z45-W3 | DPTCH | V69 | N6262 |

CITY 0003

# EXHIBIT K

## BODY-WORN VIDEO PROPOSED TO BE FILED UNDER SEAL

**EXHIBIT K** to the Declaration of Kevin E. Gilbert.  A true and correct copy of the second video from Officer Jose Mendoza's body-worn camera for the subject incident.

Please click on the following link:



# EXHIBIT L

## BODY-WORN VIDEO PROPOSED TO BE FILED UNDER SEAL

**EXHIBIT L** to the Declaration of Kevin E. Gilbert.  A true and correct copy of the video from Officer Kyle Griffin's body-worn camera for the subject incident.

Please click on the following link:



# EXHIBIT M

## BODY-WORN VIDEO PROPOSED TO BE FILED UNDER SEAL

**EXHIBIT M** to the Declaration of Kevin E. Gilbert.  A true and correct copy of the video from Officer Jesus Martinez's body-worn camera for the subject incident.

Please click on the following link:



# EXHIBIT N



CONFIDENTIAL  SUBJECT TO PROTECTIVE ORDER   MURILLO V. CITY OF LA CV22-3188 DMG (SKx)

CONFIDENTIAL

CITY   0002003

CONFIDENTIAL



CONFIDENTIAL   SUBJECT TO PROTECTIVE ORDER   MURILLO V. CITY OF LA CV22-3188 DMG (SKx)

CONFIDENTIAL

CONFIDENTIAL

CITY   0002004

# EXHIBIT O

## BODY-WORN VIDEO PROPOSED TO BE FILED UNDER SEAL

**EXHIBIT O** to the Declaration of Kevin E. Gilbert.  A true and correct copy of the video from Officer Eric Schlesinger's body-worn camera for the subject incident.

Please click on the following link:



# EXHIBIT P

## BODY-WORN VIDEO PROPOSED TO BE FILED UNDER SEAL

**EXHIBIT P** to the Declaration of Kevin E. Gilbert.  A true and correct copy of the video from Officer Marcos Gutierrez's body-worn camera for the subject incident.

Please click on the following link:



# EXHIBIT Q

## BODY-WORN VIDEO PROPOSED TO BE FILED UNDER SEAL

**EXHIBIT Q** to the Declaration of Kevin E. Gilbert.  A true and correct copy of the video from Officer Georgia Tykhomyrov's body-worn camera for the subject incident.

Please click on the following link:



# EXHIBIT R

CONFIDENTIAL  SUBJECT TO PROTECTIVE ORDER   MURILLO V. CITY OF LA CV22-3188 DMG (SKx)



CONFIDENTIAL

CONFIDENTIAL

CONFIDENTIAL  SUBJECT TO PROTECTIVE ORDER   MURILLO V. CITY OF LA CV22-3188 DMG (SKx)



CONFIDENTIAL

CONFIDENTIAL

# EXHIBIT S

**EXCERPT FROM BODY-WORN VIDEO
OF KNIFE PROJECTED PROPOSED TO
BE FILED UNDER SEAL**

**EXHIBIT S**



# EXHIBIT T

## BODY-WORN VIDEO PROPOSED TO BE FILED UNDER SEAL

**EXHIBIT T** to the Declaration of Kevin E. Gilbert.  A true and correct copy of the second video from Sergeant Francisco Alferez's body-worn camera for the subject incident.

Please click on the following link:



# EXHIBIT U

**MARIBEL MURILLO vs CITY OF LOS ANGELES, ET AL.**
**Jesus Martinez on 09/27/2023**

```
1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3

4    MARIBEL MURILLO,                    )
                                         )
5                   Plaintiff,           )
                                         )
6              vs.                       )Case No.
                                         )2:22-CV-03188-DMG-SK
7    CITY OF LOS ANGELES, et al.,        )
                                         )
8                   Defendants.          )
     _____)
9

10

11

12

13

14          REMOTE VIDEOCONFERENCE DEPOSITION OF

15                    JESUS MARTINEZ

16             WEDNESDAY, SEPTEMBER 27 2023

17

18

19

20

21

22

23   Reported Stenographically By:

24   Jinna Grace Kim, CSR No. 14151

25   Job No.:  11199
```

