1  **LAW OFFICES OF DALE K. GALIPO**
   Dale K. Galipo, SBN 144074 (*lead counsel*)
2  dalekgalipo@yahoo.com
   Marcel F. Sincich (SBN 319508)
3  msincich@galipolaw.com
   21800 Burbank Boulevard, Suite 310
4  Woodland Hills, California 91367
   Tel:   (818) 347-3333
5  Fax:   (818) 347-4118

6  **THE SEHAT LAW FIRM, PLC**
   Cameron Sehat, Esq. (SBN 256535)
7  cameron@sethatlaw.com
   5100 Campus Dr., Suite 200
8  Newport Beach, CA 92660
   Tel:   (949) 825-5200
9  Fax:   (949) 313-5001

10 *Attorneys for Plaintiff*
   MARIBEL MURILLO

11

12                  **UNITED STATES DISTRICT COURT**

13                  **CENTRAL DISTRICT OF CALIFORNIA**

14

15 MARIBEL MURILLO, individually        Case No.: 2:22-cv-03188 DMG (SKx)
   and as successor-in-interest of the
16 estate of deceased, JONATHAN         [*Honorable Dolly M. Gee*]
   MURILLO-NIX,                         *Magistrate Judge Steve Kim*
17
                 Plaintiff,            **PLAINTIFF'S POINTS AND**
18                                     **AUTHORITIES IN OPPOSITION**
         vs.                           **TO DEFENDANTS' MOTIONS FOR**
19                                     **SUMMARY JUDGMENT**
   CITY OF LOS ANGELES, a
20 governmental entity; JESUS          [Separate Statement of Genuine
   MARTINEZ, individually; KYLE        Disputes and Additional Material Facts;
21 GRIFFIN, individually; and DOES 1-  Objections to Defendants Separate
   10, inclusive,                      Statement; Declaration of Marcel F.
22                                     Sincich and attached exhibits;
                                       Declaration of Dr. Omalu Declaration of
23               Defendants.           Roger Clark*; filed concurrently*
                                       *herewith*]
24
                                       MSJ Date:     December 15, 2023
25                                     Time:         2:00 p.m.
                                       Judge:        Hon. Dolly M. Gee
26                                     Courtroom     8C, 8th Floor

27

28

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.     INTRODUCTION ....................................................................................... 1

II.    RELEVANT FACTS ................................................................................ 1

III.   STANDARD UNDER RULE 56 ................................................................ 3

IV.   DEFENDANTS USED EXCESSIVE DEADLY FORCE AFTER
EFFECTIVE LESS-LETHAL FORCE CAUSED THE UNARMED
MURILLO TO COLLAPSE TO THE GROUND .......................................... 5

    A.    The Nature and Quality of the Intrusion—Deadly Force—Is
Unparalleled and Was Unnecessary ............................................ 6

    B.    Government Interest Weigh in Favor of Finding that Defendants'
Deadly Force Was Excessive ....................................................... 6

    C.    Plaintiff's Interference with Familial Relationship Claim
Survives ................................................................................... 12

    D.    Defendants are Not Entitled to Qualified Immunity ..................... 13

V.    PLAINTIFF'S STATE LAW CLAIMS SURVIVE ...................................... 19

VI.   PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES ............................. 20

VII.  CONCLUSION ....................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*A.K.H. ex rel. Landeros v. City of Tustin*,
    837 F.3d 1005 (9th Cir. 2016) ................................................6, 8, 19

*Adickes v. S.H. Kress & Co.*,
    398 U.S. 144 (1970) ........................................................................4

*Anderson v. Creighton*,
    483 U.S. 635 (1987) ........................................................................5

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................4

*Blanford v. Sacramento County*,
    406 F.3d 1110 (9th Cir. 2005) ........................................................6

*Blankenhorn v. City of Orange*,
    485 F.3d 463 (9th Cir. 2007) ..........................................................6

*Brandon v. Holt*,
    469 U.S. 464 (1985) ......................................................................21

*Bryan v. MacPherson*,
    630 F.3d 805 (9th Cir. 2010) ..................................................6, 7, 11

*C.V. by & through Villegas v. City of Anaheim*,
    823 F.3d 1252 (9th Cir. 2016) ......................................................16

*Carmen v. S.F. Unified Sch. Dist.*,
    237 F.3d 1026 (9th Cir. 2001) ........................................................2

*Cary v. Great Northern R.R. Co.*,
    467 F.2d 1287 (9th Cir. 1972) ........................................................2

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................4

*Chew v. Gates*,
    27 F.3d 1432 (9th Cir. 1994) ..........................................................6

*Cousins v. Lockyer*,
    568 F.3d 1063 (9th Cir. 2009) ......................................................21

*Curnow v. Ridgecrest Police*,
    952 F.2d 321 (9th Cir. 1991) ..................................................13, 17

*Davis v. City of Las Vegas*,
    478 F.3d 1048 (9th Cir. 2007) ......................................................14

*Deorle v. Rutherford*,
    272 F.3d 1272 (9th Cir. 2001) ......................................................14

*Drummond v. City of Anaheim*,
  343 F.3d 1052 (9th Cir. 2003) ................................................................. 7

*Est. of Aguirre v. Cnty. of Riverside*,
  29 F.4th 624 (9th Cir. 2022) .......................................................... 15, 16

*George v. Morris*,
  736 F.3d 829 (9th Cir. 2013) ................................................... 8, 13, 18

*Glenn v. Washington County*,
  673 F.3d 864 (9th Cir. 2011) ......................................... 5, 7, 13, 14

*Green v. City and Cty. of San Francisco*,
  751 F.3d 1039 (9th Cir. 2014) ........................................................... 14

*Harris v. Roderick*,
  126 F.3d 1189 (9th Cir. 1997) .................................................. 13, 17

