**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, SBN 144074 (*lead counsel*)
dalekgalipo@yahoo.com
Marcel F. Sincich (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Tel:   (818) 347-3333
Fax:   (818) 347-4118

**THE SEHAT LAW FIRM, PLC**
Cameron Sehat, Esq. (SBN 256535)
cameron@sethatlaw.com
5100 Campus Dr., Suite 200
Newport Beach, CA 92660
Tel:   (949) 825-5200
Fax:   (949) 313-5001

*Attorneys for Plaintiff*
MARIBEL MURILLO

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIBEL MURILLO, individually and as successor-in-interest of the estate of deceased, JONATHAN MURILLO-NIX,<br><br>                    Plaintiff,<br><br>        vs.<br><br>CITY OF LOS ANGELES, a governmental entity; JESUS MARTINEZ, individually; KYLE GRIFFIN, individually; and DOES 1-10, inclusive,<br><br>                    Defendants. | Case No.: 2:22-cv-03188 DMG (SKx)<br><br>[*Honorable Dolly M. Gee*]<br>*Magistrate Judge Steve Kim*<br><br>**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**<br><br>[*Filed concurrently with Plaintiff's Opposition to Defendants' Motions for Summary Judgment; Memorandum of Points and Authorities in support thereof; Plaintiff's Objections to Evidence Presented in Defendants' Separate Statements; Declaration of Marcel F. Sincich and exhibits thereto; Declaration of Dr. Omalu; Declaration of Roger Clark*]<br><br>MSJ Date:   December 15, 2023<br>Time:          2:00 p.m.<br>Judge:        Hon. Dolly M. Gee<br>Courtroom        8C, 8th Floor |

## PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

Pursuant to Local Rule 56-2, this Court Standing Order (Doc. 12), and the Court's Format Sample Statement of Genuine Disputed Facts, Plaintiff MARIBEL MURILLO respectfully submits this Statement of Genuine Disputes.

Please take notice that, where page numbers exist in the original documents, the citations to page numbers to Plaintiff's Supporting Evidence below references to the page of the original document prior to being cut down to the cited pages only (i.e., not the bates label number, not the pdf page number, and not the CM/ECF generated number in blue), unless otherwise identified on the slip sheet. For photographs and screenshots, please use the page number provided for the purpose of these exhibits.

DATED:  November 22, 2023          **LAW OFFICES OF DALE K. GALIPO**

By: _____*Marcel F. Sincich*_____
Dale K. Galipo, Esq.
Marcel F. Sincich, Esq.
*Attorney for Plaintiff*

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES TO DEFENDANT**
**KYLE GRIFFIN AND JESUS MARTINEZ MATERIAL FACTS**

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| **1.** | On February 1, 2022, at 2:14 a.m., Joshua Echeverria ("Joshua"), the then-21-year-old brother of Jonathan Murillo-Nix ("Murillo-Nix"), called 9-1-1 and reported, "my older brother is acting crazy right now. He's trying to attack my dad right now with knives." <br><br> Moving Party's Evidence: **Exhibits A-B** (Ex. A), 9-1-1 Audio Call 01 at 0:00-0:20. | **Disputed** by objections including irrelevant information unknown to Defendants. (See Plaintiff's Statement of Objections filed concurrently herewith, ¶¶1). <br><br> **Undisputed** that the February 1, 2022, incident was precipitated by a 2:14 a.m. 9-1-1 call where Defendants suspected an assault with a deadly weapon possibly knives involved. (**Exh. 2, Griffin Statement I** at 6:24-25, to Sincich Decl. ¶2; **Exh. 3, Griffin Statement II** at 7:13-17, to Sincich Decl. ¶3; **Exh. 6, Martinez Statement II** at 6:25-7:8, to Sincich Decl. ¶6.) |
| **2.** | A minute later at 2:15 a.m., Elenilson Echeverria ("Elenilson"), Murillo-Nix's stepfather, also called 9-1-1 and reported, "I need help. . .[banging sounds] . . My stepson is with knives, and he said he's trying to kill everybody here at home." <br><br> Moving Party's Evidence: **Exhibits C-D** (Ex. C), 9-1-1 Audio Call 02 at 0:00-0:15. | **Disputed** to the extent that Defendants attempt to argue the audio a portion of the audio includes "banging sounds." The audio speaks for itself, and interpretations of mere sounds could be different. (Defense Exhibit C, 9-1-1 Audio Call 02 at 0:00-0:15.) <br><br> **Disputed** by objections including irrelevant information unknown to Defendants. (See Plaintiff's Statement of Objections filed concurrently herewith, ¶2). <br><br> **Undisputed** that reporting party called 9-1-1 and made statements. |
| **3.** | Elenilson reported that he was "drunk, drunk, drunk" | **Disputed** by objections including irrelevant information unknown to Defendants. (See Plaintiff's Statement |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | Moving Party's Evidence: Ex. C at 00:58-1:05, 01:58- | of Objections filed concurrently herewith, ¶3). **Undisputed** that reporting party called 9-1-1 and made statements. |
| **4.** | Elenilson later responded "But he's with two knives and he said he's going to kill everybody here." Moving Party's Evidence: Ex. C at 02:00-02:10. | **Disputed** by objections including irrelevant information unknown to Defendants. (See Plaintiff's Statement of Objections filed concurrently herewith, ¶4). **Undisputed** that reporting party called 9-1-1 and made statements. |
| **5.** | Officers arrived at approximately 2:19 a.m., approximately 5 minutes after the first call was placed. Moving Party's Evidence: **Exhibit E** (Ex. E), Body-Worn Video (BWV) of Officer Jose Mendoza at 02:19:05-02:19:54. | **Undisputed** as immaterial and for the purposes of this motion only. |
| **6.** | Immediately after arriving onsite, the officers quickly began speaking with Elenilson from his open bedroom window. Moving Party's Evidence: Ex. E at 02:19:52-02:21:52; **Exhibit F** (Ex. F), BWV of Officer Isaac Ipsen at 02:19:52-02:21:52. | **Undisputed** as immaterial and for the purposes of this motion only. |
| **7.** | Elenilson again informed the officers that Murillo-Nix was armed with two knives, would not let anyone out of their rooms, and was trying to kill everybody. Moving Party's Evidence: | **Disputed** by objections including irrelevant information unknown to Defendants. (See Plaintiff's Statement of Objections filed concurrently herewith, ¶7). |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | Ex. E at 02:20:22-02:21:09; Ex. F at 02:20:22-02:21:09. | |
| **8.** | Elenilson advised the officers that though the front door was locked, they would be able to enter from the back door.<br><br>Moving Party's Evidence:<br>Ex. E at 02:20:22-02:21:09; Ex. F at 02:20:22-02:21:09. | **Undisputed** as immaterial and for the purposes of this motion only. |
| **9.** | While the officers were speaking with Elenilson, Murillo-Nix could be heard banging on the door.<br><br>Moving Party's Evidence:<br>Ex. E at 02:21:45-02:21:52; Ex. F at 02:21:44-02:21:52. | **Disputed** that officers could hear *Murillo* banging on the door. Officers did not see who was banging on the door. Despite hearing sounds that could be characterized as banging, there is no indication in the video as to who was banging or what they were banging on. (Defense Exhibit E at 02:21:45-02:21:52; and Exhibit F at 02:21:44-02:21:52.)<br>**Disputed** by objections including irrelevant information unknown to Defendants. (See Plaintiff's Statement of Objections filed concurrently herewith, ¶9). |
| **10.** | Fearing for the family's well-being, the officers quickly entered the property.<br><br>Moving Party's Evidence:<br>Ex. E at 02:21:45-02:21:52; Ex. F at 02:21:44-02:21:52 | **Disputed** as to the characterization of unnamed officers' subjective emotional state without any declaration or statement of the unnamed officers. Whether the officers were fearful is not established by Defendants' evidence.<br>**Disputed** by objections including irrelevant information unknown to Defendants. (See Plaintiff's Statement of Objections filed concurrently herewith, ¶10). |

