# "EXHIBIT 2"

# STATEMENT OF

## POLICE OFFICER II KYLE GRIFFIN (1st Intv.)

Senior Administrative Clerk V. Shaw, Serial No. N4488, reviewed the digital recording (TP97252, F004-22) and transcription of Officer Griffin's interview.  The inaudible recordings that were clearly audible are listed below.  All others remain inaudible.

| PAGE | LINE | INAUDIBLE/CORRECTIONS |
|------|------|------------------------|
| 07 | 02 | REPLACE: that WITH: **the - -** we |
| 08 | 21 | REPLACE: launch WITH: **lunge** |
| 11 | 06 | REPLACE: It's WITH: **In** between |
| 11 | 14 | REPLACE: now WITH: **I know** you said |
| 14 | 11 | REPLACE: was paced WITH: **his pace** |
| 21 | 17 | REPLACE: ordering WITH: **I order** |

CONFIDENTIAL
**LOS ANGELES POLICE DEPARTMENT**
Force Investigation Division

| | |
|---|---|
| In the Matter of: | ) DR. No. |
| Officer-Involved Shooting | ) FID No. F004-22 |
| Transcription of Recorded | ) Audio No Griffin |
| Interview of Police Officer | ) |
| Kyle Griffin, #42066 | ) |
| | ) |

MURILLO V. COLA

CV22-03188 DMG(SKx)

Transcription of recorded abbreviated interview of
Officer Kyle Griffin by Detective Anthony Rheault and
Detective Justin Fuller.  Also, present Attorney David
Winslow, transcribed by Julie Ito.

SUBJECT TO

PROTECTIVE ORDER

Transcribed by:
Julie Ito

Job Number:
TP97252

CONFIDENTIAL

1              Audio No. Officer Kyle Griffin

2

3         DETECTIVE RHEAULT:  All right.  Today's date is

4   February 1st, 2022.  The time now is 1429 hours.  I'm

5   Detective Anthony Rheault; first name common spelling, last

6   name spelled, R-h-e-a-u-l-t, Serial -- Serial Number 33961,

7   assigned to Force Investigation Division.  And I'm here at

8   Foothill Station to interview Police Officer II Kyle

9   Griffin.  Sir, for voice recognition purposes, could you

10   state and spell your name for me, please?

11         OFFICER GRIFFIN:  Yes.  My name is Kyle Griffin,

12   K-y-l-e, G-r-i-f-f-i-n.

13         DETECTIVE RHEAULT:  Okay.  And your serial number is

14   42066?

15         OFFICER GRIFFIN:  Yes.

16         DETECTIVE RHEAULT:  All right.  This is regarding a

17   officer-involved shooting incident that occurred at 12935

18   Deadmond Street.  That's spelled -- Desmond Street.  That's

19   spelled David, Edward, Sam, Mary, ocean, Nora, David on

20   February 1st, 2022.  Also present for the interview is?

21         DETECTIVE FULLER:  Detective II Justin Fuller,

22   J-u-s-t-i-n, F-u-l-l-e-r, Serial Number 37232 from FID.

23         ATTORNEY DAVID WINSLOW:  David Winslow, W-i-n-s-l-o-w,

24   attorney for Officer Griffin.

25         DETECTIVE RHEAULT:  Officer Griffin, has everyone in

2

1    the room been identified?

2         OFFICER GRIFFIN:  Yes.

3         DETECTIVE RHEAULT:  Okay.  Before we begin the

4    interview, will you provide a voluntary statement?

5         OFFICER GRIFFIN:  No.

6         DETECTIVE RHEAULT:  Since you have declined to provide

7    a voluntary statement, I must read you the following:  The

8    entire investigation concerning this incident including this

9    digitally-recorded interview is classified as confidential

10   by the Chief of Police.  Do you understand?

11        OFFICER GRIFFIN:  Yes.

12        DETECTIVE RHEAULT:  As a supervisor of the Los Angeles

13   Police Department and as authorized by the Chief of Police,

14   I want to inform you that your silence could be deemed as

15   insubordination and could lead to administrative discipline

16   which could result in your discharge or removal from office.