**MARIBEL MURILLO vs CITY OF LOS ANGELES, ET AL.**
**Jesus  Martinez on 09/27/2023**                                      **Page 2**

```
 1                    UNITED STATES DISTRICT COURT

 2                    CENTRAL DISTRICT OF CALIFORNIA

 3

 4   MARIBEL MURILLO,                      )
                                          )
 5              Plaintiff,                 )
                                          )
 6              vs.                        )Case No.
                                          )2:22-CV-03188-DMG-SK
 7   CITY OF LOS ANGELES, et al.,          )
                                          )
 8              Defendants.                )
     _____ )
 9

10

11

12

13

14          The remote videoconference deposition of JESUS

15   MARTINEZ, taken on behalf of the Plaintiff, beginning at

16   10:13 a.m., and ending at 12:40 p.m., on Wednesday, September

17   27, 2023, before Jinna Grace Kim, Certified Stenographic

18   Shorthand Reporter No. 14151.

19

20

21

22

23

24

25
```

MARIBEL MURILLO vs CITY OF LOS ANGELES, ET AL.
Jesus  Martinez on 09/27/2023                              Page 3

```
 1      APPEARANCES OF COUNSEL:

 2
        For the Plaintiffs:
 3
                   LAW OFFICES OF DALE K. GALIPO
 4                 BY:  DALE K. GALIPO, ESQ.
                   BY:  MARCEL F. SINCICH, ESQ.
 5                 21800 Burbank Boulevard, Suite 310
                   Woodland Hills, California 91367
 6                 Tel:  818-347-3333
                   Fax:  818-347-4118
 7                 E-mail:  dalekgalipo@yahoo.com
                   E-mail:  msinsich@galipolaw.com
 8

 9                 THE SEHAT LAW FIRM, PLC
                   BY:  CAMERON SEHAT, ESQ.
10                 5100 Campus Drive, Suite 200
                   Newport Beach, California 92660
11                 Tel:  949-825-5200
                   Fax:  949-825-5200
12                 E0mail:  cameron@sehatlaw.com

13

14      For the Defendants:

15                 CITY OF LOS ANGELES
                   BY:  CHRISTIAN R. BOJORQUEZ, ESQ.
16                 City Hall East
                   200 N. Main Street, 6th Floor
17                 Los Angeles, California 90012
                   Tel:  213-978-7068
18                 Fax:  213-978-8785
                   E-mail:  caroline.castillo@lacity.org
19

20
                   ORBACH HUFF & HENDERSON LLP
21                 BY:  KEVIN E. GILBERT, ESQ.
                   6200 Stoneridge Mall Road, Suite 225
22                 Pleasanton, California 94588
                   Tel:  510-999-7908
23                 Fax:  510-999-7918
                   E-mail:  kgilbert@ohhlegal.com
24

25
```

MARIBEL MURILLO vs CITY OF LOS ANGELES, ET AL.
Jesus Martinez on 09/27/2023                                      Page 4

```
 1                          INDEX

 2    WITNESS:                                        PAGE

 3    JESUS MARTINEZ

 4       BY: MR. GALIPO                                  5

 5
                           EXHIBITS
 6
      MARKED FOR IDENTIFICATION                       PAGE
 7
                         (None)
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                        CALIFORNIA

 2              WEDNESDAY, SEPTEMBER 27, 2023

 3                       10:13 A.M.

 4                     JESUS MARTINEZ,

 5   called as a witness on behalf of the Plaintiff, having been

 6   first duly sworn remotely via videoconference, was examined

 7   and testified as follows:

 8                      EXAMINATION

 9   BY MR. GALIPO:

10       Q.   Can you please state your name.

11       A.   Jesus Martinez.

12       Q.   Are you able to hear me okay so far?

13       A.   Yes, sir.

14       Q.   If you have any trouble hearing me at any time, will

15   you please let me know?

16       A.   I will, yes, sir.

17       Q.   I'll try to ask questions that you can understand,

18   but if I ask you a question and for some reason you do not

19   understand it, please let me know, and I'll try to ask it in

20   a better way.

21       A.   Yes, sir.

22       Q.   I usually go about an hour and then take a break for

23   everyone including our court reporter, but if you feel you

24   need a break at any time before that for any reason, you just

25   let me know, and then we'll take a break when you want one.
```

1      A.   He was also to my right, to the east of my

2   position.