*Hayes v. County of San Diego*,
  57 Cal.4th 622 (2013) ........................................................... 17, 20

*Hervey v. Estes*,
  65 F.3d 784 (9th Cir. 1995) ............................................................ 21

*Hilao v. Estate of Marcos*,
  103 F.3d 767 (9th Cir. 1996) ........................................................... 21

*Isayeva v. Sacramento Sheriff's Dep't*,
  872 F.3d 938 (9th Cir. 2017) ............................................................. 7

*Johnson v. Bay Area Rapid Transit Dist.*,
  724 F.3d 1159 (9th Cir. 2013) ......................................................... 21

*Khademi v. S. Orange Cty. Cmty. Coll. Dist.*,
  194 F. Supp. 2d 1011 (C.D. Cal. 2002) ............................................ 2

*Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*,
  841 F.2d 872 (9th Cir. 1987) ............................................................. 4

*Lam v. City of Los Banos*,
  976 F.3d 986 (9th Cir.2020) ........................................................... 19

*Longoria v. Pinal County*,
  873 F.3d 699 (9th Cir. 2017) ........................................................... 19

*Lopez v. Gelhaus*,
  871 F.3d 998 (9th Cir. 2017) ..................................................... passim

*Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ......................................................................... 4

*Medina v. Cram*,
  252 F.3d 1124 (10th Cir. 2001) ...................................................... 18

*Mullenix v. Luna*,
   577 U.S. ___, 136 S. Ct. 305 (2015) ...................................................16

*Munoz v. City of Union City*,
   120 Cal.App.4th 1077 (2004) ...........................................................21

*Nelson v. City of Davis*,
   685 F.3d 867 (9th Cir. 2012) ..............................................................7

*Novato Fire Prot. Dist. v. United States*,
   181 F.3d 1135 (9th Cir. 1999) ...........................................................21

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ...................................................................15, 16

*S.R. Nehad v. Browder*,
   929 F.3d 1125 (9th Cir. 2019) .........................................................5, 7

*Santos v. Gates*,
   287 F.3d 846 (9th Cir. 2002) ..............................................................6

*Saucier v. Katz*,
   533 U.S. 194 (2001) ..........................................................................15

*Scott v. Harris*,
   550 U.S. 372 (2007) ........................................................................5, 6

*Smith v. City of Hemet*,
   394 F.3d 689 (9th Cir. 2005) .............................................6, 7, 8, 14

*Tabares v. City of Huntington Beach*,
   988 F.3d 1119 (9th Cir. 2021) ...........................................................20

*Tennessee v. Garner*,
   471 U.S. 1 (1985) ................................................................................8

*Ting v. United States*,
   927 F.2d 1504 (9th Cir. 1991) ...........................................................17

*Torres v. City of Madera*,
   648 F.3d 1119 (9th Cir. 2011) ...........................................................10

*Tubar v. Clift*,
   453 F. Supp. 2d 1252 (W.D. Wash. 2006) ........................................17

*United States v. Dunkel*,
   927 F.2d 955 (7th Cir.1991) ................................................................2

*Velazquez v. City of Long Beach*,
   793 F.3d 1010 (9th Cir. 2015) .............................................................6

*Vos v. City of Newport Beach*,
   892 F.3d 1024 (9th Cir. 2018) .............................................................5

*Wall v. County of Orange*,
364 F.3d 1107 (9th Cir. 2004) ........................................................... 19

*Wilkins v. City of Oakland*,
350 F.3d 949 (9th Cir. 2003) ............................................................... 5

*Wilson v. City of Des Moines*,
160 F. Supp. 2d 1038 (S.D. Iowa 2001) ............................................. 18

*Zion v. Cty. of Orange*,
874 F.3d 1072 (9th Cir. 2017) ..................................................... 17, 20

<u>Rules</u>

Federal Rules of Civil Procedure, Rule 56 ........................................ 4, 22

Federal Rules of Evidence, Rule 404 .................................................... 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On February 1, 2022, Defendant Officers Kyle Griffin and Jesus Martinez used excessive and unreasonable force against Jonathan Murillo-Nix. Twenty-one officers surrounded Murillo who was suffering a mental health crisis. Instead of waiting for appropriate resources, officers called Murillo out of the home. When he exited, Murillo was shot with a 40mm weapon causing him to retreat. Upon entering the driveway, Murillo was blinded by spotlights and struck by 3 beanbag rounds effectively causing him to stop. Defendants then fired 5 lethal rounds without warning while Murillo was falling to the ground. Paralyzed on the ground, incapable of threatening harm to another, Defendants shot the visibly unarmed Murillo.

Defendants' motion blatantly disregards Rule 56's requirement that there be no disputes of material fact and that the record must be viewed in the light most favorable to the nonmovant. Even assuming Defendants' facts, the Court must accept that Defendants disarmed the blinded Murillo, and the subsequent shots were nevertheless against an *unarmed non-threatening* individual falling to the ground *and on the ground*. Murillo was not an immediate threat of death or serious bodily injury when he was shot without warning and while reasonable alternatives were available.

Defendants' Motion should be denied in full.

## II. RELEVANT FACTS

Officers knew Murillo was alone in the house, contained and surrounded by 21 officers with far superior knowledge and training. (Plaintiff's Additional Material Facts ("PAMF") 46-51.) Officers knew Murillo was suffering a mental health crisis. (PAMF 52-53.) With the Mental Evaluation Unit *en route*, Officer S.Martinez attempted to build a rapport with Murillo in accordance with her training. (PAMF 54-55.) Officers then chose *not* to effectively communicate with Murillo and failed to wait for MEU, but instead threatened him and instructed him to come out of the house. (PAMF 56-57.) Fearful of being shot by officers, Murillo exited the house

only to be met with several officers giving simultaneous commands. (PAMF 58-59.) Then Officer Schlesinger shot Murillo with a 40mm launcher without warning, while no one was near Murillo, causing him to fall to the ground. (PAMF 60-63.) To no surprise, Murillo ran from the threat to the front of the house. (PAMF 64-65.)