| | I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|---|
| | | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | | **Undisputed** that soon after the Officers' arrival, all third parties were removed from the scene leaving only Murillo in the house and only Murillo and the officers anywhere around the house at all relevant times during the incident. |
| | **11.** | Elenilson jumped out of his bedroom window and led the officers around toward the back of the house.<br><br>Moving Party's Evidence: Ex. F at 02:21:59-02:22:21. | **Undisputed** as immaterial and for the purposes of this motion only. |
| | **12.** | Officers enter into the living room area at the back of the home and yell out, directing Murillo-Nix to come out with his hands up.<br><br>Moving Party's Evidence: Ex. E at 02:23:00-02:23:30; Ex. F at 02:23:00-02:23:30. | **Disputed** by objections including irrelevant information unknown to Defendants. (See Plaintiff's Statement of Objections filed concurrently herewith, ¶12).<br>**Undisputed** as immaterial and for the purposes of this motion only. |
| | **13.** | Officers then ensured the remaining family members were evacuated.<br><br>Moving Party's Evidence: **Exhibit G** (Ex. G), BWV of Officer Cesar Barba at 2:25:40-02:26:25; **Exhibit H** (Ex. H), BWV of Sergeant Francisco Alferez at 02:25:54-02:26:25. | **Undisputed** that soon after the Officers' arrival, all third parties were removed from the scene leaving only Murillo in the house and only Murillo and the officers were around the house at all relevant times during the incident.<br>**Undisputed** as immaterial and for the purposes of this motion only. |
| | **14.** | Family members had to be evacuated through windows at the front of the home.<br><br>Moving Party's Evidence: | **Disputed** by objections as to whether family "had" to evacuate through windows. (See Plaintiff's Statement of Objections filed concurrently herewith, ¶14). |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | Ex. G at 2:25:40-02:26:25; Ex. H at 02:25:54-02:26:25. | **Undisputed** that soon after the Officers' arrival, all third parties were removed from the scene leaving only Murillo in the house and only Murillo and the officers anywhere around the house at all relevant times during the incident. |
| 15. | Officers set up a perimeter around the residence including positioning a marked police car in the driveway and other cars to block traffic as necessary to contain Murillo-Nix and prohibit him from entering into the surrounding homes.<br><br>Moving Party's Evidence:<br>See generally, Ex. H at 02:26-02:35:30; **Exhibit I** (Ex. I), BWV of Officer Nicholas Knolls at 2:31:00-02:34:22. | **Disputed** to the extent that Defendants' exhibits do not support their argument that the perimeter was set up to block traffic and prohibit Murillo from entering surrounding homes. The excerpts of videos cited by Defendants make no mention whatsoever of prohibiting Murillo from entering surrounding homes or a concern that Murillo may enter surrounding homes. Defendants present no evidence that Murillo ever attempted or made any comment related to a desire to enter some other home. On the other hand, Officer Knolls stated that he intentionally positioned the patrol vehicle close enough for the PA system to be heard and to provide the officers with cover. (**Exh. 8, Knolls Statement** at 24:23-25:11, to Sincich Decl. ¶8.)<br>**Undisputed** that Officers fully contained the house and eliminated even the possibility of a threat to third parties that potentially were in neighboring homes. |
| 16. | The officers also set up a command post (CP) and relocated the family (Plaintiff, Elenilson, Joshua, and another son) to the CP area down the block. | **Undisputed** that the family was not near the incident scene when the officer-involved shooting occurred.<br>**Undisputed** as immaterial and for the purposes of this motion only. |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | <u>Moving Party's Evidence</u>: See, generally, Ex. H at 2:33:27-2:35:45 (directing officers and family members to corner of Desmond/Sproule); 02:38:59-02:39:10 (radio dispatch announcing CP); **Exhibit J** (Ex. J), Incident Recall at 02:34:33 (noting "Set Up Command Post Sproule/Desmond") | |
| **17.** | The sergeant on scene also requested an ambulance be stationed at the CP. <br><br> <u>Moving Party's Evidence</u>: Ex. H at 2:36:06-02:36:22 (Sgt. Alferez requesting an "RA" (Rescue Ambulance) to standby at Desmond and Dronefield); Ex. J at 02:38:12 (Dispatching "FD 103"). | **Undisputed** as immaterial and for the purposes of this motion only. |
| **18.** | The ambulance arrived on scene before 3:00 a.m. <br><br> <u>Moving Party's Evidence</u>: See, **Exhibit K** (Ex. K), Second BWV of Officer Jose Mendoza at 02:56:46-02:58:00 (showing Fire Department personal deployed at Desmond and Dronefield – no audio). | **Undisputed** as immaterial and for the purposes of this motion only. |
| **19.** | From the moment the officers entered the home and over the next 79 minutes, officers, including Officer Martinez, attempted to negotiate with Murillo-Nix to come | **Disputed** that Officers attempted to *negotiate* with Murillo for 75 minutes. Negotiation implies an exchange between the parties involved. Here, Officers merely gave the same |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | out of the house peacefully and without a weapon.<br><br>Moving Party's Evidence:<br>See, generally, Ex. E at 02:23:20-02:25:00, 02:28:35-02:29:15; Ex. F at 02:23:18-02:29:15; Ex. H at 02:46:54-02:48:00; **Exhibit L** (Ex. L), BWV of Officer Kyle Griffin at 02:36:03-03:42:39; **Exhibit M** (Ex. M), BWV of Officer Jesus Martinez at 02:36:04-03:42:41. | commands to Murillo repeatedly and Officers threatened Murillo.<br>- *See supra*, No. 21 that Defendants threatened the use of force.<br>- (**Exh. 6, Martinez Statement II** at 28:16-20, to Sincich Decl. ¶6 – Officer Martinez described his communication style as "overkill" and intended to repeat the same thing "over and over" ever if it annoyed Murillo.)<br>- (**Exh. 6, Martinez Statement II** at 10:14-15, to Sincich Decl. ¶6 – Officer Martinez knew he was not effectively communicating with Murillo because he "wasn't getting through to him," and was not acknowledging his questions.)<br>- (**Exh. 6, Martinez Statement II** at 33:17-20, to Sincich Decl. ¶6 – Officer Martinez employed deception and trickery (i.e., a ruse) in his communication with Murillo.)<br>- (**Exh. 6, Martinez Statement II** at 16:13-15, to Sincich Decl. ¶6 – Officer Martinez was trying to get Murillo to come out of the house.)<br>- (**Exh. 6, Martinez Statement II** at 16:16-18, to Sincich Decl. ¶6 – Subjects under these circumstances typically are afraid that they will be shot by officers if they come out.)<br>- (**Exh. 6, Martinez Statement II** at 21:7-18, to Sincich Decl. ¶6 – Officer Martinez threatened Murillo telling him SWAT was on the way and that if he did not come out of the house, |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | SWAT was going to use force on him and gas him out of the house.) <br> **- (Exh. 3, Griffin Statement II** at 17:2-7, to Sincich Decl. ¶3 – Then officers threatened Murillo again that SWAT was on the way that they were going to use gas on him to force him out.) <br> - (**Exh. 7, Alferez Statement** at 54:1-17, to Sincich Decl. ¶7 – Sgt. Alferez employed the ruse of threatening Murillo that SWAT was coming and would potentially gas him out of the house.) <br> - (**Exh. 8, Knolls Statement** at 10:11-15, to Sincich Decl. ¶8 – Sgt. Alferez wanted someone to talk to Murillo more authoritatively.) |
| 20. | At some point, Murillo-Nix damaged one of the bedroom doors so extensively that the lock was broken and he was able to enter that room, yelling from the window. <br><br> Moving Party's Evidence: <br> Ex. H at 2:25:56-02:26:03 (Elinelson reporting that the lock in the bedroom could not lock any more); **Exhibit N** (Ex. N), photos of broken bedroom door and door jam. | **Disputed** in its entirety. Defendants' evidence does not establish that Murillo damaged any bedroom door or lock and does not establish that Murillo ever entered a room yelling from the window. (Defense Exhibit H at 2:25:56-02:26:03.) Even assuming the lock was broken, Defendants' evidence does not establish who broke the lock, which room is in question, or whether Murillo entered that room. |
| 21. | The officers repeatedly warned Murillo-Nix to come out unarmed or force, including deadly force, may be used. | **Disputed.** Defendants' evidence does not establish that Murillo ever heard a warning and therefore whether Murillo ever received a warning. Several of the cited times to Defendants exhibits do |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | Moving Party's Evidence: See, generally, Ex. E at 02:23:20-02:25:00, 02:28:35-02:29:15; Ex. F at 02:23:18-02:29:15; Ex. H at 02:46:54-02:48:00; Ex. L at 02:36:03-03:42:39; Ex. M at 02:36:04-03:42:41; **Exhibit O** (Ex. O), BWV of Officer Eric Schlesinger at 03:41:18-03:42:40. | not have a warning being given. (See, e.g., <u>Defendants Exhibit E</u> at 02:23:20-02:25:00, 02:28:35-02:29:15; <u>Defendants Exhibit F</u> at 02:23:18-02:29:15.) Further, <u>Defendants Exhibit H</u> at 02:46:54-02:48:00 does not support Defendants alleged fact. Defendants "we will use a beanbag a Taser." This is a less-lethal force warning given by Sgt. Alferez. This is not a deadly force warning. |
| | | No officer that used force during the incident gave Murillo a warning. - (**Exh. 4, Martinez Depo** at 41:20-23, to Sincich Decl. ¶4; **Exh. 9, Schlesinger Statement** at 51:25-52:2, to Sincich Decl. ¶9 – There was no warning that the 40 mm was going to be deployed.) - (**Exh. 14, Gutierrez Statement** at 13:9-12, to Sincich Decl. ¶14 – Officer Gutierrez did not give a verbal warning prior to his use of force.) - (**Exh. 6, Martinez Statement II** at 31:16-19, to Sincich Decl. ¶6 – While Officer Martinez was communicating over the PA system, he never issued a less-lethal warning to Murillo.) - (**Exh. 4, Martinez Depo** at 20:4-6, to Sincich Decl. ¶4 – Martinez never gave Murillo a verbal warning that he was going to use deadly force.) - (**Exh. 1, Griffin Depo** at 18:7-12, to Sincich Decl. ¶1 – Griffin gave no verbal warning that he was going to use deadly force.) |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| **22.** | Murillo-Nix never complied with any of the officers commands.<br><br>Moving Party's Evidence:<br>See, generally, Ex. E at 02:23:20-02:25:00, 02:28:35-02:29:15; Ex. F at 02:23:18-02:29:15; Ex. H at 02:46:54-02:48:00; Ex. L at 02:36:03-03:42:39; Ex. M at 02:36:04-03:42:41; Ex. O at 03:41:18-03:42:40. | **Disputed**. Murillo complied with the command of officers to exit the house. Officers instructed Murillo to come out of the house, and Murillo came out of the house. (**Exh. 4, Martinez Depo** at 25:17-25, to Sinich Decl. ¶4.) A reasonable jury could find this to be an act of compliance. (**Clark Decl**. ¶8.) |
| **23.** | While the officers were attempting to negotiate with Murillo-Nix, he often made threats to his family or others and threw items from the window at the front of the home.<br><br>Moving Party's Evidence:<br>See, generally, Ex. E at 02:23:20-02:25:00, 02:28:35-02:29:15; Ex. F at 02:23:18-02:29:15; Ex. H at 02:46:54-02:48:00; Ex. L at 02:36:03-03:42:39; Ex. M at 02:36:04-03:42:41. | **Disputed** that Officers attempted to *negotiate* with Murillo. Negotiation implies an exchange between the parties involved. Here, Officers merely gave the same commands to Murillo repeatedly and Officers threatened Murillo. *See supra*, No. 21 that Defendants threatened the use of force.<br><br>**Disputed**. Murillo believed that he was going to be shot by the police and believed that he was protecting his family, stating, "At least I'll have died protecting my family." (**Exh. 3, Griffin Statement II** at 17:9-15, to Sinich Decl. ¶3.)<br><br>**Disputed** that Murillo threw anything out of a window. Defendants evidence does not establish this fact. Nevertheless, Incident Commander Sgt. Alferez did not see any object thrown out of a window. (**Exh. 7, Alferez Statement** at 70:23-24, to Sinich Decl. ¶7.) |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| **24.** | Several officers throughout the incident were armed with less-lethal weapons at various times, including Officer Schlesinger, Officer Gutierrez, and Officer Tykhomryov.<br><br>Moving Party's Evidence:<br>See generally, Ex. H at 02:26-02:35:30, 02:38:30-02:38:42; Ex. O at 02:58:26-03:42:40; **Exhibit P** (Ex. P), BWV of Officer Marcos Gutierrez at 02:32:49-03:42:49; **Exhibit Q** (Ex. Q), BWV of Officer Georgia Tykhomyrov at 02:22:55-03:42:49. | **Undisputed** that officers had less-lethal and less intrusive alternatives to the use of deadly force throughout the incident. |
| **25.** | At approximately 3:42 a.m. Murillo-Nix, suddenly exited from the home while grasping two knives – one in each hand.<br><br>Moving Party's Evidence:<br>Ex. O at 03:41:16-03:42:40. | **Disputed** that Murillo exited "suddenly." There is nothing in Defendants' evidence that suggests Murillo's actions were sudden. (See <u>Defense Exhibit O</u> at 03:41:16-03:42:40.) Murillo complied with officer commands to exit the home. Officers instructed Murillo to come out of the house, and Murillo came out of the house. (**Exh. 4, Martinez Depo** at 25:17-25, to Sincich Decl. ¶4.) A reasonable jury could find this to be an act of compliance. Further, when Murillo first exited the house, he was initially side stepping or walking to his left at a slow pace. (**Exh. 16, Proni Statement** at 20:10-21, to Sincich Decl. ¶16.)<br>**Disputed** that Murillo was grasping two knives. <u>Defense Exhibit O</u>, and all other videos, do not show Murillo with |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | any knives in his hands. The LAPD Force Investigation Division did not recover a single video or image showing Murillo with a knife at the time of the shooting. (**Exh. 20, FID Report** at 25, to Sincich Decl. ¶20.) When Murillo came out of the house and was shot with the 40mm launcher, Officer Proni did not see two knives in his hands. (**Exh. 16, Proni Statement** at 19:9-13, to Sincich Decl. ¶16, to Sincich Decl. ¶16; **Exh. 25, Officer Gutierrez Video Clip of OIS** at 00:05-00:10, to Sincich Decl. ¶25; **Exh. 26, Officer Gutierrez Video Clip of OIS at 12fps** at 00:10-00:19, to Sincich Decl. ¶26; **Exh. 28, Officer Griffin Video Clip of OIS** at 00:10-00:22, to Sincich Decl. ¶28; **Exh. 29, Officer Griffin Video Clip of OIS at 12fps** at 00:00-00:16, to Sincich Decl. ¶29; **Exh. 31, Officer Martinez Video Clip of OIS** at 00:10-00:22, to Sincich Decl. ¶31; **Exh. 32, Officer Martinez Video Clip of OIS at 12fps** at 00:00-00:16, to Sincich Decl. ¶32; **Exh. 34, Officer Knolls Video Clip of OIS** at 00:25-00:38, to Sincich Decl. ¶34. <br><br>**Undisputed** that Murillo exited the home. |
| 26. | One of the knives was approximately 4 inches long and the other approximately 8 inches long. <br><br><u>Moving Party's Evidence:</u> | **Undisputed** that there was a knife recovered at the scene of the incident that was approximately 4 inches long and another that was approximately 8 inches long. |