17   And that any statement made under the compulsion of the

18   threat of such discipline cannot be used against you in any

19   subsequent criminal proceeding.  Do you have any questions?

20        OFFICER GRIFFIN:  No.

21        DETECTIVE RHEAULT:  Okay.  I hereby order you to answer

22   all questions and provide a statement in this matter.

23   Before this interview, did you have an opportunity to view

24   your body-worn video?

25        OFFICER GRIFFIN:  Yes.

3

1    DETECTIVE RHEAULT: Okay. And did you have an

2    opportunity to -- to view digital in-car video?

3        OFFICER GRIFFIN: No.

4        DETECTIVE RHEAULT: No. Okay. It's my understanding

5    that the position of your vehicle was approximately half a

6    block away and would not have captured this incident, is

7    that correct?

8        OFFICER GRIFFIN: Yes.

9        DETECTIVE RHEAULT: I see. Okay. And regarding your

10   body-worn video, the portion of your body-worn video we

11   showed you prior to this interview was approximately two

12   minutes prior to the OIS and to the completion of your

13   body-worn video when it was turned off approximately two

14   minutes after the OIS, is that correct?

15       OFFICER GRIFFIN: Yes.

16       DETECTIVE RHEAULT: Okay. And what we're conducting

17   here today is an abbreviated interview specifically covering

18   your use of deadly force. We will con -- conduct a full

19   comprehensive interview tomorrow where your entire body-worn

20   video will be viewed prior to that interview, is that your

21   understanding?

22       OFFICER GRIFFIN: Yes.

23       DETECTIVE RHEAULT: I see. Okay. Have you viewed any

24   body-worn video or digital in-car video of this incident

25   without FID present?

4

1      OFFICER GRIFFIN:  No.

2          DETECTIVE RHEAULT:  Have you viewed any other video

3      such as news reports or social media content regarding this

4      incident?

5          OFFICER GRIFFIN:  No.

6          DETECTIVE RHEAULT:  All right.  What was your start of

7      watch today?

8          OFFICER GRIFFIN:  1500 on yesterday's date.

9          DETECTIVE RHEAULT:  Thank you for the clarification.

10     So, that would have been the 31st of January?

11         OFFICER GRIFFIN:  Correct.

12         DETECTIVE RHEAULT:  All right.  And what time did you

13     wake up on the 31st?

14         OFFICER GRIFFIN:  8:00 a.m.

15         DETECTIVE RHEAULT:  Okay.  So, and how many hours of

16     sleep did you get on that -- that night?

17         OFFICER GRIFFIN:  Approximately five hours.

18         DETECTIVE RHEAULT:  Five hours.  So, you got -- five

19     hours sleep and -- and now at 1430 hours you've been up for

20     an additional 30 hours after that, is that correct?

21         OFFICER GRIFFIN:  Yes.

22         DETECTIVE RHEAULT:  And do you believe you're able to

23     conduct this abbreviated interview with us here now?

24         OFFICER GRIFFIN:  Yes.

25         DETECTIVE RHEAULT:  I see.  Okay.  So, Officer Griffin,

5

1   what I'd like to get from you is first please let us know
2   where you were positioned just prior to firing your weapon
3   and what caused you to fire the weapon?  I would like in --
4   in narrative form from you what you heard from any source
5   and what you saw and what that caused you to -- to perceive
6   prior to firing your weapon?
7           OFFICER GRIFFIN:  Okay.
8           ATTORNEY DAVID WINSLOW:  And understanding it's
9   abbreviated so don't stress out if you don't get all the
10  details.  We can do that tomorrow.
11          OFFICER GRIFFIN:  Okay.
12          ATTORNEY DAVID WINSLOW:  Okay.
13          OFFICER GRIFFIN:  So, yeah.  So, the -- the abbreviated
14  statement, my positioning would be on the one-four corner of
15  the property on the -- the right side of the driveway just
16  at the -- the entrance to the driveway kind of on the
17  sidewalk so outside the property on the -- on the city
18  public.  And I was on the right side of the police vehicle
19  that was parked in the driveway.
20          DETECTIVE RHEAULT:  Okay.  And what -- what --
21  continue.  What alerted you to the potential presence of the
22  suspect and what did -- what did you hear and see and the --
23  the suspect doing?
24          OFFICER GRIFFIN:  Okay.  So, the initial radio call was
25  an ADW suspect there now armed with a knife which was the --

6

1   the initial alertness of, you know, the suspect, you know,

2   being a danger.  But prior to the actual incident that we

3   hear radio broadcast on -- on the -- the tactical frequency

4   from officers in the rear of the location stating that he

5   had -- he was pacing back and forth in the back and that he

6   had also exited the rear holding a knife.