3      Q.   In between the time you heard the 40-millimeter and

4   the time you fired your first shot, do you understand the

5   time frame I'm asking about?

6           In between hearing the 40 and you firing.

7           I know it's a short time, but that's the time period

8   I want to ask a few questions about.

9           Okay?

10     A.   Okay.

11     Q.   Did you give any commands during that time period in

12   between the 40 and you firing?

13     A.   Yes, I did.

14     Q.   And what commands did you give?

15     A.   I was communicating with the suspect, Murillo, to

16   surrender peacefully.

17     Q.   I just want to make sure you understand the time

18   frame correctly.  I'm not talking about before you heard the

19   40-millimeter because I know you were trying to communicate

20   with him before that.

21           I'm talking about after you heard the 40-millimeter.

22           Are you with me?

23     A.   Yes.

24     Q.   So you're saying that after you heard the

25   40-millimeter, you told the suspect -- what exactly?

```
 1              What words did you use?

 2       A.    I continued to try to communicate with the suspect,

 3   and I told him to surrender peacefully.  The exact verbiage I

 4   don't recall, but I kept an open communication with him.

 5       Q.    Did you give him any command like "Drop it," for

 6   example?

 7       A.    No, sir.

 8       Q.    Did you give him a command like "Get on the ground?"

 9       A.    I did not.

10       Q.    Did you tell him to stop?

11       A.    I communicated with him to surrender peacefully and

12   we weren't trying to hurt him, and we were there to help

13   him.

14       Q.    And this is after you heard the 40-millimeter?

15       A.    Yes, sir.

16       Q.    Did you give him any verbal warning you were

17   going to fire or use deadly force?

18       A.    Throughout the 45 minutes to an hour, I communicated

19   with Murillo that we were there to help him and to find some

20   kind of help for him; that his family loved him and that we

21   didn't want to hurt him.

22       Q.    So I'm asking kind of a specific question.

23             You have training, I'm assuming, or have had

24   training with respect to the use of deadly force?

25       A.    Yes, sir.
```

**MARIBEL MURILLO vs CITY OF LOS ANGELES, ET AL.**
**Jesus  Martinez on 09/27/2023**                                    Page 28

1      Q.   Now, did you have some type of a mic in your hand?

2      A.   I had the mic from the vehicle's PA in my left hand,

3   yes.

4      Q.   And is that what you were using to try to

5   communicate with Mr. Murillo?

6      A.   Yes.

7      Q.   And you would have been behind the passenger door at

8   that time?

9      A.   Yes.

10      Q.   And you were using that door -- I think you told us

11   as cover?

12      A.   Yes, correct.

13      Q.   And is that about the time that you saw Mr. Murillo

14   cross in front of the spotlight?

15      A.   That's the first time I saw him, yes.

16      Q.   And the spotlight, was it coming from the passenger

17   side of your car?

18      A.   It's on the passenger side in front of the door,

19   yes, sir, next to the --

20           MR. SINCICH:  Sorry to interrupt, Dale.

21           I have the transcript if you need it.

22           MR. GALIPO:  Okay.  We're going to look at Pages 6

23   and 7 in a moment.  So thank you, Marcel.  Just stand by.

24   BY MR. GALIPO:

25      Q.   Go ahead.  I'm sorry, Officer.

 1   hands tucked in under his body, and we don't have a clear --

 2   I don't have a clear view of his hand.

 3       Q.   I get that.  I'm just wondering, you're not saying

 4   he posed an immediate threat of death when he was on the

 5   ground with his hands tucked underneath him and you couldn't

 6   see a knife, are you?

 7       A.   At that point he wasn't an imminent threat; he's

 8   still a threat.

 9       Q.   Okay.  He's a threat, but not an imminent threat of

10   death or serious bodily injury; is that fair?

11       A.   He's a threat until he's taken into custody.

12       Q.   But not an imminent threat of death or serious

13   bodily injury; is that what you're saying?

14           MR. GILBERT:  Vague as to the specific moment

15   totality of the circumstances being referenced.

16           Go ahead.

17           THE WITNESS:  Based on the totality, trying to

18   communicate with Murillo for 45 minutes, the statements he

19   was giving that he wanted to hurt people, hurt officers, the

20   radio call itself, him armed with two knives, we don't know

21   what is in that room; I don't know what's on his person.