Immediately, Murillo was shot with a beanbag shotgun by Officer Gutierrez without warning and while no one was near Murillo. (PAMF 66-68.) A patrol vehicle was parked on the curtain of the driveway with headlights and two spotlights, accompanied by officer tactical lights blinding Murillo. (PAMF 69-70.) When attempting to exit the property, Murillo was struck by two additional beanbag rounds without warning, effectively stopping Murillo and causing him to fall. (PAMF 71-74.) Murillo never took a step past the hood front bumper of the patrol vehicle or outside the gate of the property—he was twisting away from Defendants, collapsing to the ground. (PAMF 75.) The backpaddling Defendants did not give Murillo any commands but shot Murillo seven times without warning while he was unarmed and falling to the ground knowing he had already been shot by the 40mm and beanbag shotgun. (PAMF 76-80, 89.)

Alternatively, if Murillo had a knife in his hand when initially entering the front yard, he became unarmed prior to or at the time of Griffin's first shot; thus, Griffin's next three shots and Martinez's shots were all against the visibly unarmed Murillo, including two shots while Murillo was on the ground. (PAMF 81-84.) Furthermore, if Murillo was moving towards officers after Gutierrez's final beanbag round, a reasonable jury could conclude that one of the first two lethal rounds fired by Griffin paralyzed Murillo. (PAMF 85.) Thereafter, the paralyzed, unarmed Murillo collapsed to the ground incapable of advancing toward any officer while Defendants used deadly force against him. (PAMF 86-87.)

Nevertheless, after the Defendants combined five shots, Griffin shot Murillo while Murillo was on the ground visibly unarmed followed by Martinez pausing for

approximately a second then shooting the visibly unarmed Murillo still on the ground. (PAMF 88.)

Murillo never threw a knife at any officer, did not swing, slash, or stab with a knife, never raised a knife above his head, never made a threatening or furtive movement with a knife, and never threatened to harm Defendants. (PAMF 90-96.) Defendants had no information: that Murillo ever committed an act of violence prior to the incident, that Murillo had seriously injured anyone, or that family members needed medical attention. (PAMF 99-101.)

On the other hand, officers had cover, and wore bulletproof vests. (PAMF 102-103.) Further, Defendants had reasonable alternatives to the use of deadly force available, but escalated the situation, intentionally pressing the trigger for each shot and assessing between each shot. (PAMF 97-98, 106-107.) Defendants used deadly force when Murillo was not an immediate threat of death or serious bodily injury to anyone, causing Murillo serious injury and death. (PAMF 104-105.)

Officers are trained that their conduct should be guided by reverence for human life. (PAMF 113.) Thus, officers are trained to give a verbal warning when feasible; assess after each shot; take responsibility for every shot fired; and that they cannot shoot someone merely for seeing a weapon in their hand. (PAMF 115-118.) Deadly force is the highest level of force an officer can use and should only be used if there is an immediate threat of death or serious bodily injury situation, only in defense of life, and only as a last resort. (PAMF 109-114.)

This use of force was not only unreasonable but shocks the conscience. (See PAMF 119.)

## III.   STANDARD UNDER RULE 56

Summary judgment is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23

(1986). Defendants cannot meet their burden. At summary judgment, a court's function is not to weigh the evidence, make credibility determinations, or determine the truth but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In ruling on summary judgment, the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*, 841 F.2d 872, 875 (9th Cir. 1987). A fact is "material" if its proof or disproof is essential to an element of plaintiff's case. *Celotex Corp.*, 477 U.S. at 322–23. A factual dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Even entirely circumstantial evidence is sufficient to create a triable issue of fact. *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992). Further, the reasonableness of an officer's belief "is a quintessentially 'fact-specific' question, not a question that judges should try to answer 'as a matter of law.'" *Brosseau v. Haugen*, 543 U.S. 194, 206 (2004) (Stevens J., dissenting); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003).

It is <u>undisputed</u> that officers had cover, reasonable alternatives, failed to give a warning to Murillo, that Murillo was suffering from a mental health crisis, and MEU was *en route*. It is <u>disputed</u>, however, whether Murillo was unarmed, falling to the ground during the deadly force, shot on the ground, and was not an immediate threat of death or serious bodily injury at the time, which precludes summary judgment. Additionally, in a deadly force case such as this, where Murillo cannot testify, the Court must carefully examine all evidence in the record to determine whether the officer's story is internally consistent and consistent with known facts. *Gonzalez v. City of Anaheim*, 747 F.3d 789, 794-95 (9th Cir. 2014). The Court must also examine

circumstantial evidence that, if believed, would tend to discredit the police officer's story, all to "ensure that the officer[s] [are] not taking advantage of the fact that the witness most likely to contradict [their] story—the person shot dead—is unable to testify."  *Id.*; *see Brosseau*, 543 U.S. at 206 (Stevens J., dissenting) (the reasonableness of an officer's belief "...is a quintessentially 'fact-specific' question, not a question that judges should try to answer 'as a matter of law'..."); *Anderson*, 483 U.S. at 641; *Wilkins*, 350 F.3d at 956. Which is exactly the case here.

Where there is video of excessive force, the Court must view the facts depicted by the videotape in the light most favorable to Plaintiff. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007); *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018) ("The record is viewed in light most favorable to the nonmovants..., so long as their version of the facts is not blatantly contradicted by the video evidence." (Citations omitted)). The factfinder may even draw divergent conclusions from video evidence. *See S.R. Nehad v. Browder*, 929 F.3d 1125, 1132-39 (9th Cir. 2019) (disputed issues of material fact precluded summary judgment in an action alleging excessive use of force even though the evidence included surveillance footage).