| | **I.** | **The Officers' Actions Were Objectively Reasonable** | |
|---|---|---|---|
| | | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | **Exhibit R** (Ex. R), photos of knives found at scene. | |
| | **27.** | An officer called out to Murillo-Nix that they were not trying to hurt him, but that they were not going anywhere. An announcement was also made over the police radio that Murillo-Nix had exited the residence with two knives in his hands.<br><br>Moving Party's Evidence:<br>Ex. L at 03:42:09-03:42:36; Ex. O at 03:41:18-03:42:40; Ex. P at 3:42:27-03:42:36; Ex. Q at 03:42:25-03:42:36. | **Disputed** that Murillo exited with two knives in his hands. Defendants' Exhibits do not show Murillo with any knives in his hands. The LAPD Force Investigation Division did not recover a single video or image showing Murillo with a knife at the time of the shooting. (**Exh. 20, FID Report** at 25, to Sincich Decl. ¶25.)<br><br>**Undisputed** as to the remaining facts as immaterial and for the purposes of this motion only. |
| | **28.** | Murillo-Nix then began running toward the front of the house which resulted in Officer Schlesinger firing his 40mm less-lethal weapon at Murillo-Nix.<br><br>Moving Party's Evidence:<br>Ex. O at 03:41:18-03:42:40. | **Disputed**. Defendants' evidence does not establish this sequence of events. Defendants' Exhibit O does not show Murillo running nor does it show the sequence as argued by Defendants. A reasonable jury could review Officer Schlesinger's BWC video and determine that Officer Schlesinger shot Murillo to the right hip, causing Murillo to run away from the threat of harm towards the front of the house. (**Exh. 18, Autopsy Report** at 312, 321, to Sincich Decl. ¶18; **Exh. 19, Autopsy Photos** at 32, to Sincich Decl. ¶19; **Exh. 1, Griffin Depo** at 16:6-16, to Sincich Decl. ¶1 – In Griffin's experience, subjects have run away after being struck by a 40 mm round.) Nevertheless, Officer Schlesinger stated to detectives that |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | Murillo merely stepped out of the house, then walked briefly back inside before exiting again. Then officers communicated with Murillo for approximately one minute before Officer Schlesinger claimed to see what he believed to be Murillo "start to turn and run" towards Officers Garcia and Rodrigez, who were on the other side of the wall. Officer Schlesinger fired the 40mm round at Murillo causing Murillo to hit the ground before he got back up and ran southbound to the front of the property away from Officer Schlesinger. (**Exh. 9, Schlesinger Statement** at 21:6-22:6, to Sincich Decl. ¶9.) **Clark Decl**. ¶9. |
| 29. | Murillo-Nix, however, was undeterred, and kept running toward the front driveway of the home toward additional officers.<br><br>Moving Party's Evidence:<br>Ex. Q at 03:42:36-03:42:42. | **Disputed** that Murillo was undeterred. Defendants' evidence does not establish this sequence of events. Defendants' Exhibit O does not show Murillo running nor does it show the sequence as argued by Defendants. A reasonable jury could review Officer Schlesinger's BWC video and determine that Officer Schlesinger shot Murillo to the right hip, causing Murillo to run away from the threat of harm towards the front of the house. (**Exh. 18, Autopsy Report** at 312, 321, to Sincich Decl. ¶18; **Exh. 19, Autopsy Photos** at 32, to Sincich Decl. ¶19; **Exh. 23, Scene Photos** at 5-15, to Sincich Decl. ¶23.) Nevertheless, Officer Schlesinger stated to detectives that Murillo merely |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | stepped out of the house, then walked briefly back inside before exiting again. Then officers communicated with Murillo for approximately one minute before Officer Schlesinger claimed to see what he believed to be Murillo "start to turn and run" towards Officers Garcia and Rodrigez, who were on the other side of the wall. Officer Schlesinger fired the 40mm round at Murillo causing Murillo to hit the ground before he got back up and ran southbound to the front of the property away from Officer Schlesinger. (**Exh. 9, Schlesinger Statement** at 21:6-22:6, to Sincich Decl. ¶9.) |
| | | **Disputed** that Murillo ran towards additional officers relevant to this described timeframe. There were no officers around Murillo as he was shot by the 40mm or as Murillo ran to the gate. There were no officers on the other side of the gate in the area of Murillo. (**Exh. 8, Knolls Statement** at 53:13-25, to Sincich Decl. ¶8; **Exh. 20, FID Report** at 8, 12, to Sincich Decl. ¶20; **Exh. 23, Scene Photos** at 10-15, to Sincich Decl. ¶23.) **Clark Decl**. ¶9.