7            They -- they stated that he then went back to the

8   rear door, opened it and then was then seen with two knives

9   one in each hand.  Very, very quickly after that I hear what

10  to me, I believe, was less lethal munitions being fired off

11  of what I think is the -- the two side of the residence and

12  simultaneous broadcast of he's -- he's going to the front --

13  to the front of the house.

14           So, at that point, you know, trying to pay

15  attention to -- to where -- which direction they mean, if

16  he's going through the house or the side I -- I looked to

17  the left side of the house which would be the -- the one-two

18  corner.  There's a -- a black gate and I see that crash open

19  and I see the suspect kind of like, you know, like crash

20  through that gate and I turned to the -- the front part of

21  the driveway.

22           I briefly lose contact or eyesight with the suspect

23  and then I regain visual as he's moving towards my direction

24  in between the house and the parked cars.  I hear the -- the

25  officer next to me which was armed with the beanbag shotgun

7

1    firing beanbag rounds.

2           And then as he makes his way completely into view

3    from the other side of that car, I see that he's running at

4    a full sprint towards my direction and then my partner

5    officer which was armed with the less lethal beanbag.  I

6    immediately look to, you know, what he's carrying and what

7    he's doing and I see a large metallic object.  I don't

8    recall exactly what hand it was in because he was kind of --

9    he had his arms kind of like tucked into his torso.

10           And he was leaned forward almost like, you know,

11   almost like a linebacker running towards, you know, someone

12   that's going to try and stop him.  And to me, it looked like

13   the -- the knife was pointed in my direction and then my

14   partner officers' direction.  At this point, you know, when

15   I see that, you know, realize what he has in his hand and

16   his full speed run towards me and then the officer, I was

17   very concerned because I think he was about approximately, I

18   would say, 15 feet at a full spree -- speed.

19           And I was really concerned that he was going to get

20   to me and my officer or my -- my partner and quickly be able

21   to launch that knife into either him or me and either

22   seriously hurt us or, you know, he could have stabbed us in

23   the -- in the chest with, you know, or the throat and -- and

24   -- and kill either me or him.

25           And I was really scared that he was going to do

8

1    that to either one of us because we were both right in the

2    -- in the direction where he was running.  So, at that

3    point, you know, fearing for -- for my life and then also

4    for -- for my partner's life I -- that's when I fired my

5    weapon at the -- at the suspect.

6    DETECTIVE RHEAULT:  I see.  How -- how many rounds did

7    you fire, do you believe?

8    OFFICER GRIFFIN:  I think four rounds.

9    DETECTIVE RHEAULT:  Okay.  Now you -- you mentioned

10   that the suspect was at one point you gave a specific

11   distance 15 feet.  Can you tell me what -- when you

12   described the distance of 15 feet what that distance

13   represented?  What -- what you're observing at -- at that

14   point?  At that 15-foot mark, what -- what are you seeing or

15   what were you bringing to my attention here in the

16   interview?

17   OFFICER GRIFFIN:  Okay.  When he was at 15 feet, he was

18   leaned forward holding the knife which was pointed towards

19   me and he was at a full sprint.  You know, he was still kind

20   of looking up but he was at a full sprint running towards me

21   and -- and my partner.

22   ATTORNEY DAVID WINSLOW:  Is that -- is that right after

23   you had lost sight of him momentarily and then he came

24   around the corner?

25   OFFICER GRIFFIN:  He came.  Yeah.  And then he came

9

1    around the corner so I couldn't see what he had in his hands

2    until he completely appeared from that car and he was within

3    a, you know that -- that close proximity.