22           He could have a gun; may not.  Him running out of

23   the door with two knives in his hand, failing to comply after

24   we told him to raise his hands and come out with no weapons,

25   he's still a threat even on the ground until he's taken into

 1    custody.

 2    BY MR. GALIPO:

 3        Q.    Okay.  First of all, how many knives did you see?

 4        A.    I saw one knife, sir.

 5        Q.    Okay.  We're probably spending way too much time on

 6    this, but I'm simply trying to ask you:  Based on what you

 7    observed and all the information you had, did you think it

 8    was appropriate to shoot him when he was on the ground?

 9              MR. GILBERT:  Vague as to time and specific

10    circumstances.

11              Go ahead.

12              THE WITNESS:  Are you asking me if it was

13    appropriate to shoot him?

14    BY MR. GALIPO:

15        Q.    When he was on the ground.

16        A.    While he was on the ground it was -- I waited until

17    he was taken into custody.

18        Q.    You're not -- that's not what I'm asking you.

19              I'm asking you:  Did you think it was appropriate to

20    shoot him when he was on the ground?

21              I'm not saying whether you did or not.

22              I'm just wondering whether you thought based on your

23    training, it would have been appropriate to shoot him when he

24    was on the ground.

25              MR. GILBERT:  Vague as to the specific moment and

 1  circumstances.

 2        Go ahead.

 3        THE WITNESS:  No, sir.  I -- I waited there until he

 4  was taken into custody while he was on the ground.  My third

 5  round was shot as he's running through my door hunched over

 6  directly at my -- at my position.

 7  BY MR. GALIPO:

 8     Q.   Okay.  All right.

 9        Now, after the shooting do you ever recall him being

10  on his back?

11     A.   I don't recall, no, sir.

12     Q.   Do you recall his hands being visible when he was on

13  his back on the ground?

14     A.   Maybe when he was taken into custody and he was

15  placed in recovery position.

16     Q.   Do you recall a shot going off while he was on his

17  back on the ground with his hands visible after he went to

18  the ground?

19     A.   No, I don't recall that.

20     Q.   Okay.  So we're going to try to play now Exhibit --

21  I guess we'll call it Exhibit 1.

22        I think this is the body-worn camera footage from

23  Officer Griffin that you have reviewed.

24        And let's see if we can play a relevant portion.

25        And I may tell Alejandro to stop at particular time.

```
 1                        CERTIFICATE

 2                           OF

 3          CERTIFIED STENOGRAPHIC SHORTHAND REPORTER

 4

 5          I, JINNA GRACE KIM, CSR No. 14151, a Certified

 6   Stenographic Shorthand Reporter of the State of California,

 7   do hereby certify:

 8          That the foregoing proceedings were taken before me

 9   at the time and place herein set forth;

10          That any witnesses in the foregoing proceedings,

11   prior to testifying, were placed under oath;

12          That a verbatim record of the proceedings was made

13   by me, using machine shorthand, which was thereafter

14   transcribed under my direction;

15          Further, that the foregoing is an accurate

16   transcription thereof.

17          I further certify that I am neither financially

18   interested in the action, nor a relative or employee of any

19   attorney of any of the parties.

20

21          IN WITNESS WHEREOF, I have subscribed my name, this

22   date:  September 27, 2023.

23

24                         Jinna Grace Kim, CSR No. 14151

25
```

# EXHIBIT V

**MARIBEL MURILLO vs CITY OF LOS ANGELES, ET AL.**
**Kyle Griffin on 09/27/2023**

```
 1                 UNITED STATES DISTRICT COURT

 2                 CENTRAL DISTRICT OF CALIFORNIA

 3

 4   MARIBEL MURILLO,                    )
                                         )
 5              Plaintiff,               )
                                         )
 6              vs.                      )Case No.
                                         )2:22-CV-03188-DMG-SK
 7   CITY OF LOS ANGELES, et al.,        )
                                         )
 8              Defendants.              )
     _____)
 9

10

11

12

13

14          REMOTE VIDEOCONFERENCE DEPOSITION OF

15                     KYLE GRIFFIN

16           WEDNESDAY, SEPTEMBER 27 2023

17

18

19

20

21

22

23   Reported Stenographically By:

24   Jinna Grace Kim, CSR No. 14151

25   Job No.:  11199
```