## IV.   DEADLY FORCE AGAINST AN UNARMED SUBJECT COLLAPSING TO THE GROUND IS OBVIOUSLY UNREASONABLE

Defendants' use of excessive force is analyzed under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. "Underlying *Graham's* objective-reasonableness test is the clear principle that the force used to make an arrest must be balanced against the need for force: it is the need for force which is at the heart of the *Graham* factors." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1025 (9th Cir. 2015) (*citing Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir. 2007)). The Court must carefully balance "the nature of the harm and quality of the intrusion on the

individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010) (*quoting Graham*, 490 U.S. at 396); *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002) ("Force is excessive when it is greater than is reasonable under the circumstances.").

## A.   The Nature and Quality of the Intrusion—Deadly Force—Is Unparalleled and Was Unnecessary

The nature and quality of the intrusion cannot be understated—Defendants used deadly force against Murillo. *Tennessee v. Garner*, 471 U.S. 1, 9 (1985) (deadly force intrusiveness is unmatched). "The use of deadly force implicates the highest level of Fourth Amendment interests both because the suspect has a 'fundamental interest in his own life' and because such force 'frustrates the interest of the individual, and of society, in judicial determination of guilt and punishment.'" *Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016) (quoting *Garner*, 471 U.S. at 9). Defendants used the highest level of force against Murillo, which is "extreme" and should only be used in limited circumstances. *Id.* at 1011; PAMF 105, 108-118. The only issue is whether the governmental interests at stake were more extreme and unmatched sufficient to justify it.

## B.   Government Interest Weigh in Favor of Finding that Defendants' Deadly Force Was Excessive

The use of deadly force must be balanced against the purported need for it. *See Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946-47 (9th Cir. 2017). Government interest factors to balance against the type of force used include "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight," *Graham*, 490 U.S. at 396, (4) the availability of alternative methods to effectuate an arrest or overcome resistance, *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005), (5) the giving of a warning prior to the use of force, *Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012), and (6) whether

it should have been apparent to officers that the person they used force against was emotionally disturbed, *see Glenn*, 673 F.3d at 872; *see also Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001).

The Ninth Circuit has cautioned that "[b]ecause such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [it has] held on many occasions that summary judgment…in excessive force cases should be granted sparingly." *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003). Further, it reaffirmed that "summary judgment is not appropriate in §1983 deadly force cases that turn on the officer's credibility that is genuinely in doubt." *Nehad*, 929 F.3d at 1133 (noting genuine doubts about officer credibility regarding perceptions as compared to other evidence). No government interests under *Graham* and its progeny support the use of such extreme force here.

**<u>No immediate threat of death to officers</u>**: This Court's analysis should start with the most important *Graham* factor—whether the subject posed an immediate threat to the safety of officers or others. *Smith* , 394 F.3d at 702. "Deadly force is permissible only 'if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm.'" *Landeros*, 837 F.3d at 1011 (quoting *Garner*, 471 U.S. at 11). In other words, the use of deadly force is only permissible in the most limited circumstances—when **necessary** to prevent death or serious bodily injury. *Garner*, 471 U.S. at 3; Cal. Pen. Code §835a; PAMF 108-118.

Viewing the facts and all reasonable inferences in the light most favorable to Plaintiff, Murillo did not pose an immediate threat of death or serious bodily injury to any person at the time of the shooting; Murillo was surrounded; outnumbered 21:1 against officers with superior training; Defendants knew Murillo was coming to the front; Murillo was blinded by spotlights and effectively stopped by less-lethal force; Murillo was unarmed and falling to the ground; paralyzed by a shot; as Defendants tactically repositioning; Murillo never made a swing, slash, stab, threatening, or

furtive movement with a knife toward or around any officers; Defendants had no information that Murillo ever committed a prior act of violence; no information that Murillo had seriously injured anyone; and no information that family members needed medical attention; Defendants had cover and several officers did not even draw their weapons. (PAMF 46-47, 49, 51, 65, 70, 74, 78-79, 85-94, 99-104.) *See Lopez v. Gelhaus*, 871 F.3d 998, 1008 (9th Cir. 2017).

The use of force here was obviously unreasonable because, assuming all reasonable inferences in Plaintiff's favor for the purposes of summary judgment, Murillo was unarmed during the Defendants' use of deadly force. It is undisputed that no knife was found in Murillo's hand after the shooting and no knife was found anywhere near Murillo's body. Several officers did not see a knife in Murillo's hand while in the front yard while several did not even draw their weapons. No video shows Murillo armed with a knife in the front yard and a knife was mysteriously found in the neighbor's yard. One reasonable inference is that Murillo never had a knife in the front yard. The credibility of Defendants' claim that Murillo had a knife is a clear jury determination.

However, several reasonable inferences can be drawn as to when and how Murillo became unarmed assuming he initially had a knife when he exited the side gate: (1) Murillo tossed or lost control of the knife after being struck by Gutierrez's second beanbag round; (2) Murillo tossed or lost control of the knife after being struck by Gutierrez's third beanbag round; or (3) the knife was shot out of Murillo's hand by Griffin's first lethal round. In the first two instances, Murillo was unarmed during all lethal rounds. In the third, Murillo was unarmed for 6/7 lethal rounds. Nonetheless, it is undisputed by video evidence that Murillo was shot on the ground by both Defendants visibly unarmed. The City also determined that Martinez's last shot was not proportional, objectively unreasonable, and unnecessary. In all instances, the video evidence clearly shows that Murillo was unarmed and not an immediate threat of death or serious bodily injury. (PAMF 88, 104.)