**Undisputed** that Murillo went to the front of the residence. |
| 30. | Officer Tykhomryov also attempted to stop Murillo-Nix's flight toward the front of the home, | **Disputed** that Murillo was in *flight* of arrest as opposed to running away from the threat of harm in self-defense after being shot unreasonably and |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | firing at Murillo-Nix once from his 40mm less-lethal weapon.<br><br>Moving Party's Evidence:<br>Ex. Q at 03:42:41-03:42:42. | without warning by Officer Schlesinger. Officer Schlesinger stated to detectives that Murillo merely stepped out of the house, then walked briefly back inside before exiting again. Then officers communicated with Murillo for approximately one minute before Officer Schlesinger claimed to see what he believed to be Murillo "start to turn and run" towards Officers Garcia and Rodrigez, who were on the other side of the wall. Officer Schlesinger fired the 40mm round at Murillo causing Murillo to hit the ground before he got back up and ran southbound to the front of the property away from Officer Schlesinger. (**Exh. 9, Schlesinger Statement** at 21:6-22:6, to Sincich Decl. ¶9.)<br>**Clark Decl.** ¶9.<br>**Disputed** that Officer Tykhomryov fired the beanbag shotgun during the incident. It is not clear from Defendants Exhibit Q that Officer Tykhomryov fired a beanbag shotgun round. No recoil is seen, and no racking of a round and discharging a shell casing is seen. (See Defense Exhibit Q at 03:42:41-03:42:42.) Further, FID conducted a sound graph analysis of the incident to determine when rounds were discharged and by which officer. There is no indication in the FID report that Officer Tykhomryov fired his weapon. (**Exh. 20, FID Report** at 18, to Sincich Decl. |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | ¶20.) Finally, Officer Tykhomryov told detectives that he heard Murillo exit the gate then heard Officer Gutierrez and Defendants' shots fired. Officer Tykhomryov then told detectives that he did not fire his weapon. (**Exh. 11, Tykhomyrov Statement** at 12:14-24, 25:2-26:10, to Sincich Decl. ¶11.) |
| 31. | Upon seeing Murillo-Nix with the knife running toward several fellow officers, Officer Gutierrez then fired 3 rounds from his bean bag launcher.<br><br>Moving Party's Evidence:<br>Ex. L at 03:42:41-03:42:44; Ex. P at 03:42:41-03:42:44. | **Disputed** that Murillo was armed with a knife. (**Exh. 1, Griffin Depo** at 17:20-23, to Sincich Decl. 1 – When Griffin first saw Murillo, Griffin could not see Murillo's hands; **Exh. 1, Griffin Depo** at 21:8-16, to Sincich Decl. ¶1 – Griffin did not know what hand he had a knife in because Murillo's arms were tucked into his torso; **Exh. 1, Griffin Depo** at 27:14-17, to Sincich Decl. 1 – After falling to the ground, Griffin could not see anything in Murillo's hands; **Exh. 1, Griffin Depo** at 34:16-25, to Sincich Decl. 1 – Griffin assessed between each shot; **Exh. 1, Griffin Depo** at 35:12-14, to Sincich Decl. 1 – Griffin did not see a knife but saw Murillo's hands tucked into his body; **Exh. 1, Griffin Depo** at 46:8-9, to Sincich Decl. 1 – Griffin never heard a knife drop to the ground; **Exh. 1, Griffin Depo** at 46:10-12, to Sincich Decl. 1 – Griffin does not recall seeing a knife on the ground; **Exh. 1, Griffin Depo** at 47:2-4, to Sincich Decl. 1 – Up to the time Murillo was handcuffed, Griffin did not see a knife on the ground near Murillo; **Exh. 1, Griffin Depo** at 49:17-19, to Sincich Decl. 1 – Griffin does not recall hearing |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | the sound of a bullet hitting metal or the knife; **Exh. 1, Griffin Depo** at 49:20-23, to Sincich Decl. 1 – Griffin did not see a knife fly in the air at any point; **Exh. 1, Griffin Depo** at 55:12-22, to Sincich Decl. 1 – Griffin was not able to see Murillo's hands and did not see a knife during his third and fourth shots; **Exh. 1, Griffin Depo** at 61:1-62:1, to Sincich Decl. 1 – Murillo's hand position with his arms bent, leaning forward, officers unable to see his hands, did not change; (**Exh. 2, Griffin Statement I** at 16:15-17:5, to Sincich Decl. 2 – For Officer Griffin's third and fourth shot, he could not see Murillo's hands because they were tucked tight to his torso, stomach and chest area; **Exh. 3, Griffin Statement II** at 48:21-49:2, to Sincich Decl. 2 – Officer Griffin does not recall seeing the knife prior to his third or fourth shot; **Exh. 3, Griffin Statement II** at 50:3-6, to Sincich Decl. 3 – Officer Griffin never saw Murillo drop, throw, or discard the knife; **Exh. 4, Martinez Depo** at 35:12-16, 65:8-16, to Sincich Decl. 4 – Martinez did not see a knife anywhere around Murillo's while Murillo was chest-down on the ground; **Exh. 5, Martinez Statement I** at 20:2-5, to Sincich Decl. 5 – Martinez could not see Murillo's hands and could not see a knife in his hands while was on the ground prior to his third shot; **Exh. 5, Martinez Statement I** at 20:21-21:8, to Sincich Decl. 5 – Murillo's hands were tucked in the |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | entire time and his hand position did not vary at all during the shots; **Exh. 5, Martinez Statement I** at 22:2-4, to Sincich Decl. 5 – Martinez did not know where the knife was because he did not see it; **Exh. 6, Martinez Statement II** at 59:11-17, to Sincich Decl. 6 – Officer Martinez never saw Murillo transfer the grip of the knife, and never saw Murillo throw a knife; **Exh. 7, Alferez Statement** at 36:15-16, 44:17-19, to Sincich Decl. ¶7 – Sgt. Alferez was positioned behind the patrol vehicle and never drew his pistol; **Exh. 7, Alferez Statement** at 61:14-17, to Sincich Decl. ¶7 – Sgt. Alferez never saw Murillo in possession of any weapons; **Exh. 8, Knolls Statement** at 54:17-55:9, to Sincich Decl. ¶8 – After the shooting, Officer Knolls looked for a knife and could not find one, including nothing in Murillo's hands; **Exh. 10, Frazer Statement** at 18:23-25, to Sincich Decl. ¶10 – Officer Frazer never saw any weapons on Murillo; **Exh. 10, Frazer Statement** at 23:9-23, to Sincich Decl. ¶10 – As Murillo was running immediately prior to the lethal shots, Officer Frazer did not see any weapons on Murillo but instead say Murillo's hands pulled into his chest with his elbows flared out; **Exh. 11, Tykhomyrov Statement** at 21:21-23, to Sincich Decl. ¶11 – Officer Tykhomyrov never saw Murillo armed with any weapons; **Exh. 12, Carlos Statement** at 42:13-16, to Sincich Decl. |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | ¶12 - Officer Carlos saw Murillo crossing in front of the car in the driveway and did not see Murillo armed with any weapons; **Exh. 13, Lopez Statement** at 20:8-21:3, to Sincich Decl. ¶13 – Officer Lopez saw Murillo and could not tell if he had any objects in his hands because his hands were clinched up against his body; **Exh. 13, Lopez Statement** at 26:8-14, to Sincich Decl. ¶13 – Officer Lopez did not see an object in Murillo's hand when he was being taken into custody and did not know what happened to the object; **Exh. 13, Lopez Statement** at 35:1-6, to Sincich Decl. ¶13 – Officer Lopez did not unholster despite seeing Murillo with an object in his hand; **Exh. 15, S.Martinez Statement** at 14:2-3, to Sincich Decl. ¶15 – Officer S.Martinez did not draw her firearm; **Exh. 15, S.Martinez Statement** at 29:11-13, to Sincich Decl. ¶15 – Officer S.Martinez did not see any weapons on Murillo; **Exh. 15, S.Martinez Statement** at 32:17-33:4, to Sincich Decl. ¶15 – After the shooting, Officer S.Martinez assisted in putting Murillo in handcuffs and did not see any weapons on Murillo; **Exh. 14, Gutierrez Statement** at 10:23-25, to Sincich Decl. ¶14 – Officer Gutierrez assessed again and deployed a third beanbag shotgun round and heard a metallic clink on the ground fall then Officer Gutierrez heard lethal shots being fired; **Exh. 14, Gutierrez Statement** at 21:15-17, to |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | Sincich Decl. ¶14 – On Officer Gutierrez third beanbag shotgun round, he heard a metallic clink on the ground and believed that Murillo had dropped the knife; **Exh. 20, FID Report** at 25, to Sincich Decl. 20 – The FID "investigation did not locate [any] images or video footage showing Murillo holding a knife at the time of the OIS."; **Exh. 25, Officer Gutierrez Video Clip of OIS** at 00:05-00:12, to Sincich Decl. ¶25; **Exh. 26, Officer Gutierrez Video Clip of OIS at 12fps** at 00:10-00:19, to Sincich Decl. ¶26; **Exh. 27, Officer Gutierrez BWC Screenshots** at 1-5, to Sincich Decl. ¶27; **Exh. 28, Officer Griffin Video Clip of OIS** at 00:10-00:22, to Sincich Decl. ¶28; **Exh. 29, Officer Griffin Video Clip of OIS at 12fps** at 00:00-00:16, to Sincich Decl. ¶29; **Exh. 30, Officer Griffin BWC Screenshots** at 1-14, to Sincich Decl. ¶30; **Exh. 31, Officer Martinez Video Clip of OIS** at 00:10-00:22, to Sincich Decl. ¶31; **Exh. 32, Officer Martinez Video Clip of OIS at 12fps** at 00:00-00:16, to Sincich Decl. ¶32; **Exh. 33, Officer Knolls BWC Screenshots** at 1-7, to Sincich Decl. ¶33; **Exh. 34, Officer Knolls Video Clip of OIS** at 00:25-00:38, to Sincich Decl. ¶34. **Exh. 35, Officer Knolls Video Clip of OIS** at 00:00-02:13, to Sincich Decl. ¶35.)<br><br>**Clark Decl**. ¶11. |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | **Disputed** that Murillo ran towards several officers when Officer Gutierrez began to discharge his beanbag shotgun at Murillo.<br>- Officer Gutierrez saw Murillo exit through the gate and immediately deployed a beanbag round. Officer Gutierrez stated that he believed Murillo started running towards the officers *after* his first beanbag shotgun round deployment. (**Exh. 14, Gutierrez Statement** at 10:13-19, to Sincich Decl. ¶14; **Exh. 23, Scene Photos** at 10-15, to Sincich Decl. ¶23.)<br>- Additionally, viewing the diagram from the FID Report as reference, when Officer Gutierrez began firing at Murillo near the gate, Murillo would have been moving directly east and not towards the officers who were to the south. (**Exh. 20, FID Report** at 12, to Sincich Decl. ¶20.)<br>- Further, a reasonable jury could determine that Murillo could not see any officer as he was blinded by the patrol vehicle lights, several spotlights on him and therefore was not intending to run at any officer. Murillo was running towards the only unobstructed route out of the property, away from the initial threat of harm, which is surrounded by a cinderblock wall and gate – between the wall/gate and the patrol vehicle. (**Exh. 1, Griffin Depo** at 7:12-13, 50:8-14, to Sincich Decl. ¶1; **Exh. 4, Martinez Depo** 21:1-7, 21:22-25, 22:1-7, to Sincich Decl. ¶4; |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | **Exh. 8, Knolls Statement** at 25:12-25, to Sincich Decl. ¶8; **Exh. 13, Lopez Statement** at 16:12-21, to Sincich Decl. ¶13; **Exh. 20, FID Report** at 8, 12, 19-20, to Sincich Decl. ¶20; **Exh. 23, Scene Photos** at 15, to Sincich Decl. ¶23; **Exh. 28, Officer Griffin Video Clip of OIS** at 00:10-00:22, to Sincich Decl. ¶28; **Exh. 31, Officer Martinez Video Clip of OIS** at 00:10-00:22, to Sincich Decl. ¶31; **Exh. 34, Officer Knolls Video Clip of OIS** at 00:25-00:38, to Sincich Decl. ¶34.) Murillo never took a step past the hood front bumper of the patrol vehicle or outside the gate of the property toward any officer—he was already turning counterclockwise away from Defendants, collapsing to the ground, visibly unarmed at all times past the bumper of the vehicle and falling outside the property line. (**Exh. 25, Officer Gutierrez Video Clip of OIS** at 00:05-00:10, to Sincich Decl. ¶25; **Exh. 26, Officer Gutierrez Video Clip of OIS at 12fps** at 00:10-00:19, to Sincich Decl. ¶26; **Exh. 28, Officer Griffin Video Clip of OIS** at 00:10-00:22, to Sincich Decl. ¶28; **Exh. 29, Officer Griffin Video Clip of OIS at 12fps** at 00:00-00:16, to Sincich Decl. ¶29; **Exh. 31, Officer Martinez Video Clip of OIS** at 00:10-00:22, to Sincich Decl. ¶31; **Exh. 32, Officer Martinez Video Clip of OIS at 12fps** at 00:00-00:16, to Sincich Decl. ¶32; **Exh. 34, Officer Knolls Video Clip of OIS** at |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | 00:25-00:38, to Sincich Decl. ¶34.)<br>- Murillo was maneuvering around a car in his driveway towards the only exit of the property, the gap between the patrol vehicle and the brick wall in the driveway, not towards an officer. (**Exh. 8, Knolls Statement** at 53:13-25, to Sincich Decl. ¶8.)<br>- Murillo never took a step past the hood front bumper of the patrol vehicle or outside the gate of the property—he was already turning counterclockwise away from Defendants, collapsing to the ground, visibly unarmed at all times past the bumper of the vehicle and falling outside the property line. (**Exh. 25, Officer Gutierrez Video Clip of OIS** at 00:05-00:10, to Sincich Decl. ¶25; **Exh. 26, Officer Gutierrez Video Clip of OIS at 12fps** at 00:10-00:19, to Sincich Decl. ¶26; **Exh. 27, Officer Gutierrez BWC Screenshots**, to Sincich Decl. ¶27 – at 4: Murillo has not crossed property line after all three beanbag shotgun rounds; at 5: Murillo is falling past the property line halfway to the ground and twisting clockwise such that he is not facing Defendants; **Exh. 28, Officer Griffin Video Clip of OIS** at 00:10-00:22, to Sincich Decl. ¶28; **Exh. 29, Officer Griffin Video Clip of OIS at 12fps** at 00:00-00:16, to Sincich Decl. ¶29; **Exh. 30, Officer Griffin BWC Screenshots** at 4-14, to Sincich Decl. ¶30; **Exh. 31, Officer Martinez Video Clip of OIS** at 00:10-00:22, to Sincich Decl. ¶31; |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | **Exh. 32, Officer Martinez Video Clip of OIS at 12fps** at 00:00-00:16, to Sincich Decl. ¶32; **Exh. 33, Officer Knolls BWC Screenshots** at 5-7, to Sincich Decl. ¶33; **Exh. 34, Officer Knolls Video Clip of OIS** at 00:25-00:38, to Sincich Decl. ¶34.) **Exh. 36, Demonstrative Screenshots** at 1-34, to Sincich Decl. ¶36. **Clark Decl**. ¶9. <br><br> **Undisputed** that Officer Gutierrez fired 3 rounds from his beanbag shotgun at Murillo without warning. |
| 32. | The 40mm less-lethal and bean bag rounds all were ineffective at impeding Murillo-Nix's advance. <br><br> Moving Party's Evidence: <br> Ex. L at 03:42:41-03:42:44; Ex. P at 03:42:41-03:42:44. | **Disputed**. Officer Gutierrez's beanbag shotgun rounds were effective in stopping Murillo and causing Murillo to fall to the ground prior to Defendants' use of deadly force. (**Exh. 5, Martinez Statement I** at 13:8-15, to Sincich Decl. ¶5 – As Murillo was running, his hands were drawn into his own chest, and he was hunched over at the shoulders; **Exh. 14, Gutierrez Statement** at 10:22-23, to Sincich Decl. ¶14 – Officer Gutierrez knew that his second beanbag shotgun round struck Murillo and was effective because it made Murillo flinch; **Exh. 14, Gutierrez Statement** at 22:15-18, to Sincich Decl. ¶14 – Officer Gutierrez knew that his use of the beanbag shotgun was effective, and Murillo no longer had the knife; **Exh. 18, Autopsy Report** at 312, 321, to Sincigh Dec. ¶18; **Exh. 19, Autopsy Photos** at 1, 2, |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | 4, 14-15, 22, to Sincigh Dec. ¶19; **Exh. 25, Officer Gutierrez Video Clip of OIS** at 00:05-00:12, to Sinich Decl. ¶25; **Exh. 26, Officer Gutierrez Video Clip of OIS at 12fps** at 00:10-00:19, to Sincich Decl. ¶26; **Exh. 27, Officer Gutierrez BWC Screenshots** at 1-3, to Sincich Decl. ¶27 – Gutierrez's beanbag shotgun rounds fired; **Exh. 28, Officer Griffin Video Clip of OIS** at 00:10-00:22, to Sincich Decl. ¶28; **Exh. 29, Officer Griffin Video Clip of OIS at 12fps** at 00:00-00:16, to Sincich Decl. ¶29; **Exh. 30, Officer Griffin BWC Screenshots**, to Sincich Decl. ¶30 – at 1-3: Gutierrez's beanbag shotgun rounds fired; at 4: Murillo clutches stomach where impacted; at 5: Murillo begins to fall still within the property line; **Exh. 31, Officer Martinez Video Clip of OIS** at 00:10-00:22, to Sincich Decl. ¶31; **Exh. 32, Officer Martinez Video Clip of OIS at 12fps** at 00:00-00:16, to Sincich Decl. ¶32; **Exh. 34, Officer Knolls Video Clip of OIS** at 00:25-00:38, to Sincich Decl. ¶34.) |
| | | **Exh. 36, Demonstrative Screenshots** at 4-18, to Sincich Decl. ¶36. |
| | | **Clark Decl**. ¶10. |
| 33. | Murillo-Nix then continued sprinting down the driveway directly toward Officers Griffin and Martinez. | **Disputed** that Murillo ran towards an officer. Murillo was moving towards the gap in the gate; blinded by spotlights and could not see officers; and was falling to the ground after the |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | <u>Moving Party's Evidence</u>: Ex. L at 03:42:44-03:42:46; Ex. M at Ex. P at 03:42:44-03:42:46. | effective less-lethal shots. *See supra*, Nos. 31 and 32 above.<br>**Disputed** as to the characterization of "sprinting." Defendants do not support this argument with evidence. |