4         DETECTIVE RHEAULT:  Okay.  And I'll just set some

5    landmarks so we know.  You talked about the one-four corner.

6    If I'm looking I'm in the driveway --

7         OFFICER GRIFFIN:  Uh-huh.

8         DETECTIVE RHEAULT:   -- and I'm looking towards the

9    house.  On a compass what direction are you calling that?

10        OFFICER GRIFFIN:  I'm going to call that north for --

11   for the --

12        DETECTIVE RHEAULT:  North.  Okay.  For -- for the

13   interview sake it -- it might not be true now but -- but for

14   interview sake we'll continue to call that the front of the

15   house from the driveway looking between the front of the

16   house we're looking northbound.

17        OFFICER GRIFFIN:  Correct.

18        DETECTIVE RHEAULT:  Okay.  So, the one-four corner and

19   -- and correct me if I'm wrong, is that the southwest corner

20   of the house?

21        OFFICER GRIFFIN:  Yeah.  That would be the southwest

22   corner of -- of the house itself.  Yes.

23        DETECTIVE RHEAULT:  Okay.  And that's where the gate

24   you said he crashed through?

25        OFFICER GRIFFIN:  Yes.

10

CITY   0001032

1      DETECTIVE RHEAULT:  Okay.  Now you mentioned a couple

2   and I don't know if it was a couple.  But you mentioned a

3   vehicle that losing -- I don't know if you said this but you

4   mentioned a vehicle.  In relation to the gate and where you

5   were in the driveway where is that vehicle or vehicles?

6      OFFICER GRIFFIN:  It's between where I was standing and

7   where that gate was.  There was one vehicle and I think I

8   believe there might have been another vehicle behind it.

9      DETECTIVE RHEAULT:  Okay.  Do you know is it -- is it

10  parked sideways, east, west or is it parked north south or

11  do you know?

12     OFFICER GRIFFIN:  East -- east west.

13     DETECTIVE RHEAULT:  East west.  Okay.  And all right.

14  When did you first -- now you said he had a large metallic

15  object and then you later said it's a knife.  When did you

16  first see the -- the object that is a knife -- that you

17  called a knife?

18     OFFICER GRIFFIN:  Okay.  When he ran eastbound on the

19  north side of that car between the car and the house --

20     DETECTIVE RHEAULT:  Uh-huh.

21     OFFICER GRIFFIN:  -- and fully exposed his torso is --

22  is when once he was about to the -- to the bumper of that

23  vehicle is when I was able to then see what, you know, that

24  he had an -- the object, the knife in his hand.

25     DETECTIVE RHEAULT:  Okay.  And was that the front or

11

1   rear bumper of that vehicle?

2        OFFICER GRIFFIN:  I don't recall.

3        DETECTIVE RHEAULT:  Okay.  But a -- a -- was it the

4   bumper closest to you or further west?

5        OFFICER GRIFFIN:  The closest one to me.

6        DETECTIVE RHEAULT:  I see.  Okay.  And then you

7   indicated the suspect began running towards you and your

8   partner.

9        OFFICER GRIFFIN:  Yes.

10       DETECTIVE RHEAULT:  And what direction would that be?

11       OFFICER GRIFFIN:  East -- southeast.

12       DETECTIVE RHEAULT:  Okay.  Did -- did his course change

13   or did he veer or and it -- it doesn't have to be any of

14   these but I'm trying to determine was it an arc?  Did he

15   make a hard turn and turn towards you or?

16       OFFICER GRIFFIN:  I don't recall how sharp the turn was

17   but he went from running, we'll call it east to -- to

18   southeast towards the corner of the property where we were.

19       DETECTIVE RHEAULT:  Okay.  And the 15 foot -- when you

20   -- when you saw him at that rear bumper --

21       OFFICER GRIFFIN:  Uh-huh.

22       DETECTIVE RHEAULT:  -- and -- and saw that he was armed

23   what distance is that approximately?  And -- and -- and

24   again, I'm just trying to determine, is it the same distance

25   you're giving us the 15 foot or was it different?