**MARIBEL MURILLO vs CITY OF LOS ANGELES, ET AL.**
**Kyle  Griffin on 09/27/2023**                                     **Page 2**

```
 1                  UNITED STATES DISTRICT COURT

 2                  CENTRAL DISTRICT OF CALIFORNIA

 3

 4   MARIBEL MURILLO,                    )
                                         )
 5              Plaintiff,               )
                                         )
 6              vs.                      )Case No.
                                         )2:22-CV-03188-DMG-SK
 7   CITY OF LOS ANGELES, et al.,        )
                                         )
 8              Defendants.              )
     _____)
 9

10

11

12

13

14         The remote videoconference deposition of KYLE

15   GRIFFIN, taken on behalf of the Plaintiff, beginning at 1:30

16   p.m., and ending at 3:30 p.m., on Wednesday, September 27,

17   2023, before Jinna Grace Kim, Certified Stenographic

18   Shorthand Reporter No. 14151.

19

20

21

22

23

24

25
```

```
 1     APPEARANCES  OF  COUNSEL:

 2
       For  the  Plaintiffs:
 3
                   LAW  OFFICES  OF  DALE  K.  GALIPO
 4                 BY:   DALE  K.  GALIPO,  ESQ.
                   BY:   MARCEL  F.  SINCICH,  ESQ.
 5                 21800  Burbank  Boulevard,  Suite  310
                   Woodland  Hills,  California  91367
 6                 Tel:   818-347-3333
                   Fax:   818-347-4118
 7                 E-mail:  dalekgalipo@yahoo.com
                   E-mail:  msinsich@galipolaw.com
 8

 9                 THE  SEHAT  LAW  FIRM,  PLC
                   BY:   CAMERON  SEHAT,  ESQ.
10                 5100  Campus  Drive,  Suite  200
                   Newport  Beach,  California  92660
11                 Tel:   949-825-5200
                   Fax:   949-825-5200
12                 E0mail:  cameron@sehatlaw.com

13

14     For  the  Defendants:

15                 CITY  OF  LOS  ANGELES
                   BY:   CHRISTIAN  R.  BOJORQUEZ,  ESQ.
16                 City  Hall  East
                   200  N.  Main  Street,  6th  Floor
17                 Los  Angeles,  California  90012
                   Tel:   213-978-7068
18                 Fax:   213-978-8785
                   E-mail:  caroline.castillo@lacity.org
19

20                 ORBACH  HUFF  &  HENDERSON  LLP
21                 BY:   KEVIN  E.  GILBERT,  ESQ.
                   6200  Stoneridge  Mall  Road,  Suite  225
22                 Pleasonton,  California  94588
                   Tel:   510-999-7908
23                 Fax:   510-999-7918
                   E-mail:  kgilbert@ohhlegal.com
24

25
```

```
 1                            INDEX

 2   WITNESS:                                          PAGE

 3   KYLE GRIFFIN

 4      BY: MR. GALIPO                                    5

 5
                           EXHIBITS
 6
     MARKED FOR IDENTIFICATION                         PAGE
 7
                          (None)
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                         CALIFORNIA

 2                WEDNESDAY, SEPTEMBER 27, 2023

 3                         1:30 P.M.

 4                         KYLE GRIFFIN,

 5    called as a witness on behalf of the Plaintiff, having been

 6    first duly sworn remotely via videoconference, was examined

 7    and testified as follows:

 8                         EXAMINATION

 9    BY MR. GALIPO:

10        Q.   Can you please state your name.

11        A.   Yes.  My name is Kyle Griffin.

12        Q.   Are you able to hear me okay so far?

13        A.   Yes.

14        Q.   And just keep your voice up a little bit if you

15    could because I just want to make sure the court reporter can

16    hear you.

17             Did you sit-in on the last deposition?

18        A.   Yes.

19        Q.   How long have you been a police officer?

20        A.   Since 2015.

21        Q.   What did you do for work before you were a police

22    officer?

23        A.   Briefly I was going to COC to study criminal

24    justice, and prior to that I was in the military.

25        Q.   What branch were you in?
```