Defendants were not facing a situation where somebody was about to kill them. Instead, the beanbag rounds already effectively stopped Murillo before Defendants used deadly force. (PAMF 74.) Despite Murillo falling to the ground and blinded by spotlights, Defendants intentionally fired center mass knowing it would likely kill Murillo, reassessed between each shot not seeing a weapon in Murillo's hands, while Murillo continued to collapse to the ground, and continued using deadly force against him. (PAMF 70, 77-78, 81, 85-88, 106.) An officers' actions are not judged with the 20/20 vision of hindsight; nevertheless, not all errors in perception or judgment are reasonable. *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011). Moreover, Defendants had the ability assess the situation prior to each shot, therefore should have recognized that the less-lethal force deployed was successful and that Murillo was unarmed.

"A desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury." *Bryan*, 630 F.3d at 826. It was incumbent on Defendants to control their emotions not to use deadly force unnecessarily. Out of over twenty officers, only Defendants used deadly force.

Finally, the fact that a suspect has a deadly weapon does not render the use of deadly force reasonable. *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013); *Glenn*, 673 F.3d at 872-73; *see also Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997) ("Law enforcement officials may not kill suspects who do not pose an immediate threat to their safety or to the safety of others simply because they are armed.").

Viewing the video evidence in the light most favorable to Plaintiff, Murillo fell to the ground after being effectively struck by less-lethal. There are no objective factors to justify Defendants' claim that Murillo was an immediate threat of death or serious bodily injury. *See Deorle*, 272 F.3d at 1281 ("a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern."); *Lopez*, 871 F.3d at 1008-10 (finding the

armed subject's position and movement immediately prior to the shooting did not support a reasonable belief of a threat). Even under Defendants' facts, Murillo was disarmed, and Defendants continued to shoot him. Accepting Plaintiff's facts, Murillo did not present an immediate threat of death or serious bodily harm.

**Seriousness of crime**: though Defendants were responding to a call for assault with a deadly weapon, they quickly removed all third parties from the vicinity and determined that Murillo was suffering from a mental health crisis. Murillo believed he was protecting his family who were not injured at all. Even under Defendant's facts, Murillo never harmed any person and never attempted to strike any officer. This is not an issue of a serious or violent crime in progress. This factor does not support the use of deadly force. For example, in *Deorle*, the plaintiff "brandish[ed] a hatchet" and a crossbow and was verbally abusive to officers, threatening to "kick [their] ass." 272 F.3d at 1276-77. He also continually roamed about his property despite officers' orders. *Id*. Nevertheless, the Ninth Circuit did not consider this sufficient active resistance to warrant use of the beanbag shotgun, noting that "the crime being committed, if any, was minor." *Id*. at 1282-85. Thus, this factor weighs in favor of finding that Defendants' use of deadly force was excessive. *Id*. at 1283 (governmental interest in using deadly force is diminished when person was not committing a serious crime).

**Not attempting to flee**: Though Murillo ran to the front, it was precipitated by the unreasonable use of the 40mm in the backyard. Murillo only ran after being shot. Further, at the time of the use of deadly force, Murillo was no longer running because he was falling to and on the ground. *See Lopez*, 871 F.3d at 1006-07 (9th Cir. 2017). This factor also weighs in Plaintiff's favor if not neutral.

**Available alternatives**: Defendants ignored numerous less-intrusive alternatives, such as continuing to use verbal commands, maneuvering to gain more distance and time, and the use of less-lethal options. *See Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007) (quoting *Smith*, 394 F.3d at 701) ("[c]ourts may

also consider 'the availability of alternative methods of capturing or subduing a suspect.'"). Use of deadly force could have been avoided had Defendants used allowed the utilization of appropriate tactics and less-intrusive alternatives prior to using deadly force. Nevertheless, the less-lethal force was effective in stopping Murillo. However, instead of allowing the less-lethal force to have its effect and assessing its effectiveness, Defendants ignored the several less-lethal options and escalated the situation by resorting to deadly force. *See Glenn*, 673 F.3d at 872; *Green v. City and Cty. of San Francisco*, 751 F.3d 1039, 1051 (9th Cir. 2014). This factor also weighs in Plaintiff's favor.

**No warning given**: Before using deadly force, officers must issue a warning, when feasible. *Est. of Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 628 (9th Cir. 2022). Here it is undisputed that Defendants failed to give a warning to Murillo despite it being feasible. *See Lopez*, 871 F.3d at 1007. An officer's excuse of lack of time that he created is no justification for not giving a warning or using deadly force. Finally, considering the number of officers present and their superior training against the lone Murillo, Defendants had time to give a warning and chose not to.

**Suffering mental health crisis**: Lastly, Defendants recognized that Murillo was suffering a mental health crisis. Instead of waiting for the MEU team to arrive, officers unreasonably escalated the situation in violation of basic officer training for interacting with persons suffering from a mental health crisis and then killed Murillo instead of helping him. The Ninth Circuit emphasized that officers should exercise "greater effort to take control of the situation through less intrusive means" when confronting mentally ill or unstable suspects. *Bryan*, 630 F.3d at 829. It was objectively unreasonable for Defendants to fail to take Murillo' mental health into consideration when determining which tactics to employ and whether to use deadly force. *See Deorle*, 272 F.3d at 1283 ("Even when an emotionally disturbed individual is 'acting out' and inviting officers to use deadly force to subdue him, the governmental interest in using such force is diminished by the fact that the officers

are confronted, not with a person who has committed a serious crime against others, but with a mentally ill individual."); *see also Vos*, 892 F.3d at 1034 ("Finally, it is undisputed that Vos was mentally unstable, acting out, and at times invited officers to use deadly force on him. These indications of mental illness create a genuine issue of material fact about whether the government's interest in using deadly force was diminished."). Under Plaintiff's facts and all reasonable inferences therefrom, Defendants knew Murillo was suffering a mental health crisis. Thus, the government's interest in using deadly force is greatly diminished.