| **34.** | Seeing that Murillo-Nix was still quickly advancing toward them with a knife in hand, Officer Griffin fired 4 rounds from his firearm at Murillo-Nix, with the first shot fired when Murillo-Nix had closed to approximately 7 feet from Officer Griffin and was continuing to advance.<br><br><u>Moving Party's Evidence</u>: Ex. L at 03:42:44-03:42:47; Ex. M at 03:42:44-03:42:46. | **Disputed** that there was a knife in Murillo's hand at the time of any shots were fired by Defendants in the driveway. *See supra*, No. 31 above.<br>**Disputed** that Murillo ran towards an officer. Murillo was moving towards the gap in the gate; blinded by spotlights and could not see officers; and was falling to the ground after the effective less-lethal shots. *See supra*, Nos. 31 and 32 above.<br>**Disputed**. The less-lethal beanbag shotgun rounds were effective. *See supra*, No. 32 above.<br><br>**Disputed**. Assuming arguendo that Murillo had a knife in his hand in the front of the house after exiting the side gate, a reasonable jury could conclude that Murillo tossed the knife or the knife was propelled from his hand as a result of being shot with the second beanbag shotgun round. (**Exh. 36, Demonstrative Screenshots** at 3-14, to Sincich Decl. ¶36.)<br><br>**Disputed**. Assuming arguendo that Murillo had a knife in his hand at the time of Griffin's first shot. A reasonable jury could find that the first shot fired by Griffin, aimed center mass, struck Murillo's hand, which |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | was being held close to his chest, and propelled the knife out of Murillo's hand. Further, Defendants argue that Griffin shot the knife out of Murillo's hand. Thus, all of Griffin's subsequent shots and all of Martinez's shots were fired at Murillo without a knife in his hand. Thus, the remaining three rounds fired by Griffin and all three rounds fired by Martinez were against Murillo while Murillo was unarmed.<br><br>- (**Exh. 1, Griffin Depo** at 24:16-18, to Sincich Decl. ¶1 – Griffin aimed center mass for each shot.)<br><br>- (**Exh. 1, Griffin Depo** at 35:12-14, to Sincich Decl. ¶1 – Griffin did not see a knife but saw Murillo's hands tucked into his body.)<br><br>- (**Exh. 1, Griffin Depo** at 46:3-7, to Sincich Decl. ¶1 – As Murillo was going to the ground, Griffin did not see a knife or Murillo's hands.)<br><br>- (**Exh. 1, Griffin Depo** at 55:12-22, to Sincich Decl. ¶1 – Griffin was not able to see Murillo's hands and did not see a knife during his third and fourth shots.)<br><br>- (**Exh. 1, Griffin Depo** at 27:14-17, to Sincich Decl. ¶1 – After falling to the ground, Griffin could not see anything in Murillo's hands.)<br><br>- (**Exh. 1, Griffin Depo** at 61:1-62:1, to Sincich Decl. ¶1 – Murillo's hand position with his arms bent, leaning forward, officers unable to see his hands, did not change.)<br><br>- (**Exh. 5, Martinez Statement I** at |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | 20:2-5, to Sincich Decl. ¶5 – Martinez could not see Murillo's hands and could not see a knife in his hands while was on the ground prior to his third shot.) |
| | | - (**Exh. 18, Autopsy Report** at 311, 322, to Sincich Decl. ¶18.) |
| | | - (**Exh. 19, Autopsy Photos** at 29, to Sincich Decl. ¶19.) |
| | | - (**Exh. 20, FID Report** at 25-28, to Sincich Decl. ¶20.) |
| | | - (**Exh. 36, Demonstrative Screenshots** at 15-20, to Sincich Decl. ¶36.) |
| | | - (Doc. 44-4, Decl. of Tacy Ng.) |
| | | - (Doc. 44-5, Decl. of Kari Mar.) |
| | | **Disputed**. Assuming arguendo that Murillo was moving toward officers, a reasonable jury could find that the first shot fired by Griffin, aiming center mass, struck Murillo in the chest paralyzing him. The Medical Examiner determined that Gunshot Wound No. 1 entered Murillo's left upper chest, with a direction of travel that is front-to-back and left-to-right, lacerated his spinal cord at the second thoracic vertebra resulting in immediate paralysis. Thus, after Griffin's first shot, not only was Murillo not advancing toward any officer, but collapsing to the ground, but Murillo was physically incapable of advancing toward an officer. Therefore, Griffins remaining three rounds and Martinez's three rounds were at a person who was paralyzed, collapsing to the ground, |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | and not a threat of harm to any person or officer.<br>- (**Exh. 1, Griffin Depo** at 24:16-18, to Sincich Decl. ¶1 – Griffin aimed center mass for each shot.)<br>- (**Exh. 18, Autopsy Report** at 308-309, 322, to Sincich Decl. ¶18.)<br>- (**Exh. 19, Autopsy Photos** at 3, 23, 28, to Sincich Decl. ¶19.)<br>- (**Exh. 25, Officer Gutierrez Video Clip of OIS** at 00:05-00:12, to Sincich Decl. ¶25; **Exh. 26, Officer Gutierrez Video Clip of OIS at 12fps** at 00:10-00:19, to Sincich Decl. ¶26; **Exh. 27, Officer Gutierrez BWC Screenshots** at 1-5, to Sincich Decl. ¶27; **Exh. 28, Officer Griffin Video Clip of OIS** at 00:10-00:22, to Sincich Decl. ¶28; **Exh. 29, Officer Griffin Video Clip of OIS at 12fps** at 00:00-00:16, to Sincich Decl. ¶29; **Exh. 30, Officer Griffin BWC Screenshots** at 1-14, to Sincich Decl. ¶30; **Exh. 31, Officer Martinez Video Clip of OIS** at 00:10-00:22, to Sincich Decl. ¶31; **Exh. 32, Officer Martinez Video Clip of OIS at 12fps** at 00:00-00:16, to Sincich Decl. ¶32; **Exh. 33, Officer Knolls BWC Screenshots** at 1-7, to Sincich Decl. ¶33; **Exh. 34, Officer Knolls Video Clip of OIS** at 00:25-00:38, to Sincich Decl. ¶34; **Exh. 35, Officer Knolls Video Clip of OIS** at 00:00-02:13, to Sincich Decl. ¶35; **Exh. 36, Demonstrative Screenshots** at 15-20, to Sincich Decl. ¶36.) |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | **Disputed** that Murillo was approximately 7 feet from Griffin when Griffin fired his first shot. Defendants' evidence does not support this contention. Defendant's analysis ignores Griffin's own sworn testimony. Murillo was approximately 15 feet away from Griffin when Griffin fired his first shot. (**Exh. 1, Griffin Depo** at 22:15-19, to Sincich Decl. ¶1.) Further, the officers tactically repositioned (i.e., redeployed or backpaddled) to create more distance at the time. (**Exh. 1, Griffin Depo** at 20:14-20, to Sincich Decl. ¶1; **Exh. 4, Martinez Depo** at 36:22-25, to Sincich Decl. ¶4; **Exh. 5, Martinez Statement I** at 7:13-14, to Sincich Decl. ¶5; **Exh. 6, Martinez Statement II** at 51:16-20, to Sincich Decl. ¶6; **Exh. 3, Griffin Statement II** at 52 3-6, to Sincich Decl. ¶3.) This blatant contradiction calls into question much of Defendants' claims in their Motion that are not supported by admissible or sufficient evidence. **Omalu Decl**. ¶¶9-13. <br><br> **Undisputed** that Giffin unreasonably fired four rounds at Murillo. |
| 35. | Officer Martinez had been on the PA system, but when he saw Murillo-Nix running toward them, he dropped the microphone and grabbed his handgun. Officer Martinez fired 3 shots at Murillo-Nix, with the first being fired when Murillo-Nix had closed to | **Disputed** that there was a knife in Murillo's hand at the time of any shots were fired by Defendants in the driveway. Murilo was unarmed. *See supra*, No. 31 above. <br> **Disputed**. Assuming arguendo that Murillo had a knife in his hand, Griffin's first shot, aimed center mass, |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | approximately 4 feet away and was continuing to advance.<br><br>Moving Party's Evidence:<br>Ex. M at 03:42:40-03:42:47; **Exhibit U** (Ex. U), Deposition of Jesus Martinez at 28:1-19. | struck Murillo's hand, which was being held close to his chest, and propelled the knife out of Murillo's hand. Thus, all of Griffin's subsequent shots and all of Martinez's shots were fired at Murillo without a knife in his hand. Thus, the remaining three rounds fired by Griffin and the three rounds fired by Martinez were against Murillo while Murillo was unarmed. *See supra*, No. 34 above.<br><br>**Disputed** that Murillo ran towards an officer. Murillo was moving towards the gap in the gate; blinded by spotlights and could not see officers; and was falling to the ground after the effective less-lethal shots. *See supra*, Nos. 31 and 32 above.<br><br>**Disputed**. The less-lethal beanbag shotgun rounds were effective. *See supra*, No. 32 above.<br><br>**Disputed**. Assuming arguendo that Murillo was moving toward officers, a reasonable jury could find that the first shot fired by Griffin, aimed center mass, struck Murillo in the chest paralyzing him. Thus, after Griffin's first shot, not only was Murillo not advancing toward any officer, but collapsing to the ground, but Murillo was physically incapable of advancing toward an officer. Therefore, Griffins remaining three rounds and Martinez's three rounds were at a person who was paralyzed, collapsing to the ground, |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | and not a threat of harm to any person or officer. *See supra*, No. 34 above. **Disputed** that Murillo was approximately 4 feet from Martinez when Griffin fired his first shot. Defendants' evidence does not support this contention. Defendant's analysis ignores Griffin's own sworn testimony. Murillo was approximately 15 feet away from Griffin when Griffin fired his first shot, and a reasonable jury could find that Martinez fired his first shot 0.3 seconds thereafter. (**Exh. 1, Griffin Depo** at 22:15-19, to Sincich Decl. ¶1; **Exh. 20, FID Report** at 18, to Sincich Decl. ¶20.) Further, the officers were redeploying (i.e., backpaddling) to create more distance at the time. (**Exh. 4, Martinez Depo** at 36:22-25, to Sincich Decl. ¶4; **Exh. 5, Martinez Statement I** at 7:13-14, to Sincich Decl. ¶5; **Exh. 6, Martinez Statement II** at 51:16-20, to Sincich Decl. ¶6; **Exh. 3, Griffin Statement II** at 52 3-6, to Sincich Decl. ¶3.) Even the FID investigation stated that the distance from Martinez to Murillo for Martinez's first two shots was approximately 4 to 5 feet. (**Exh. 20, FID Report** at 15, to Sincich Decl. ¶20.) **Omalu Decl**. ¶¶9-13.<br><br>**Undisputed** that Martinez unreasonably fired three rounds at Murillo. Undisputed that Martinez had been on the PA system, saw Murillo, dropped |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | the microphone, and grabbed his handgun. |
| 36. | All of the shots fired from both Officers Martinez and Griffin were fired in less than 2 seconds.<br><br>Moving Party's Evidence:<br>Ex. L at 03:42:45-03:42:46; Ex. M at 03:42:45-03:42:47; Ex. P at 03:42:46-03:42:48. | **Undisputed** that, in haste and without warning, according to the FID soundgraph analysis Griffin and Martinez fired all seven (7) of their shots within two (2) seconds, without properly assessing the need to use deadly force, and without properly assessing between shots to determine if they should continue to use deadly force. (**Exh. 20, FID Report** at 18, to Sincich Decl. ¶20; **Exh. 36, Demonstrative Screenshots** at 18-34, to Sincich Decl. ¶36.) |
| 37. | From the moment Officer Schlesinger had fired his 40mm until the last firearm was fired, only 10 seconds had elapsed.<br><br>Moving Party's Evidence:<br>Ex. L at 03:42:36-03:42:46; Ex. O at 03:42:37-03:42:47. | **Undisputed** that, according to the FID soundgraph analysis, it was approximately 10.264 seconds from Officer Schlesinger firing his 40mm round without warning to the time that Martinez fired his final round at Murillo while Murillo was unarmed and on the ground. (**Exh. 20, FID Report** at 18, to Sincich Decl. ¶20; **Exh. 36, Demonstrative Screenshots** at 1-34, to Sincich Decl. ¶36.) |
| 38. | One of the shots fired at Murillo-Nix struck his hand, causing one of the knives to be projected into the yard, splintering the handle.<br><br>Moving Party's Evidence:<br>Declaration of Tracy Ng at ¶¶ 4-7 and **Exhibits W-X**, Ng Reports and knife photos attached thereto; Declaration of Kari Mar at ¶¶ 2-4 | **Disputed** that a shot to the hand could cause a knife to be projected into a neighboring yard without seeing any throwing motion by Murillo to cause the momentum of the blade to travel in that direction. Calls for expert opinion.<br>-   Defendants evidence does not support the fantastic but nevertheless unsupported expert opinion that the knife was propelled some 10 feet in the |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | and **Exhibit Y** (Ex. Y), DNA report, attached thereto; **Exhibit S** (Ex. S), enhanced photo from Gutierrez BWV; Ex. P at 3:42:45. | air and some 10 feet backwards, into a neighboring yard, as a result of being shot out of Murillo's hand while Murillo supposedly had a firm grip on the knife at the time and his arm was tucked into this abdomen area, with his momentum was moving in the opposite direction of where the knife supposedly landed. (See <u>Defense Exhibit S</u> showing an unidentifiable object in the air.) <br><br> -    (**Exh. 1, Griffin Depo** at 60:13-19, to Sincich Decl. ¶1 – The blade of the knife was found approximately 10 feet from where Murillo was standing when Griffin first shot him.) <br><br> -    (**Exh. 20, FID Report** at 26-28, to Sincich Decl. ¶20 – knife found in the neighboring yard.) <br><br> -    (**Exh. 5, Martinez Statement I** at 13:8-15, to Sincich Decl. ¶5 – As Murillo was running, his hands were drawn into his own chest, and he was hunched over at the shoulders.) <br><br> -    (**Exh. 6, Martinez Statement II** at 54:3, 54:18-20, to Sincich Decl. ¶6 – Martinez claimed that Murillo's hands were close to his body, holding the knife close to his chest with the blade pointed down.) <br><br> -    (**Exh. 1, Griffin Depo** at 17:20-23, to Sincich Decl. ¶1 – When Griffin first saw Murillo, Griffin could not see Murillo's hands.) <br><br> -    (**Exh. 1, Griffin Depo** at 35:12-14, to Sincich Decl. ¶1 – Griffin did not |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | see a knife but saw Murillo's hands tucked into his body.) |
| | | - (**Exh. 1, Griffin Depo** at 43:24-44:6; 45:4-17, to Sincich Decl. ¶1 – Griffin saw Murillo tuck his hands into his body and lean forward and was no longer able to see Murillo's hands.) |
| | | - (**Exh. 1, Griffin Depo** at 46:3-7, to Sincich Decl. ¶1 – As Murillo was going to the ground, Griffin did not see a knife or Murillo's hands.) |
| | | - (**Exh. 1, Griffin Depo** at 55:12-22, to Sincich Decl. ¶1 – Griffin was not able to see Murillo's hands and did not see a knife during his third and fourth shots.) |
| | | - (**Exh. 1, Griffin Depo** at 55:23-56:2, to Sincich Decl. ¶1 – During Griffin's first two shots, Murillo's hands were ticked close against his body.) |
| | | - (**Exh. 1, Griffin Depo** at 61:1-62:1, to Sincich Decl. ¶1 – Murillo's hand position with his arms bent, leaning forward, officers unable to see his hands, did not change.) |
| | | - (**Exh. 2, Griffin Statement I** at 8:5-9, to Sincich Decl. ¶2 – Officer Griffin looked at Murillo and claimed to see what he described as "a large metallic object," that he could not identify because Murillo's arms were "tucked into his torso.") |
| | | - (**Exh. 2, Griffin Statement I** at 16:15-17:5, to Sincich Decl. ¶2 – For Griffin's third and fourth shot, he |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | could not see Murillo's hands because they were tucked tight to his torso, stomach and chest area.)<br>- (**Exh. 1, Griffin Depo** at 49:17-19, to Sincich Decl. ¶1 – Griffin does not recall hearing the sound of a bullet hitting metal or the knife.)<br>- (**Exh. 1, Griffin Depo** at 49:20-23, to Sincich Decl. ¶1 – Griffin did not see a knife fly in the air at any point.)<br>- (**Exh. 18, Autopsy Report** at 310-311, 322, to Sincich Decl. ¶18.)<br>- (**Exh. 19, Autopsy Photos** at 6-7, 8, 10-11, 16-19, 27, 29, to Sincich Decl. ¶19.)<br>- (**Exh. 25, Officer Gutierrez Video Clip of OIS** at 00:05-00:10, to Sincich Decl. ¶25; **Exh. 26, Officer Gutierrez Video Clip of OIS at 12fps** at 00:10-00:19, to Sincich Decl. ¶26; **Exh. 28, Officer Griffin Video Clip of OIS** at 00:10-00:22, to Sincich Decl. ¶28; **Exh. 29, Officer Griffin Video Clip of OIS at 12fps** at 00:00-00:16, to Sincich Decl. ¶29; **Exh. 31, Officer Martinez Video Clip of OIS** at 00:10-00:22, to Sincich Decl. ¶31; **Exh. 32, Officer Martinez Video Clip of OIS at 12fps** at 00:00-00:16, to Sincich Decl. ¶32; **Exh. 34, Officer Knolls Video Clip of OIS** at 00:25-00:38, to Sincich Decl. ¶34.)<br>- (**Exh. 8, Knolls Statement** at 42:25-44:13, to Sincich Decl. ¶8 – Officer Knolls described the knife being the length of Murillo's forearm in his left hand, with the blade affixed |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | to his left forearm pointed towards his elbow.) **-** (**Exh. 8, Knolls Statement** at 55:11-13, to Sincich Decl. ¶8 – When Murillo was on the ground, his hands were still clinched in the same way as when he was running.) **-** (**Exh. 12, Carlos Statement** at 22:7-9, to Sincich Decl. ¶12 - Officer Carlos announced that Murillo had a knife in his left pocket.) **-** (**Exh. 13, Lopez Statement** at 24:21-23, to Sincich Decl. ¶13 – Officer Lopez assisted in handcuffing Murillo.). (**Exh. 13, Lopez Statement** at 36:9-11, to Sincich Decl. ¶13 – Officer Lopez did not see any injuries to Murillo's hands at the time.) **-** (**Exh. 14, Gutierrez Statement** at 17:15-18, to Sincich Decl. ¶14 - Officer Gutierrez claimed that the blade of the knife protruded from the bottom/pinky side of Murillo's hand.) **-** (**Exh. 14, Gutierrez Statement** at 21:15-17, to Sincich Decl. ¶14 – On Officer Gutierrez third beanbag shotgun round, he heard a metallic clink on the ground and believed that Murillo had dropped the knife.) **-** (**Exh. 36, Demonstrative Screenshots** at 3-14, to Sincich Decl. ¶36.) Defense Exhibit S does not assist in their analysis. There is no evidence that supports making the leap that the circled unidentifiable flying object (1) |