12

1     OFFICER GRIFFIN:  The same.  The same.  About 15 feet,

2  I think.

3     DETECTIVE RHEAULT:  Okay.  And was that the distance

4  you were referencing from you to the -- the bumper area?

5     OFFICER GRIFFIN:  Yeah.

6     DETECTIVE RHEAULT:  Okay.  How were you holding your

7  weapon immediately prior to firing?

8     OFFICER GRIFFIN:  Immediately prior to firing I raised

9  my weapon to the -- to the high ready and on target.

10     DETECTIVE RHEAULT:  Okay.  And is your weapon equipped

11  with a light?

12     OFFICER GRIFFIN:  It is.

13     DETECTIVE RHEAULT:  Okay.  Was that light activated?

14     OFFICER GRIFFIN:  It was activated.

15     DETECTIVE RHEAULT:  Okay.  And -- and where was the

16  light pointed?

17     OFFICER GRIFFIN:  At -- at the suspect.

18     DETECTIVE RHEAULT:  Okay.  And did that in any way was

19  that a factor in -- in this incident?

20     OFFICER GRIFFIN:  Yeah.  It illuminated him so I could

21  see the -- the whole front part of his body.

22     DETECTIVE RHEAULT:  I see.

23     OFFICER GRIFFIN:  Including his hands.

24     DETECTIVE RHEAULT:  I see.  Okay.  And when did you --

25  approximately, how close was the suspect?  And again, this

13

1  is approximations when you fired your first shot?

2      OFFICER GRIFFIN:  Under -- just under 15 feet.

3      DETECTIVE RHEAULT:  Okay.  And --

4      OFFICER GRIFFIN:  It might have been even closer to 10

5  feet.

6      DETECTIVE RHEAULT:  To -- okay.  I see.  And did -- was

7  there any reaction by the suspect after you fired?

8      OFFICER GRIFFIN:  He continued moving towards us in --

9  in the same -- same direction.

10      DETECTIVE RHEAULT:  Okay.  How -- how about is the

11  manner in which he was traveling or was paced.  Did that

12  change at all?

13      OFFICER GRIFFIN:  That I -- not that I noticed after

14  that shot.  No.

15      DETECTIVE RHEAULT:  Okay.  And correct me if I'm wrong,

16  you last indicated he was running in your direction after

17  having cleared that -- that bumper?

18      OFFICER GRIFFIN:  Uh-huh.

19      DETECTIVE RHEAULT:  Okay.  From the gate to the bumper

20  how fast was he traveling approximately?  I'm sorry, would

21  you -- was it a walk, was it a?

22      OFFICER GRIFFIN:  A -- a run or -- or sprint even.

23      DETECTIVE RHEAULT:  Okay.  Was it different than the

24  speed he was running towards you at once he cleared the

25  bumper?

14

1      OFFICER GRIFFIN:  Do you mean from --

2          DETECTIVE RHEAULT:  So, the speed at which he traveled

3      from the gate to the bumper was that a different speed than

4      from the bumper to -- to you when you fired?  Did it -- was

5      his pace different?

6          ATTORNEY DAVID WINSLOW:  If -- if you know.

7          OFFICER GRIFFIN:  I don't -- I don't know exact.  I

8      couldn't tell.

9          DETECTIVE RHEAULT:  Okay.  All right.  What was your

10     target area, your aiming point for the -- the first shot?

11         OFFICER GRIFFIN:  For --  for his torso.

12         DETECTIVE RHEAULT:  Okay.  And the purpose of aiming at

13     his -- his torso?

14         OFFICER GRIFFIN:  To try and stop him from, you know,

15     continue to run towards us with a knife and -- and hurt or

16     kill me or my partner.

17         DETECTIVE RHEAULT:  Okay.  When you fired that shot did

18     -- was he possessing the item that you previously described

19     (Unintelligible)?

20         OFFICER GRIFFIN:  I believe so, yes.

21         DETECTIVE RHEAULT:  Okay.  All right.  And then prior

22     to your second shot you indicated or please tell me again,

23     what he was doing prior to your second shot?

24         OFFICER GRIFFIN:  Still moving towards our -- our

25     direction.