**MARIBEL MURILLO vs CITY OF LOS ANGELES, ET AL.**
Kyle  Griffin on 09/27/2023                                      Page 35

```
1       Q.   Right.  And at least your determination was, you did

2   not need to; is that correct?

3       A.   Yes.

4       Q.   Did you think from your perspective it was

5   appropriate -- I'm not saying you did this, but was

6   appropriate to shoot at Mr. Murillo as he was falling to the

7   ground?

8            MR. GILBERT:  Incomplete hypothetical; speculation.

9            Go ahead.

10           THE WITNESS:  I believed that the entire time he was

11  advancing towards us even as he was going towards the ground.

12  The last thing that I saw was him tucking his hands into his

13  person, making it hard for me to see exactly where the knives

14  were.  I believed he still had the knife, and he still could

15  have reached out to anyone that was within arms' reach of him

16  and cause serious bodily injury or death.

17  BY MR. GALIPO:

18       Q.   Did you think from your perspective it was

19  appropriate to shoot him once he was on the ground?

20           Again, I'm not saying you did, but just from

21  what you observed.

22           MR. GILBERT:  Vague as to specific moment being

23  referenced and incomplete hypothetical.

24           Go ahead.

25           THE WITNESS:  I believed that there was imminent
```

1    threat of death or serious bodily injury throughout all the

2    rounds that were fired including the one that I heard.

3    BY MR. GALIPO:

4        Q.   My question was a little different.

5             My question was whether you think that there was an

6    imminent threat of death or serious bodily injury when he was

7    on the ground, and you could not see a knife?

8        A.   At which point are we talking about is that?

9        Q.   When he was on the ground on his back and you could

10   not see a knife, did you think there was an immediate threat

11   of death at that moment?

12            MR. GILBERT:  Vague as to the specific moment.

13            Go ahead.

14            THE WITNESS:  After all the rounds were fired

15   between myself and Officer Martinez, it's hard to ascertain.

16   For me there was -- I didn't know a 100 percent where

17   everyone was, and I think throughout the time that all the

18   rounds were fired as Mr. Murillo was towards us and going

19   towards the ground, it appeared that he was lunging towards

20   us.  And so as all the rounds were being fired, there was an

21   imminent threat.

22   BY MR. GALIPO:

23       Q.   I'm trying to ask you a different question.

24            I get what you're saying.  I understand very well.

25            But I'm asking you this:  Once he was on the ground,

1          Go ahead.

2              THE WITNESS:  Immediately before firing I observed

3    the knife in his hand, and as I was assessing he tucked his

4    hands close to his body.  And at some point he was as he was

5    leaning forward, I was unable to see his hands, but I still

6    believed that the knife was in his hands.

7    BY MR. GALIPO:

8        Q.   What I'm asking you is while you were firing your

9    shots.

10             Not before, not what you thought.

11             What you could see; could you see the knife while

12   you were firing your shots?

13       A.   I believed because I didn't -- the last thing I saw

14   was the knife in his hand, and as he was leaning forward, I

15   never saw any motion that would cause me to believe that the

16   knife was no longer in his hands.

17       Q.   I'm not asking what you believed or what you

18   thought.

19             I'm asking you a simple question.

20             Could you see the knife while you were firing your

21   shots?

22             Not what you thought, not what you believed, not

23   what you saw before.

24             I'm only asking you if you could see the knife

25   during your shots.

```
 1                      CERTIFICATE

 2                          OF

 3         CERTIFIED STENOGRAPHIC SHORTHAND REPORTER

 4

 5         I, JINNA GRACE KIM, CSR No. 14151, a Certified

 6  Stenographic Shorthand Reporter of the State of California,

 7  do hereby certify:

 8         That the foregoing proceedings were taken before me

 9  at the time and place herein set forth;

10         That any witnesses in the foregoing proceedings,

11  prior to testifying, were placed under oath;

12         That a verbatim record of the proceedings was made

13  by me, using machine shorthand, which was thereafter

14  transcribed under my direction;

15         Further, that the foregoing is an accurate

16  transcription thereof.

17         I further certify that I am neither financially

18  interested in the action, nor a relative or employee of any

19  attorney of any of the parties.

20

21         IN WITNESS WHEREOF, I have subscribed my name, this

22  date:  September 27, 2023.

23

24                       _____
                         Jinna Grace Kim, CSR No. 14151

25
```