For all the reasons discussed, a reasonable jury could find that Defendants' use of deadly force was objectively unreasonable under the circumstances in violation of the Fourth Amendment. Accordingly, Defendants are not entitled to summary judgment as a matter of law.

### C.   Plaintiff's Interference with Familial Relationship Claim Survives

Defendants' brief argument that this was a fast-paces situation and that Defendants only used deadly force to stop "a dangerous suspect from inflicting great bodily injury or death" also fails. (Doc. 44 at 15:1-2.) Due process violations under the Fourteenth Amendment occur when official conduct "shocks the conscience," *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010), but what that means "depends on the context." *Tennison v. City and Cnty. of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009). The deliberate indifference standard applies when the officer has time to deliberate and would satisfy a due process violation that "shocks the conscience." *Tennison*, 570 F.3d at 1089. The Court indicated that the standard higher only applies in situations "that escalate so quickly that the officer must make a snap judgment." *Porter*, 546 F.3d at 1137-40 (collecting cases). However, the "snap judgment" to use deadly force must be a reaction to an unforeseen escalation by the subject. *Hayes*, 736 F.3d at 1230.

Here, there was no "snap judgment." The encounter lasted longer than an hour and Defendants knew Murillo exited the house and was running to the front.

This was no surprise to Defendants. Further, Defendants immediately escalated to lethal force following the initial less-lethal shots, without assessing their effectiveness. Moreover, even though they had the opportunity to make an assessment after their first shots, Defendants proceeded to use deadly force against an unarmed person on the ground. It also shocks the conscience to shoot a visibly unarmed person on the ground after they have already been shot five times—enough so that Defendant Martinez was in shock after doing so.

### D.     Defendants are Not Entitled to Qualified Immunity

Defendants are not entitled to qualified immunity because (i) there are disputed issues of material fact that preclude qualified immunity at this stage, (ii) it is obviously unreasonable for officers to use deadly force against an unarmed subject collapsing to the ground, and (iii) even if armed initially, at the time of the shooting "it was clearly established that officers may not use deadly force against a person who is armed but cannot reasonably be perceived to be taking any furtive, harrowing, or threatening actions," especially when less-lethal options are available and were effective. *N.E.M. v. City of Salinas*, 761 F. App'x 698, 700 (9th Cir. 2019).

First, disputed issues of material fact preclude granting qualified immunity on summary judgment. *See Johnson v. Jones*, 515 U.S. 304, 313 (1995); *Glenn*, 673 F.3d at 870, fn. 7 (citing *Espinosa*, 598 F.3d at 532); *Cunningham v. City of Wenatchee*, 345 F.3d 802, 809 (9th Cir. 2003); *Gates*, 287 F.3d at 855 n.12 (declining to decide the qualified immunity issue "because whether the officers may be said to have made a 'reasonable mistake' of fact or law may depend on the jury's resolution of disputed facts and the inferences it draws therefrom"); *Knox v. Southwest Airlines*, 124 F.3d 1103, 1109 (9th Cir. 1997) (no qualified immunity where there are triable issues of fact); *Brosseau*, 543 U.S. at 206 (Stevens J., dissenting) (the reasonableness of an officer's belief "…is a quintessentially 'fact-specific' question, not a question that judges should try to answer 'as a matter of law…'"); *Wilkins*, 350 F.3d at 956 ("Where the officers' entitlement to qualified

immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate). Here, the key material factual disputes bearing on the reasonableness of Defendants' use of deadly force are: whether it was feasible for Defendants to give a warning; whether the alternative less-lethal force options were already effective; whether Murillo was armed at the time of each shot; and whether Murillo was falling to or on the ground when Defendants used deadly force.

Resolving these factual disputes in Plaintiff's favor, the Court must assume for the purposes of summary judgment that Murillo was unarmed, paralyzed, falling to the ground, not advancing towards officers, officers maneuvered backwards, the less-lethal force effectively stopped Murillo prior to the use of deadly force fired without warning; and <u>Murillo was shot twice visibly unarmed on the ground</u>. Further, Murillo never harmed anyone, and did not attempt to lunge at, harm, or strike anyone. In other words, a reasonable jury can find that Murillo was obviously not an immediate risk of death or serious bodily injury. *Est. of Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 629 (9th Cir. 2022) (where the subject posed no immediate threat to the officers or others, the "'general constitutional rule' applies 'with obvious clarity'" rendering the officer's decision to shoot objectively unreasonable).

Third, on the date of the incident, "it was clearly established that officers may not use deadly force against a person who is armed but cannot reasonably be perceived to be taking any furtive, harrowing, or threatening actions," especially when less-lethal options are available and were effective. *N.E.M.*, 761 F. App'x at 700. To determine whether the officer violated clearly established law, courts look to "cases relevant to the situation [Defendants] confronted," *Brosseau*, 543 U.S. at 200 (quotation marks omitted), mindful that there need not be a case "directly on point." *Gravelet–Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013 (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).

Analogous is *Vos v. City of Newport Beach*, where a mentally unstable man

was shot while running towards eight officers with a metal object raised above his head. 892 F.3d at 1033-34. The officers were responding to a 911 call reporting Vos's erratic behavior in a public store. *Id.* at 1028. Vos, behaving violently, threatened to take a hostage, and injured a person. *Id.* at 1129. Upon arrival, officers quickly realized Vos was mentally unstable or under the influence. *Id.* at 1029. They called for backup, leading to a standoff. *Id.* at 1029-30. The officers were armed with various levels of force: 40mm, Tasers, and lethal weapons. *Id.* at 1033. They positioned their vehicles in formation and used the doors for cover. *Id.* at 1029.