| | | |
|---|---|---|
| **I.** | **The Officers' Actions Were Objectively Reasonable** | |
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | is a knife, (2) came from Murillo, or (3) landed in the neighbor's yard. Nevertheless, even assuming arguendo that the circled unidentifiable flying object is a knife, and even assuming that it was propelled in the air by a lethal round – this screenshot is taken at 03:42:45 on Officer Gutierrez's BWC video, which is approximately the same time that Officer Gutierrez fired his third beanbag shotgun round and Griffin's first pistol round. Thus, Murillo was no threat. Thus, all of Griffin's subsequent shots and all of Martinez's shots were fired at Murillo without a knife in his hand. Thus, the remaining three rounds fired by Griffin and all three rounds fired by Martinez were against Murillo while Murillo was unarmed. *See supra*, No. 34 above.<br><br>Thus, Griffin and Martinez should have immediately seen this shiny, reflective, knife being launched in the air after Officer Griffin's first round therefore identifying that Murillo was unarmed for the remaining six (6) shot fired as Murillo was falling to the ground. **Clark Decl**. ¶¶12-13. |
| **39.** | The officers called for ambulance assistance seconds after the final shot was fired.<br><br>Moving Party's Evidence:<br>**Exhibit T** (Ex. T), Sgt. Alferez BWV no. 2 at 3:42:56-3:42:59 (requesting "Let me get the LAFD | **Undisputed** as immaterial and for the purposes of this motion only. |