15

```
 1        DETECTIVE RHEAULT:  Okay.

 2        OFFICER GRIFFIN:  Towards us.

 3        DETECTIVE RHEAULT:  All right.  Had -- had he -- okay.

 4   And did you see the item at that time?

 5        OFFICER GRIFFIN:  Yes.

 6        DETECTIVE RHEAULT:  Okay.  And then your third shot

 7   what -- what are you seeing before the third shot?

 8        OFFICER GRIFFIN:  Still moving towards our direction

 9   but he was kind of leaning down a little bit more but still

10   looked running towards us.

11        DETECTIVE RHEAULT:  Okay.  And for tape purposes, when

12   you said leaning down you -- you -- at -- at your waist you

13   bent forward at a more -- more parallel to the ground.

14        OFFICER GRIFFIN:  Uh-huh.

15        DETECTIVE RHEAULT:  Okay.  I see.  And in the position

16   of his hands had that changed?

17        OFFICER GRIFFIN:  No.  They were still kind of tucked

18   tight -- tucked tight to his torso like almost his like

19   stomach and chest area.

20        DETECTIVE RHEAULT:  Okay.  And for tape purposes you

21   have both your arms roughly bent at 45-degree angles and

22   maybe slightly less than that, 40-degree angles with your

23   fist close to your center line, is that correct?

24        OFFICER GRIFFIN:  Yes.  Yes.

25        DETECTIVE RHEAULT:  Okay.  All right.  And then your --
```

16

1    your fourth shot, what are you seeing prior to that fourth

2    shot?

3         OFFICER GRIFFIN:  The -- the same.  He's still kind of

4    leaned down but still moving at a -- at a, you know, towards

5    us.  You know still -- still towards us.

6         DETECTIVE RHEAULT:  Okay.  Now how -- do you have a

7    distance approximation before you fired that fourth shot how

8    close he was to you?

9         OFFICER GRIFFIN:  It's going to be within five feet.

10        DETECTIVE RHEAULT:  Five feet.  And so you -- you --

11   you -- okay.  Your initial distance you -- you provided when

12   -- when you fired and this last distance when you fired you

13   estimated it to be five feet.  So, he covered all that space

14   as you're firing?

15        OFFICER GRIFFIN:  Correct.

16        DETECTIVE RHEAULT:  Okay.  Did you -- did your position

17   change?  Did you fire from a fixed position or did you move

18   in any way while you're firing?

19        OFFICER GRIFFIN:  No.  I was backing down the driveway

20   away from the house.

21        DETECTIVE RHEAULT:  Okay.  Is that as you're firing?

22        OFFICER GRIFFIN:  Yes.

23        DETECTIVE RHEAULT:  Okay.  And -- and what was the

24   purpose of that?

25        OFFICER GRIFFIN:  Trying to give a little bit more

17

CITY   0001039

1    distance between me and him to try and, you know, at a --

2    because I know we were firing beanbag rounds at him and --

3    and I was hoping, you know, a little bit more time and

4    distance.  Something might stop him and -- and, you know,

5    prevent him from to getting to us and, you know, having to

6    continue to -- to use deadly force.

7         DETECTIVE RHEAULT:  I see.  Okay.  Did -- and why did

8    you stop firing after your fourth round?

9         OFFICER GRIFFIN:  After my fourth round I -- I thought

10   I saw him go into the ground and I didn't think he was going

11   to be able to continue to -- to like move towards us and I

12   -- I -- at that point, I didn't think he was going to be

13   able to stab my partner or I.  So, at that point, I -- I

14   didn't fire any more rounds.

15        DETECTIVE RHEAULT:  Okay.  He -- was the suspect

16   ultimately taken into custody?

17        OFFICER GRIFFIN:  Yes.

18        DETECTIVE RHEAULT:  Okay.  Were you part of the

19   handcuffing?

20        OFFICER GRIFFIN:  No.

21        DETECTIVE RHEAULT:  Okay.  The item you observed in his

22   hand when you -- you fired your fourth shot and I might have

23   asked this and I apologize, did you see him possessing that

24   item?