Minutes later, Vos ran out and towards the officers. *Id.* at 1030. Brandishing a metal object above his head, Vos ignored the officers' commands to "Drop the weapon." *Id.* at 1029. As he ran at officers, Vos was shot first with a less-lethal round and then almost immediately with lethal shots from two officers. *Id.* at 1029. Despite being struck, Vos continued to charge, ultimately collapsing in front of them. *Id.* at 1030, 1033.

The Court found that a reasonable jury could conclude that the officers' use of deadly force was objectively unreasonable in violation of the Fourth Amendment. *Id.* at 1034. The analysis centered on the second *Graham* factor: whether Vos posed an immediate threat. The court considered that: the officers' position behind cover; outnumbering Vos eight to one; as Vos charged the officers, he had something raised in his hand, but he was not armed with a gun; and the officers had less-lethal methods available to stop Vos. The Court found, based on these factors and "construing the facts as they are presented by [plaintiffs] and depicted in the video footage, a reasonable jury could conclude that Vos was not an immediate threat such that the use of deadly force was warranted." *Id.* at 1032.

The *Vos* Court rejected the defendant's argument that deadly force was reasonable because Vos "forced the confrontation" by charging the officers. *Id.* The court found that the availability of less-lethal options was critical. *Id.* at 1033. Given that less-lethal force options were available to the officers and could have been

1  effective in stopping Vos and ending the threat, the use of deadly force was not

2  objectively reasonable. *Id.* at 1034.

3       There are many significant similarities between *Vos* and the current case:

4  officers were responding to a call regarding Murillo's erratic behavior, aware he

5  suffered a mental health crisis; a standoff ensued involving several officers equipped

6  with both lethal and less-lethal weapons; and lethal force was applied immediately

7  following less-lethal force, without assessing the effectiveness of the latter.

8       Moreover, Murillo presented even less of a threat than Vos. Unlike Vos, who

9  was in a public space with bystanders, was armed and had injured a bystander, then

10  brandished a perceived deadly weapon above his head, it is undisputed that Murillo

11  alone, in his home, did not injure anyone, and never brandished a knife overhead in

12  a threatening manner; and disputed that Murillo was armed at the time. A knife is

13  not seen in Murillo's hand despite the benefit of several videos. Defendants

14  nevertheless contend that they disarmed Murillo and then continued to shoot to kill.

15  Further, Murillo was paralyzed by one of the first shots. It was clearly established

16  that the use of deadly force here was unreasonable, against the visibly unarmed

17  Murillo collapsing to the ground and on the ground during the shots.

18       For all the reasons above, *Vos*, which was decided 4 years before this

19  incident, put Defendants on notice that it was objectively unreasonable to use deadly

20  force.

21       Another analogous case is *Glenn*, 673 F.3d 864, in which a man was shot in

22  his driveway by police officers. Police received a report of an agitated, intoxicated

23  man carrying a knife. When the police saw him holding the knife, they drew their

24  guns and screamed for him to drop it. Additional officers arrived, one of whom shot

25  the man with several beanbags causing the man to flee toward the house in which

26  his parents were standing. As police had determined that if the man "made a move

27  toward the house with his parents inside, they would use deadly force," they opened

28  fire and killed him. *Glenn*, 673 F.3d at 869.

1   Here, as in *Glenn*, Murillo had not attacked or injured anyone; he was alone;

2   he did not attempt to flee until unreasonably shot by officers; and any non-

3   compliance may have been the result of confusion by an impaired person. Thus, as

4   in *Glenn*, there are triable issues of fact as to whether rapidly resorting to deadly

5   force was reasonable in light of the less-lethal force deployed. *Id.* at 879-880.

6   In *S.B. v. Cnty. of San Diego*, 864 F.3d 1010, 1014 (9th Cir. 2017), two

7   deputies responded to a reportedly aggressive, mentally ill, and under the influence

8   man who threatened his family. Three deputies, armed with non-lethal and lethal

9   weapons, entered a house searching for Brown. Inside the house, officers found

10  Brown with knives in his pockets. Despite Brown's erratic behavior and threats, the

11  officers were able to get him to kneel, but he did not comply with orders to keep his

12  hands up. Then Brown, six to eight feet away from a deputy, grabbed a knife from

13  his pocket. Without further warning, a deputy fatally shot him.

14  The Ninth Circuit found that the deputy's "use of deadly force was not

15  objectively reasonable, and therefore violated Brown's Fourth Amendment right

16  against excessive force." *Id.* at 1014. The court's ruling relied on several factors: the

17  officer's prior knowledge of Brown's mental illness and intoxication; positioning;

18  the immediate use of lethal force once Brown grabbed the knife; the proximity

19  between Brown and the officer; the officer's lack of situational awareness; lack of

20  warning; and availability of less-lethal force. *Id.* at 1014.

21  Similarly, Murillo was reported for erratic behavior, potentially under the

22  influence of alcohol and suffering from a mental health crisis. Just like Brown,

23  Murillo was confronted by multiple officers, equipped with both lethal and less-

24  lethal weapons. Both Murillo and Brown partially complied with the officer's orders

25  by exiting the house. But Murillo posed far less danger than Brown because:

26  Murillo, unlike Brown, was unarmed, never attempted to stab anyone, did not draw

27  out a knife in a threatening manner, and Murillo was already shot by effective less-

28  lethal causing him to fall to the ground. Thus, based on the Ninth Circuit's reasoning

in *S.B.*, it can be concluded that the use of deadly force against Murillo was not objectively reasonable and violated his clearly established Fourth Amendment rights.