| I. | The Officers' Actions Were Objectively Reasonable | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | up here."); see also 03:43:32-03:43:38 (again requesting LAFD and response stating that they were coming) | |

| II. | The Officers' Actions did not "Shock the Conscience" | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| **40.** | Any reasonable officer would have concluded that deadly force was appropriate in response to Murillo-Nix's actions, which included quickly advancing on the Officers while brandishing a knife.<br><br>Moving Party's Evidence:<br>See Defendants' above SUFs (1-39) and evidentiary support, which is incorporated herein by reference. | **Disputed**. Calls for expert opinion and Defendants do not support this "fact" with an expert declaration. Therefore, this "fact" is mere argument and inappropriate for this document claiming to be uncontroverted, which is based on several disputed facts.<br>Any reasonable officer would have concluded that deadly force was not appropriate under these circumstances. (**Exh. 21, BOPC Findings** at 24-25, to Sincich Decl. ¶20.)<br>Murillo never took a step past the hood front bumper of the patrol vehicle or outside the gate of the property toward any officer—he was already turning counterclockwise away from Defendants, collapsing to the ground, visibly unarmed at all times past the bumper of the vehicle and falling outside the property line. (**Exh. 25, Officer Gutierrez Video Clip of OIS** at 00:05-00:10, to Sincich Decl. ¶25; **Exh. 26, Officer Gutierrez Video Clip of OIS at 12fps** at 00:10-00:19, to Sincich Decl. ¶26; **Exh. 28, Officer** |

| II. | The Officers' Actions did not "Shock the Conscience" | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | **Griffin Video Clip of OIS** at 00:10-00:22, to Sincich Decl. ¶28; **Exh. 29, Officer Griffin Video Clip of OIS at 12fps** at 00:00-00:16, to Sincich Decl. ¶29; **Exh. 31, Officer Martinez Video Clip of OIS** at 00:10-00:22, to Sincich Decl. ¶31; **Exh. 32, Officer Martinez Video Clip of OIS at 12fps** at 00:00-00:16, to Sincich Decl. ¶32; **Exh. 34, Officer Knolls Video Clip of OIS** at 00:25-00:38, to Sincich Decl. ¶34; **Exh. 36, Demonstrative Screenshots** at 1-34, to Sincich Decl. ¶36.).) |
| | | **Disputed** that there was a knife in Murillo's hand at the time of any shots were fired by Defendants in the driveway. Murilo was unarmed. *See supra*, No. 31 above. |
| | | **Disputed**. Assuming arguendo that Murillo had a knife in his hand, Griffin's first shot, aimed center mass, struck Murillo's hand, which was being held close to his chest, and propelled the knife out of Murillo's hand. Thus, all of Griffin's subsequent shots and all of Martinez's shots were fired at Murillo without a knife in his hand. Thus, the remaining three rounds fired by Griffin and the three rounds fired by Martinez were against Murillo while Murillo was unarmed. *See supra*, No. 34 above. |
| | | **Disputed** that Murillo ran towards an officer. Murillo was moving towards the gap in the gate; blinded by spotlights and could not see officers; and was falling to the ground after the |

| II. | The Officers' Actions did not "Shock the Conscience" | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | effective less-lethal shots. *See supra*, Nos. 31 and 32 above.<br><br>**Disputed**. The less-lethal beanbag shotgun rounds were effective. *See supra*, No. 32 above.<br><br>**Clark Decl** ¶14.<br>**Omalu Decl**. ¶¶9-13.<br>Plaintiff incorporates by reference Plaintiff's Disputed Facts and Supporting Evidence to Defendants SUF Nos. 1-39 above.<br><br>*See* Plaintiff's Statement of Objections filed concurrently herewith, ¶40. |
| 41. | Officer Martinez and Officer Griffin fired their respective lethal weapons solely in response to the imminent threat that Murillo-Nix posed.<br><br>Moving Party's Evidence:<br>Ex. L at 03:42:38-03:42:47; Ex. M at Ex. M at 02:36:04-03:42:41; Ex. U at 18:21-19:04, 19:11-21, 58:17-59:4, 60:3-6; **Exhibit V** (Ex. V) Deposition of Kyle Griffin at 35:10-16, 35:25-36:2, 36:14-21, 44:2-6, 44:13-16. | **Disputed**. Calls for a legal conclusion and misstates the law. The standard for the use of deadly force is not merely whether the subject was a threat, but if the subject was an immediate threat specifically of death or serious bodily injury.<br><br>*See* Plaintiff's Statement of Objections filed concurrently herewith, ¶41.<br><br>**Disputed** that there was a knife in Murillo's hand at the time of any shots were fired by Defendants in the driveway. Murilo was unarmed. *See supra*, No. 31 above.<br><br>**Disputed**. Assuming arguendo that Murillo had a knife in his hand, Griffin's first shot, aimed center mass, struck Murillo's hand, which was being held close to his chest, and propelled the knife out of Murillo's hand. Thus, all of Griffin's subsequent shots and all of Martinez's shots were fired at Murillo without a knife in his hand. Thus, the remaining three rounds |