25        OFFICER GRIFFIN:  For the -- for the fourth shot?

18

CONFIDENTIAL

1        DETECTIVE RHEAULT:  Uh-huh.

2        OFFICER GRIFFIN:  I don't recall exactly because he was

3    leaning forward and from my position, I think he was -- I

4    couldn't see exactly where the knife was at that point.

5        DETECTIVE RHEAULT:  Uh-huh.

6        OFFICER GRIFFIN:  So, no.

7        DETECTIVE RHEAULT:  Okay.  And when you say you

8    couldn't see where the knife was and why -- why was that

9    again?

10        OFFICER GRIFFIN:  Because he was leaned forward and

11    and preventing my view, you know, with his upper body from

12    where his hands were.

13        DETECTIVE RHEAULT:  I see.  Had his hands position

14    change from when you fired your third shot?  I know his body

15    is now leaning further forward and blocking your view but

16    had his hand position changed from the third to the fourth

17    shot?

18        OFFICER GRIFFIN:  Not that I recall.

19        DETECTIVE RHEAULT:  I see.  Okay.  Do you know what

20    happened to the item you saw in -- in his hand?  Do you

21    know?

22        OFFICER GRIFFIN:  No.

23        DETECTIVE RHEAULT:  Okay.  After the OIS after the --

24    you fired your weapon, did you have any part of the crime

25    scene and locating evidence or anything like that?

19

1   OFFICER GRIFFIN:  No.

2   DETECTIVE RHEAULT:  Okay.  Well, what happened

3 immediately after?

4   OFFICER GRIFFIN:  After he was taken into custody the

5 paramedics responded.  They put him onto the gurney --

6   DETECTIVE RHEAULT:  Uh-huh.

7   OFFICER GRIFFIN:  -- and -- and had him move the area.

8 I, you know, quickly --

9   DETECTIVE RHEAULT:  Sorry.  And that was a very

10 open-ended question.

11   OFFICER GRIFFIN:  Uh-huh.

12   DETECTIVE RHEAULT:  Let me ask you, were you approached

13 by a supervisor or identified as having been involved in a

14 officer-involved shooting?

15   OFFICER GRIFFIN:  Yes.  After I -- yes.

16   DETECTIVE RHEAULT:  Okay.  And were -- were you

17 separated at that point?

18   OFFICER GRIFFIN:  Yes.  Yes.

19   DETECTIVE RHEAULT:  I see.  Okay.  Detective Fuller,

20 any?

21   DETECTIVE FULLER:  Yeah.  Just one question, the -- the

22 object that you initially described as a large metallic

23 object --

24   OFFICER GRIFFIN:  Uh-huh.

25   DETECTIVE FULLER:  -- and then later mentioned that --

20

LYNDEN J. AND ASSOCIATES, INC.   (800) 972-3376

CITY   0001042

1    that it was a knife, could you describe that?

2         OFFICER GRIFFIN:  From -- yes.  From what I saw it was

3    -- I'd say it was between -- it was grey metal and between

4    maybe it's approximately eight-inches long.

5         DETECTIVE FULLER:  And was there -- was there a handle

6    or anything that --

7         OFFICER GRIFFIN:  Not that I could see.

8         DETECTIVE FULLER:  Okay.

9         OFFICER GRIFFIN:  I could just see the metal.

10        DETECTIVE FULLER:  I'm sorry.  You said how many inches

11   long?

12        OFFICER GRIFFIN:  Approximately eight inches.

13        DETECTIVE FULLER:  That's it for me.

14        DETECTIVE RHEAULT:  Okay.  I -- I don't have any

15   further questions today.  Attorney Winslow?

16        ATTORNEY DAVID WINSLOW:  No, thank you.

17        DETECTIVE RHEAULT:  Okay.  Again, ordering you to

18   continue not to discuss it, this incident with anyone.

19   Avoid any social media and you'll be interviewed tomorrow

20   evening in -- in full detail.

21        OFFICER GRIFFIN:  Okay.  Understood.  Yes.

22        DETECTIVE RHEAULT:  Thank you.  The time now is 1451

23   and that will conclude our interview.

24   ///

25   ///

21

CITY   0001043