Defendants' reliance on *Kisela* is entirely misplaced. First, the Supreme Court did not address the question of whether there was a constitutional violation. It decided the case based on qualified immunity, for an incident occurring in 2010, holding that it was not clearly established that it was unlawful to shoot a person armed with a knife and within striking distance of a potential victim. *Kisela v. Hughes*, 138 S. Ct. 1148, 1154 (2018). Importantly, the Court does not overturn the Ninth Circuit's determination that there was sufficient evidence to demonstrate that the shooting officer violated the Fourth Amendment. Second, the Court's reasoning in *Kisela* hinges on the fact that the plaintiff was less than six feet away from Chadwick and was "within striking distance" of her. But here it is undisputed that Murillo was 15 feet away when Defendants began to use force *against the unarmed* Murillo who was falling to the ground paralyzed by a shot.

Defendants also rely on *Sheehan*, which is even less relevant to the case at bar than *Kisela*. There the Court found that the use of deadly force was objectively reasonable as a matter of law when the officers had "tried to subdue Sheehan with pepper spray, but Sheehan kept coming at the officers until she was 'only a few feet from a cornered Officer Holder.'" *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 612-13 (2015). Again, the holding in *Sheehan* is not relevant here because unlike *Sheehan*, the unarmed Murillo was approximately 15 feet away from the nearest person and not within striking distance of anyone.

Based on Ninth Circuit precedent discussed above, it is evident that Defendants are not entitled to qualified immunity under the circumstances of this case. The key material factual disputes should preclude granting qualified immunity on summary judgment as they relate directly to the reasonableness of Defendants' use of deadly force. And the precedent set by the Ninth Circuit in *Vos v. City of*

*Newport Beach*, *Glenn v. Washington County*, and *S.B. v. County of San Diego*, clearly establish "that officers may not use deadly force against a person who [even if] armed but cannot reasonably be perceived to be taking any furtive, harrowing, or threatening actions," especially when less-lethal options are available and potentially effective. *See also Nehad*, 929 F.3d at 1134 (excessive force held triable issue where suspect made no "sudden movements" or "move[d] the supposed knife," was "seventeen feet away" from police, was "walking" at "relatively slow pace," and was given no warning of lethal force); *Hayes v. County of San Diego*, 736 F.3d 1223, 1227-28, 1233-35 (9th Cir. 2013) (reversing summary judgment where officers shot an emotionally disturbed individual who held a large knife pointed downward and took steps toward an officer still six to eight feet away).

## V.    PLAINTIFF'S STATE LAW CLAIMS SURVIVE

Defendants argue that Plaintiff's state law claims should be dismissed as mirror images of Plaintiff's excessive force claim. Regarding Plaintiff's claims under battery and the Bane Act, the same facts and law would be considered as with the Fourth Amendment excessive force claim. But negligence claims apply a similar but more forgiving standard that considers defendants' conduct leading up to the use of force. *Hayes v. County of San Diego*, 57 Cal.4th 622, 639 (2013). Even if under the Fourth Amendment, battery, and the Bane Act, the Court determined that the shooting appears justified in isolation, "the totality of the circumstances, including the pre-shooting conduct of the officers, might persuade a jury to find the shooting negligent. In other words, pre-shooting circumstances might show that an otherwise reasonable use of deadly force was in fact unreasonable." *Id.* at 629-30; *see also Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021) ("the officer's pre-shooting decisions can render his behavior unreasonable under the totality of the circumstances, even if his use of deadly force at the moment of the shooting might be reasonable in isolation.").

1   Considering the disputed issues of material fact and the undisputed facts as set
2   forth above and considering that qualified immunity does not apply to state law
3   claims, Plaintiff is entitled to a jury trial on all their state law claims for the reasons
4   discussed above in connection with Plaintiffs' excessive force claim. *See Munoz v.*
5   *City of Union City*, 120 Cal.App.4th 1077, 1121, fn.6 (2004); *Johnson v. Bay Area*
6   *Rapid Transit Dist.*, 724 F.3d 1159, 1171 (9th Cir. 2013); *see also Cousins v.*
7   *Lockyer*, 568 F.3d 1063, 1072 (9th Cir. 2009). Additionally, Defendants' negligent
8   pre-shooting tactics include failing to have an adequate tactical plan; failing to
9   communicate with Murillo properly; failing communicate with other officers
10   properly; failing to provide a verbal warning; failing to de-escalate the situation;
11   failing to utilize MEU; and failing to attempt less intrusive alternatives. Thus,
12   Plaintiff's negligence claim survives.

13   Defendant also cursorily argue entitlement to immunity under Government
14   Code §820.2, but that argument is contradicted by binding caselaw. *Blankenhorn v.*
15   *City of Orange*, 485 F.3d 463, 487 (9th Cir. 2007) (regarding §820.2, "it has long
16   been established that this provision does not apply to officers who use unreasonable
17   force in making an arrest.").

## VI.   PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES

19   For the same reasons the unarmed killing of a person falling to the ground and
20   on the ground, without warning, who was blinded by lights and after less-lethal was
21   effective used, <u>shocks the conscience</u> (*see*, *supra*, Sections IV.B&C), a reasonable
22   jury could find that <u>Defendants acted with malice, oppression, or reckless disregard</u>.

23
24   / / /
25
26   / / /
27
28   / / /

VII.  __CONCLUSION__

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motions for Summary Judgment in full.


DATED:  November 22, 2023          **LAW OFFICES OF DALE K. GALIPO**

By:          *Marcel F. Sincich*
Dale K. Galipo, Esq.
Marcel F. Sincich, Esq.
*Attorney for Plaintiff*

1

## **CERTIFICATE OF COMPLIANCE**

2        The undersigned, counsel of record for Plaintiff MARIBEL MURILLO

3  certifies that this brief contains 6,979 words, which complies with the word limit of

4  L.R. 11-6.1.

5

6  DATED: November 22, 2023      **LAW OFFICES OF DALE K. GALIPO**

7

8                   By:   */s/   Marcel F. Sincich*

Dale K. Galipo
Marcel F. Sincich
*Attorneys for Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28