| | | |
|---|---|---|
| **II.** | **The Officers' Actions did not "Shock the Conscience"** | |
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | fired by Griffin and the three rounds fired by Martinez were against Murillo while Murillo was unarmed. *See supra*, No. 34 above. **Disputed** that Murillo ran towards an officer. Murillo was moving towards the gap in the gate; blinded by spotlights and could not see officers; and was falling to the ground after the effective less-lethal shots. *See supra*, Nos. 31 and 32 above. **Disputed**. The less-lethal beanbag shotgun rounds were effective. *See supra*, No. 32 above. **Disputed**. Assuming arguendo that Murillo was moving toward officers, a reasonable jury could find that the first shot fired by Griffin, aimed center mass, struck Murillo in the chest paralyzing him. Thus, after Griffin's first shot, not only was Murillo not advancing toward any officer, but collapsing to the ground, but Murillo was physically incapable of advancing toward an officer. Therefore, Griffins remaining three rounds and Martinez's three rounds were at a person who was paralyzed, collapsing to the ground, and not a threat of harm to any person or officer. *See supra*, No. 34 above. **Disputed**. Murillo never took a step past the hood front bumper of the patrol vehicle or outside the gate of the property toward any officer—he was already turning counterclockwise away from Defendants, collapsing to the ground, visibly unarmed at all times |

| II. | The Officers' Actions did not "Shock the Conscience" | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | past the bumper of the vehicle and falling outside the property line. *See supra*, No. 40 above. (**Exh. 21, BOPC Findings** at 24-25, to Sincich Decl. ¶20 – finding Officer Martinez's last shot to be out of policy, not proportional, objectively unreasonable, and unnecessary.) *See* **PAMF 47** – Murillo was surrounded.<br><br>*See* **PAMF 46, 49** – Murillo was outnumbered.<br><br>*See* **PAMF 51** – Officers had superior training.<br><br>*See* **PAMF 53** – Murillo was suffering a mental health crisis.<br><br>*See* **PAMF 65** – Defendants knew Murillo was coming to the front.<br><br>*See* **PAMF 70** – Murillo was blinded by the lights.<br><br>*See* **PAMF 74** – Murillo was already effectively struck by several effective less-lethal rounds causing him to fall to the ground.<br><br>*See* **PAMF 77** – Murillo was unarmed.<br><br>*See* **PAMF 78** – Murillo was unarmed, falling to the ground during the deadly force.<br><br>*See* **PAMF 80** – Defendants knew Murillo had already been shot by several less-lethal rounds. |

| II. | The Officers' Actions did not "Shock the Conscience" | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | *See* **PAMF 85-88** – Murillo was paralyzed by a shot and collapsed to the ground. |
| | | *See* **PAMF 89** – Defendants were tactically repositioning. |
| | | *See* **PAMF 90-94** – Murillo never made a swing, slash, stab, threaten, or furtive movement with a knife toward or around any officers. |
| | | *See* **PAMF 95** – Defendants did not hear Murillo verbally threaten to harm anyone. |
| | | *See* **PAMF 96** – There were reasonable alternatives available. |
| | | *See* **PAMF 99-100** – Defendants had no information that Murillo ever committed an act of violence towards or injured any person. |
| | | *See* **PAMF 102-103** – Defendants had cover. |
| | | Murillo was not an immediate threat of death or serious bodily injury. (**Clark Decl**. ¶14.) **Omalu Decl. ¶¶9-13.** |

| III. | The Officers Are Entitled to Qualified Immunity | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| **42.** | Any reasonable officer would have concluded that deadly force was appropriate in response to Murillo- | **Disputed**. Any reasonable officer would have concluded that deadly force was |

| III. | The Officers Are Entitled to Qualified Immunity | |
| --- | --- | --- |
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | Nix's actions, which included quickly advancing on the Officers while brandishing a knife.<br><br>Moving Party's Evidence:<br>See Defendants' above SUFs (1-41) and evidentiary support, which is incorporated herein by reference. | not appropriate under these circumstances. (**Clark Decl**. ¶14.)<br>**Omalu Decl**. ¶¶9-13.<br>Further, disputed that Murillo brandished a knife. *See supra*, Plaintiff's Disputed Facts and Supporting Evidence to Defendants SUF Nos. 1-41 above.<br>(**Exh. 21, BOPC Findings** at 24-25, to Sincich Decl. ¶20 – finding Officer Martinez's last shot to be out of policy, not proportional, objectively unreasonable, and unnecessary.) |

| IV. | Plaintiff's Claims for State Law Violations are Precluded Given the Officers' Actions were Lawful | |
| --- | --- | --- |
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| **43.** | Any reasonable officer would have concluded that deadly force was appropriate in response to Murillo-Nix's actions, which included quickly advancing on the Officers while brandishing a knife.<br><br>Moving Party's Evidence:<br>See Defendants' above SUFs (1-42) and evidentiary support, which is incorporated herein by reference. | **Disputed**. Any reasonable officer would have concluded that deadly force was not appropriate under these circumstances. (**Clark Decl**. ¶14.)<br>**Omalu Decl**. ¶¶9-13.<br>*See* Plaintiff's Statement of Objections filed concurrently herewith, ¶43.<br>Further, disputed that Murillo brandished a knife. *See supra*, Plaintiff's Disputed Facts and Supporting Evidence to Defendants SUF Nos. 1-42 above.<br>(**Exh. 21, BOPC Findings** at 24-25, to Sincich Decl. ¶20 – finding Officer Martinez's last shot to be out of policy, not proportional, objectively unreasonable, and unnecessary.) |

| V. | **Plaintiff's Bane Act Claim Fails as a Matter of Law** | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| **44.** | Any reasonable officer would have concluded that deadly force was appropriate in response to Murillo-Nix's actions, which included quickly advancing on the Officers while brandishing a knife.<br><br>Moving Party's Evidence:<br>See Defendants' above SUFs (1-43) and evidentiary support, which is incorporated herein by reference. | **Disputed**. Any reasonable officer would have concluded that deadly force was not appropriate under these circumstances. (**Clark Decl**. ¶14.)<br>**Omalu Decl**. ¶¶9-13.<br>Further, disputed that Murillo brandished a knife. *See supra*, Plaintiff's Disputed Facts and Supporting Evidence to Defendants SUF Nos. 1-43 above.<br>(**Exh. 21, BOPC Findings** at 24-25, to Sincich Decl. ¶20 – finding Officer Martinez's last shot to be out of policy, not proportional, objectively unreasonable, and unnecessary.) |
| **45.** | There is no evidence to support that either Officer Martinez or Officer Griffin had any specific intent to deprive Murillo-Nix of any of his alleged rights.<br><br>Moving Party's Evidence:<br>Ex. L at 03:42:38-03:42:47; Ex. M at Ex. M at 02:36:04-03:42:41; Ex. U at 18:21-19:04, 19:11-21, 58:17-59:4, 60:3-6; Ex. V at 35:10-16, 35:25-36:2, 36:14-21, 44:2-6, 44:13-16. | **Disputed**. There is ample evidence to support a reasonable jury finding that Defendants violated the Bane Act. *See supra*, Plaintiff's Disputed Facts and Supporting Evidence to Defendants SUF Nos. 1-44 above and Plaintiff's Additional Material Facts *filed concurrently herewith*.<br>(**Exh. 21, BOPC Findings** at 24-25, to Sincich Decl. ¶20 – finding Officer Martinez's last shot to be out of policy, not proportional, objectively unreasonable, and unnecessary.)<br>(**Exh. 4, Martinez Depo** at 11:2-3, to Sincich Decl. ¶4 – Officer Martinez intentionally pressed the trigger for each shot.)<br>(**Exh. 4, Martinez Depo** at 11:8-12:1, to Sincich Decl. ¶4 – Between each shot, Martinez assessed for approximately half a second.)<br>Murillo was unarmed at the time of the OIS, the less-lethal shots were |

| V.     Plaintiff's Bane Act Claim Fails as a Matter of Law | | |
|---|---|---|
| | **Defendants' Uncontroverted Facts and Supporting Evidence** | **Plaintiff's Disputed Facts and Supporting Evidence** |
| | | effective, Murillo was paralyzed by a shot, and Murillo was shot while falling and on the ground. Murillo was shot while he was not an immediate threat of death or serious bodily injury and that should shock the conscience of any person. (*See supra*, Plaintiff's Disputed Facts and Supporting Evidence Nos. 34-35 & 41 above.) (**Exh. 6, Martinez Statement II** at 60:18-19, to Sincich Decl. ¶6 - Officer Martinez admitted that he "was in shock for a little bit.") |

**PLAINTIFF'S RESPONSES TO DEFENDANTS' CONCLUSIONS OF LAW**

Defendants failed to provide any conclusions of law, nevertheless:

1.     Officers Griffin and Martinez violated Murillo's Fourth Amendment Rights as the force used was unreasonable under *Graham v. Conner*, 490 U.S. 386 (1989) and its progeny.

2.     Officers Griffin and Martinez are not entitled to qualified immunity because they knowingly violated clearly established law. *Vos v. City of Newport Beach*, 892 F.3d 1024 (9th Cir. 2018).

3.     Officers Griffin and Martinez's use of force was not objectively reasonable and indeed shocks the conscience for two officers to use deadly force against an unarmed man suffering a mental illness, falling to the ground, turning away from them, followed by their post-incident attempt to justify their unnecessary deadly force by claiming that he was running at them when the shots were fired and repeatedly refusing to admit that shots were fired when he was on the ground. As

1 | discussed in Plaintiff's Memorandum of Points and Authorities, there are sufficient

2 | facts for a jury to find in Plaintiff's favor on all of Plaintiff's claims.

3

4

5 | DATED:  November 22, 2023          **LAW OFFICES OF DALE K. GALIPO**

6

7 | By:_____*Marcel F. Sincich*_____
Dale K. Galipo, Esq.

8 | Marcel F. Sincich, Esq.
*Attorney for Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28