# "EXHIBIT 20"

**FORCE INVESTIGATION DIVISION**
**REPORT OF AN OFFICER-INVOLVED SHOOTING**
**FID No. F004-22**

**The following report was prepared by Force Investigation Division. The report does not include any compelled information from the officers who were directly involved in the Officer-Involved Shooting. The report was drafted via the statements of uninvolved police personnel, Body Worn Video, independent witnesses, and physical evidence obtained during the investigation.**

**The following report in its digital form, contains videos and addenda that can be viewed by clicking on the hyperlinks.**

**Synopsis:** On February 1, 2022, at approximately 0216 hours, officers assigned to Foothill Patrol Division responded to an "*ADW Suspect There Now*," radio call inside the residence at 12935 Desmond Street. The suspect, Jonathan Murillo-Nix (hereafter Murillo) was armed with knives and threatening family members. Upon the officers' arrival, they evacuated the family, established containment around the residence, and began speaking to Murillo via a public address system. Approximately 65 minutes later, Murillo exited the residence armed with two knives. An officer discharged a 40mm less-lethal launcher (hereafter 40mm) at Murillo, causing him to briefly drop to the ground. Murillo got back up and ran to the front of the residence while still armed with a knife. An officer discharged a beanbag shotgun at Murillo; however, he continued charging at officers, resulting in an Officer-Involved Shooting (OIS). Murillo was struck by gunfire and subsequently transported by rescue ambulance (RA) to a local hospital where he was pronounced deceased.

**The following LAPD personnel responded to the radio call and were among the personnel present at the time of the OIS:**

| Name | Serial No. | Unit No. |
|---|---|---|
| Police Officer III Jose Mendoza | 36179 | 16A11 |
| Police Officer II Isaac Ipsen | 44196 | 16A11 |
| Police Officer II Brian Garcia | 43596 | 16A23 |
| Police Officer II Eric Schlesinger | 43152 | 16A23 |
| Police Officer II Georgiy Tykhomyrov | 44217 | 16A81 |
| Police Officer II Cesar Barba | 44080 | 16A81 |
| Sergeant I Francisco Alferez | 31625 | 16L120 |

**Note:** The above-mentioned personnel were in full police uniform and operating from marked police vehicles equipped with a Digital In-Car Video System (DICVS). Each officer was equipped with a Body Worn Video (BWV) camera, ballistic vest, handgun, TASER, Oleoresin Capsicum (OC) spray, handcuffs, Hobble Restraint Device (HRD), and a baton.

JSID

**INVESTIGATIVE SUMMARY**

On February 1, 2022, at approximately 0150 hours, Elenilson Echeverria was in his bedroom when he heard his adult stepson, Murillo, banging on the bedroom door and yelling.[1] When Echeverria opened the door, he observed Murillo was armed with two knives. According to Echeverria, Murillo was threatening to kill him and other family members. Echeverria closed and locked his bedroom door and called 911.[2] He informed the operator that Murillo had knives and threatened to kill everyone. Additionally, Echeverria advised that Murillo was drunk and had mental issues. Simultaneous to Echeverria's 911 call, Murillo's half-brother, Joshua Echeverria (hereafter Joshua), called 911 from the adjacent bedroom. Joshua told the operator, "*My older brother is acting crazy right now. He was trying to attack my dad right now with knives.*" In the background of both calls, Murillo can be heard pounding on the bedroom door **(Audiolink No. 1)**

Front Bedroom Windows
12935

**[North facing photograph of 12935 Desmond Street]**

Based on the 911 calls, Communications Division broadcast an "*ADW Suspect There Now*" radio call over the Foothill Area Base Radio Frequency (hereafter Base). Officers Mendoza and Ipsen

---

[1] Jonathan Murillo-Nix, 5 feet 4 inches tall, 124 pounds, 23 years of age.
[2] At the time of the incident, Echeverria was in his bedroom with his wife, Maribel Murillo. In the adjacent bedroom to the west were his sons Joshua Echeverria, age 21, and Jeffrie Echeverria, age 16. Both bedrooms were located on the southwest portion of the residence, and each had a large window that faced south onto the driveway.

were assigned the call. They were backed by Officers Schlesinger and Garcia. As the officers arrived in the area, Communications Division updated the call and broadcast that Murillo was armed with a knife.[3]

Officers Mendoza and Ipsen parked their vehicle on Desmond Street, half a block east of the residence, where they were joined by Officers Schlesinger and Garcia. The officers then approached the residence on foot. Officer Mendoza was equipped with a beanbag shotgun, and Officer Schlesinger was equipped with a 40mm. While standing at the vehicle gate in front of the residence, the officers made verbal contact with Echeverria, who was inside his residence at his open bedroom window.[4]

**[Image from Officer Schlesinger's BWV as the officers arrived at the vehicle gate]**

Echeverria informed the officers that Murillo was inside the residence, armed with two knives, and threatening to kill everyone. Additionally, Echeverria advised the officers that the front door was locked, but they could enter the residence through the back door. While the officers spoke with Echeverria, they heard Murillo attempting to force open one of the bedroom doors. According to Officer Mendoza, "*As I'm talking to the victim, I could hear some yelling and then someone trying to kick -- what appeared to me, kicking down the door. At that point it turned from trying to gather -- assess the situation to now I have --, from what I'm being told, is a guy with knives and I hear him yelling and trying to kick the door. So now, to me in my mind, it turns into a lifesaving mission.*"[5]

---

[3] Per the Department's Edged Weapon protocol, Communications Division verified that Officers Mendoza and Ipsen were Code Sam/Code Sam 40 equipped, and assigned Sergeant Alferez to the call.
[4] Unless otherwise noted, all subsequent times were derived from the officers' BWV.
[5] Statement of Officer Mendoza, Page 7, Line 19 through Page 8, Line 1.

In response to hearing Murillo attempting to force open the interior door, Officer Mendoza assumed the team leader role and, along with the other officers, moved north along the west walkway before entering the rear of the residence.

**[Photograph of the officers' location upon entering the residence]**

Upon entering the residence, Officer Mendoza maintained his role as team leader, while Officer Garcia assumed the role of Designated Cover Officer (DCO) with his pistol, and Officer Schlesinger remained equipped with the 40mm.[6] Additionally, Officer Ipsen gave commands for Murillo to drop his knives and come out with his hands up.[7] Officer Mendoza, who was still equipped with a beanbag shotgun, advised Communications Division that he and the other officers had entered the rear of the residence. Additionally, he broadcast that Murillo was armed with two knives and refusing to come out of the residence.

> **Note:** When Officer Mendoza and the other officers moved to the rear of the residence, Echeverria evacuated his sons through the bedroom window. Officers Barba and Tykhomyrov initially joined the officers inside the residence before Officer Mendoza directed them to return to the front and ensure the family had been evacuated.

[6] Officer Schlesinger alternated between the roles of less lethal with the 40mm and DCO with his handgun.
[7] While giving commands to Murillo, Officer Ipsen's pistol was held at a low-ready position.

While inside the residence, Officer Garcia observed Murillo in the hallway near the front bedrooms. Officer Garcia could see Murillo was armed with a knife and notified the other officers. In response, Officer Mendoza broadcast a backup request for a, "*415 man with a knife*."

Upon his arrival, Sergeant Alferez joined Officers Barba and Tykhomyrov in front of the residence. After determining Echevarria's wife was still in her bedroom, he ensured she was evacuated through the window.[8] He then advised Echeverria and his family to move east to the intersection of Desmond Street and Sproule Avenue. Sergeant Alferez also directed Officer Tykhomyrov, who was equipped with a beanbag shotgun, and Officer Barba, who was equipped with his pistol, to cover the front door of the residence.

Sergeant Alferez then broadcast he was the Incident Commander as he moved to the rear and joined the other officers inside the residence. Upon doing so, Sergeant Alferez verified that the team had less-lethal options, DCOs, and an officer assigned to communicate with Murillo. After determining that Murillo was alone inside the residence, Sergeant Alferez directed the officers to redeploy outside the residence and establish containment positions.

**[Videolink No. 1 - Sergeant Alferez' BWV as he arrived at the residence]**

[8] Maribel Murillo declined to be interviewed for this investigation.

**The following personnel responded to the backup request and were present at the time of the OIS:**

| Name | Serial No. | Unit No. |
|---|---|---|
| Police Officer III Nicholas Knolls | 38452 | 16A35 |
| Police Officer I Sabrina Martinez | 44668 | 16A35 |
| Police Officer II Ilya Karpman | 43045 | 16A59 |
| Police Officer II Jean Paul Olivares | 43055 | 16A59 |
| Police Officer III Marcos Gutierrez | 40158 | 16A77 |
| Police Officer III Jesus Martinez | 37593 | 16A77 |
| Police Officer II Joshua Carlos | 43751 | 16X41 |
| Police Officer II Daniel Frazer | 38392 | 16X41 |
| Police Officer II Eduardo Piche | 42045 | 16G22 |
| Police Officer II Daniel Ramirez | 40184 | 16G22 |
| Police Officer II William Ibarra | 40905 | 16G61 |
| Police Officer II Michael Proni | 41589 | 16G61 |
| Police Officer II Kenneth Morales | 42322 | 16G63 |
| Police Officer II Felix Rodriguez | 42348 | 16G63 |
| Police Officer II Kyle Griffin | 42066 | 16G64 |
| Police Officer II Luis Lopez | 42074 | 16G64 |
| Police Officer III Chad Butler | 34264 | 16X4 |
| Police Officer I Abilenne Corona | 44048 | 16X4 |
| Police Officer II Jacob Kiker | 43173 | 16Z45 |
| Police Officer II Abraham Rivera | 39241 | 16Z45 |
| Sergeant I Francisco Alferez | 31625 | 16L120 |
| Sergeant I Josue Merida | 37596 | 16G60 |

FSID

**Note:** The above-mentioned personnel were in full police uniform and operating from marked police vehicles equipped with a DICVS. Unless otherwise noted, each person was equipped with a BWV camera, ballistic vest, handgun, TASER, OC spray, handcuffs, HRD, and a baton.

**The officers established containment positions as indicated below:**

**West-** Officers Schlesinger and Garcia positioned themselves in the rear yard, on the north side of the property. They were subsequently joined by Officers Morales, Rodriguez, and Piche. Approximately 27 minutes later, the officers redeployed one property west to 12941 Desmond Street, where they monitored the residence from behind a cinderblock wall. From their positions, the officers monitored the north and west sides of Echeverria's residence.

Officer Schlesinger remained equipped with a 40mm, Officer Proni was equipped with a TASER, Officer Morales was equipped with a shotgun, and Officers Garcia and Rodriguez had their pistols unholstered.

**East-** Officers Karpman and Olivares were positioned one property east in the rear yard of 12927 Desmond Street, where they monitored the east side of Echeverria's residence from behind a cinderblock wall. Officer Olivares was equipped with a 40mm, and Officer Karpman had his pistol unholstered.

**Southwest-** Officers Rivera, Kiker, Barba, and Tykhomyrov positioned themselves on the sidewalk at the front of Echeverria's residence and monitored the southwest side of the property from behind a wall made of cinderblock and wrought iron. Officer Tykhomyrov was equipped with a beanbag shotgun, while Officers Rivera, Kiker, and Barba had their pistols unholstered.

**Southeast-** Sergeant Alferez had a police vehicle placed at the apron of the driveway pointed north toward the residence.[9] According to Sergeant Alferez, the vehicle provided cover for the officers and additional illumination of the residence. Additionally, it provided a public address (PA) system to communicate with Murillo.

Officers Carlos, Frazer, S. Martinez, and Lopez were positioned on the driver's side of the vehicle. From their positions, they had a view of the south side of the property. Officer Carlos was equipped with a ballistic shield, and Officer Frazer was equipped with a shotgun.

Officers Gutierrez, Griffin, and J. Martinez were positioned on the passenger's side of the vehicle. From their positions, the officers had a view of the south side of the property. Officer Gutierrez was equipped with a beanbag shotgun, while Officers Griffin and J. Martinez had their pistols unholstered.

Sergeant Alferez and Officer Knolls positioned themselves at the rear of the vehicle where they coordinated the tactical operation. While there, Sergeant Alferez requested the Los Angeles Fire Department (LAFD) stage at Desmond Street and Dronfield Avenue in the event they were later needed. Additionally, he directed the officers to don their ballistic helmets while containment was maintained at the residence.

[9] The vehicle was a marked black and white Ford Explorer, Shop No. 81427.

JSID

FID No. F004-22
Page 8

WEST
EAST
12935
SOUTHWEST
SOUTHEAST
427
16
LASD

[Diagram depicting the locations of the containment teams around the residence]

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER LADA 0024

At 0236 hours, after containment had been established, Officer S. Martinez spoke to Murillo through the police vehicle's PA system. Officers J. Martinez, Lopez, Knolls, and Sergeant Alferez also attempted to communicate with Murillo through the PA system during the incident. The officers repeatedly told Murillo to exit the residence with his hands up and made numerous attempts to engage him in conversation. Murillo frequently yelled back non sequiturs at the officers and was occasionally seen in the front windows, but he did not comply with the officers' directions to exit the residence.[10]

[Videolink No. 2 – Officer J. Martinez' BWV during initial containment]

At 0254 hours, Sergeant Merida arrived and received a briefing from Sergeant Alferez. Sergeant Merida assumed the role of Incident Commander while Sergeant Alferez continued overseeing the tactical operation. Sergeant Merida established a Command Post (CP) at Desmond Street and Dronfield Avenue, where he was joined by Officers Butler, Corona, Ipsen, and Mendoza.[11] Additionally, LAFD RA 98 arrived and staged at the CP. Echeverria and the other family members were present at the CP, where Officers Mendoza and Ipsen obtained a signed crime report for Criminal Threats.[12] This information was broadcast to the officers at the residence.[13]

---

[10] Between 0247 and 0304 hours, Sergeant Alferez, Officers Lopez, and J. Martinez each used the vehicle's PA system to give less-lethal warnings to Murillo.

[11] The CP was initially located at Desmond Street and Sproule Avenue, but was relocated to Desmond Street and Dronfield Avenue.

[12] Investigative Report, Division of Records (DR) No. 2216-04944, listing Murillo as the suspect and Echeverria as the victim.

[13] At approximately 0239 hours, the officers began using Valley Bureau Tactical Channel 41 to coordinate this incident. Unless noted, this and all subsequent broadcasts were made on Channel 41.

While at the CP, Officer Ipsen contacted the Mental Evaluation Unit (MEU), who advised that Murillo did not have any prior contacts and that they were dispatching a Systemwide Mental Assessment Response Team (SMART) from Harbor Division. Officer Ipsen passed the information to Sergeant Merida, who then telephonically briefed the Foothill Watch Commander, Sergeant I Trevor Whiteman, Serial No. 37214.

After speaking with Sergeant Merida, Sergeant Whiteman directed personnel at Foothill Station to conduct a work-up on Murillo and the location. Sergeant Whiteman later advised Sergeant Merida that there were no firearms registered to the address, no prior calls for service, and that Murillo had only one prior arrest for Driving Under the Influence. During the same conversation, Sergeants Whiteman and Merida agreed to continue attempting to gain Murillo's voluntary compliance while waiting for the SMART Team to arrive.

> **Note:** According to Sergeant Merida, he considered contacting the Special Weapons and Tactics Team at this point but wanted first to see if the SMART Team could resolve the situation upon their arrival.

Approximately 65 minutes after the officers began communicating with Murillo on the PA, Officer Piche observed Murillo through a window on the west side of the residence. Officer Proni, who was next to Officer Piche, broadcast Murillo's movements and location. Sergeant Alferez then broadcast, "*If you guys can put your lights on him, so he knows we're there, too. Then hopefully, it'll be some type of de-escalation or something for him to give up*." In response, several officers activated their flashlights and illuminated the doorway to the patio.

According to Officer Piche, he then observed Murillo exit the west door while holding a knife in each hand. In response, Officer Piche called out to Murillo, "*Jonathan check it out man, we're not trying to hurt you but, look we're not going to go anywhere*." Murillo then started running south along the west side of the residence.

> **Note:** When later interviewed, Officer Piche told FID investigators that the knife in Murillo's left hand had a ten-inch blade and a black handle. Officer Piche described the knife in Murillo's right hand as having a purple handle.
>
> The investigation determined Officer Piche's BWV camera was activated upon his arrival at scene but turned off approximately 12 seconds later due to low battery. When later interviewed, Officer Piche told FID investigators that he had completed his regular shift and was overtime when he responded to the backup request. Officers Schlesinger, Proni, Morales, Garcia, and Rodriguez' BWV cameras were recording when Murillo exited the residence; however, their camera views were obstructed by the cinderblock wall.

Officer Schlesinger observed Murillo move toward Officer Piche while armed with the knives. In response, he targeted Murillo's navel area and fired one round from his 40mm from an

JSID

approximate distance of 14 feet.[14] When later interviewed, Officer Schlesinger described, "*I observed the suspect started yelling then he turned and began starting to sprint towards the direction of Officer Piche and the officers on the right side. In immediate fear for their safety, I fired one 40 round, striking him either on his right side of his body or his lower back. When he initially started running at the officers on the right side, I observed out of the corner of my eye, one of the officers jump back from the wall as well. So, I believed that he was attempting to gain momentum to jump up the wall and try to stab one of the officers.*"[15]

According to Officer Schlesinger, he observed Murillo briefly drop to the ground before getting back up and sprinting south along the west side of the residence. Simultaneously, Officer Proni broadcast that Murillo was "*going to the front.*" Murillo exited through a metal pedestrian gate on the southwest corner of the residence and into the front yard.

> **Note:** The investigation determined Murillo dropped the knife with the black handle near where he fell after being hit with the 40mm round. However, Murillo remained armed with the purple-handled knife as he ran to the front of the residence.

**[Officer Schlesinger's approximate perspective at the point that he discharged his 40mm]**

| Source | Hyperlink |
|---|---|
| **Officer Schlesinger's BWV** | **Videolink No. 3** |

[14] Unless otherwise attributed, the distances noted in this Administrative Summary were determined by Department laser-mapping software after analysis of BWV evidence.
[15] Statement of Officer Schlesinger, Page 47, Line 22, through Page 48, Line 9.

FID No. F004-22
Page 12

Over the span of approximately four seconds, Officer Gutierrez fired three rounds from his beanbag shotgun before Officer Griffin fired four rounds from his duty handgun, and Officer J. Martinez fired three rounds from his duty handgun, as Murillo ran toward them. At that time, the officers were standing together on the passenger side of the police vehicle as shown below.

2022-02-01 03:42:28 -0800
AXON BODY 3 X6039BAVP
Officer Gutierrez
Officer Griffin
Officer J. Martinez

**[Image from Officer Knolls' BWV showing the positions of Officers J. Martinez, Griffin, and Gutierrez]**

12935
427
16
G
Gu
M
Officer Griffin
Officer J. Martinez
Officer Gutierrez

**[Diagram depicting Murillo's path toward the officers]**

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER LADA 0028**

**Officer Gutierrez' account of the OIS**

At the point Murillo ran toward the front yard, Officer Gutierrez was on the passenger side of the police vehicle. Officer Gutierrez was equipped with a beanbag shotgun and positioned behind a cinderblock wall and mailbox that he was utilizing for cover. According to Officer Gutierrez, he observed Murillo running toward him from the gate on the southwest corner of the residence. Murillo ran between two parked vehicles and the residence as he tucked his fists to his chest while holding a knife in his right hand. In response, Officer Gutierrez fired one beanbag round at Murillo from an approximate distance of 30 feet. Murillo continued running toward Officer Gutierrez while still armed with the knife. In response, Officer Gutierrez fired a second beanbag round at Murillo from an approximate distance of 25 feet. Murillo continued running with the knife toward Officer Gutierrez and the officers positioned near the police vehicle. In response, Officer Gutierrez fired a final beanbag round at Murillo from an approximate distance of 15 feet.[16]

**[Image from Officer Gutierrez' BWV as he fired the first beanbag round]**

Officer Gutierrez stated, "*Simultaneously, they stated that he still had two knives in his hand and he was running towards the front of the -- the residence. When I heard that I focused my attention to the one-two corner* [southwest corner of the residence] *and I observed the suspect exit through the black metal door or gate. Well, when he came out, I did see what appeared to be a knife in his right hand. It appeared to be a knife or a sharp weapon. At that time, I deployed the beanbag. I could only see from his waist up, so I aimed for his arm. After the first*

[16] According to Officer Gutierrez, he targeted Murillo's right arm with his first beanbag round because one of the parked vehicles in the driveway obscured Murillo's lower body. When he fired the subsequent rounds, Murillo's abdomen was visible, and Officer Gutierrez targeted Murillo's navel area with his second and third beanbag rounds.

*deployment I did assess. He started sprinting towards us where I deployed the second round. It appeared or it appeared that it hit him because he kind of flinched. I assessed again and deployed the beanbag the third time and where I heard a metallic clink on the ground fall and I heard shots being fired.*"[17]

> **Note:** According to Officer Gutierrez, he did not see it but believed the metallic "*clink*" he heard was the sound of the knife hitting the ground. This sound could not be distinguished on the officers' BWV, nor was it reported as being heard by other officers.

| Source | Hyperlink |
|---|---|
| **Officer Gutierrez' BWV** | **Videolink No. 4** |
| **Officer Gutierrez' BWV (12 FPS)** | **Videolink No. 5** |

**Officer Griffin's location during the OIS**
Officer Griffin was standing on the sidewalk between the open passenger door of the police vehicle and Officer Gutierrez when Officer Proni broadcast that Murillo was armed with two knives and "*going to the front.*" As Murrillo exited the gate, Officer Griffin activated the weapon-mounted light on his pistol as Murillo ran toward the officers across the driveway. After Officer Gutierrez fired his third and final beanbag round, Murillo had reached the front of the police vehicle at the apron of driveway. Officer Griffin fired four rounds from his pistol as Murillo ran toward him from a decreasing distance of 10 to 7 feet.

The investigation determined that when Officer Griffin fired, he moved backward and away from Murillo.

JSID

[17] Statement of Officer Gutierrez, Page 10, Lines 11-25.

**[Image from Officer Griffin's BWV as Murillo charged the officers with the knife]**

| Source | Hyperlink |
|---|---|
| **Officer Griffin's BWV** | **Videolink No. 6** |
| **Officer Griffin's BWV (12 FPS)** | **Videolink No. 7** |

**Officer J. Martinez' location during the OIS**
Officer J. Martinez was standing behind the passenger door of the police vehicle while using the PA to speak to Murillo when Officer Proni broadcast that Murillo was armed with two knives and "*going to the front*." After Officer Griffin fired his first round and as Murillo ran toward him, Officer J. Martinez unholstered his pistol and fired two rounds at Murillo from an approximate distance of 4 to 5 feet.

After firing his first two rounds, Officer J. Martinez took several steps back as Murillo fell to the ground immediately in front of him. Officer J. Martinez then fired a third shot.

> **Note**: A review of BWV determined that immediately prior to falling to the ground, Murillo turned counterclockwise, and as he fell, his body contacted the passenger door, causing it to close. Murillo landed on his back in front of Officer J. Martinez and was in that position when Officer J. Martinez fired his third and final round.

**[Image from Officer J. Martinez' BWV during the OIS]**

| Source | Hyperlink |
|---|---|
| Officer J. Martinez' BWV | Videolink No. 8 |
| Officer J. Martinez' BWV (12 FPS) | Videolink No. 9 |
| Officer Knolls' BWV | Videolink No. 10 |

**Officer Knolls' account of the OIS**

Officer Knolls was positioned to the rear of the passenger side of the police vehicle when he heard Officer Proni broadcast that Murillo was armed with knives and running toward the front of the residence. When interviewed, Officer Knolls stated, "*Before I hear the first beanbag round, you hear the suspect either kick or push open the wrought iron gate and you hear a loud gate slamming and then the first beanbag round I hear, and that's when I turn back towards the driveway and you can see the suspect running at a full sprint towards the officers* [Officers Gutierrez, Griffin, and J. Martinez] *on the passenger side of my vehicle.*

*And as he's running at a full sprint he comes I'd say about the rear window trunk of the black compact car in the driveway. And I can see some kind of glare as he's running, and it appears to be some kind of metallic object in his hand.*

*At which point I hear another beanbag round fired and that's when the, um, O -- or the lethal deployed. Officer Griffin shot and Officer Martinez shot as the suspect approached the front passenger side of our vehicle, as he closed the distance on the officers. And I mean, he closed the distance within probably -- I want to say about two to three seconds from the time you hear*

*the gate being slammed to the -- to the front of our shop and it appeared to be at least about two to three seconds that he closed the distance quickly.*"[18]

**[Diagram depicting the positions of the involved officers when Officer Griffin fired his first round]**

[18] Statement of Officer Knolls, Page 18, Line 24 through Page 19, Line 20.

[Diagram depicting the positions of the involved officers when Officer J. Martinez fired his final round]

### Timeframe Analysis

A soundgraph analysis of this incident determined that 10.264 seconds elapsed from when Officer Schlesinger fired his 40mm on the west side of the property until the last pistol round was fired.[19] Additionally, the investigation determined that all pistol rounds were fired in 1.575 seconds.

| Event No. | Relative Time | Action |
|---|---|---|
| 1 | 0.000 seconds | Officer Schlesinger discharged one 40mm round. |
| 2 | 6.139 seconds | Officer Gutierrez discharged first beanbag round. |
| 3 | 7.505 seconds | Officer Gutierrez discharged second beanbag round. |
| 4 | 8.23 seconds | Officer Gutierrez discharged third beanbag round. |
| 5 | 8.689 seconds | Officer Griffin fired first round from his handgun. |
| 6 | 9.026 seconds | Second round fired from handgun. |
| 7 | 9.154 seconds | Third round fired from handgun. |
| 8 | 9.287 seconds | Fourth round fired from handgun. |
| 9 | 9.539 seconds | Fifth round fired from handgun. |
| 10 | 10.264 seconds | Officer J. Martinez fired a final round from his handgun. |

[19] The soundgraph analysis conducted on Officer Knolls' BWV was completed by the FID Video Technology Unit with the assistance of Adobe Premier Pro version 13.0 software.

**Note:** During the incident, a total of seven pistol rounds were fired; however, only six rounds were observed on the soundgraph. This indicates that two of the pistol rounds were fired simultaneously.

Additionally, the investigation determined that Officers Griffin and J. Martinez fired the rounds described above in Event Nos. 6-9; however, the soundgraph analysis could not attribute those rounds to a specific officer.

**Post OIS**

Approximately 14 seconds after the OIS, Sergeant Alferez used his police radio and directed the CP to send the pre-staged RA to the scene. He then directed officers to take Murillo into custody.

Officers Lopez and S. Martinez approached Murillo while Officers J. Martinez and Frazer provided cover. Officer Lopez rolled Murillo onto his stomach. Officer S. Martinez held Murillo's right forearm behind his back while Officer Lopez pulled Murillo's left arm from under his body. Officer Lopez then cuffed Murillo's wrists behind his back. Officer S. Martinez placed Murillo in a right lateral recovery position while Officer Lopez searched Murillo's clothing for weapons and other contraband; none were located.

**Note:** Officer Lopez' BWV camera was activated upon his response to the incident but turned off approximately 72 seconds later due to low battery. The investigation determined that Officer Lopez had completed his regular shift and was overtime when he responded to the backup request. His interaction with Murillo can be seen on Officers Knolls and S. Martinez' BWV footage.

| Source | Hyperlink |
|---|---|
| **Officer Knolls' BWV** | **Videolink No. 11** |
| **Officer S. Martinez' BWV** | **Videolink No. 12** |

At 0346 hours, approximately one minute after Murillo was handcuffed, RA 98, staffed by Firefighter Paramedics (FFPMs) Christopher Gelinas, Ryan Larson, and Firefighter (FF) Christopher Polgar, arrived at the driveway. Less than two minutes later, Murillo was placed in the RA and transported to Providence Holy Cross Medical Center. At 0357 hours, Murillo was pronounced deceased by Doctor Scott Bricker.

## SCENE DESCRIPTION

The OIS occurred on the driveway and sidewalk area in front of 12935 Desmond Street, in the Pacoima neighborhood of Los Angeles. The property consisted of a single-story, three-bedroom residence that was situated behind a cinderblock and wrought iron wall, which separated the

driveway area from the north sidewalk of Desmond Street.[20] During this incident, the officers accessed the property through a rolling vehicle gate that connected the driveway to Desmond Street, and through a pedestrian gate that connected the west side of the driveway to the back yard.[21]

**The following vehicles were parked on the driveway area at the time of the OIS:**

**Vehicle 1** was a silver Toyota Matrix Sedan.[22] The Matrix was parked facing west in the courtyard of 12935 Desmond Street.

**Vehicle 2** was a gray Toyota Corolla sedan.[23] The Corolla was parked facing west in the courtyard of 12935 Desmond Street, east of Vehicle 1.

**Vehicle 3** was a black Honda Pilot SUV.[24] The Honda was parked facing north in the driveway of 12935 Desmond Street, south of the converted garage.

**[West facing photograph of driveway area, police vehicle, Toyota Matrix, Toyota Corolla, and Honda Pilot]**

## CANVASS FOR WITNESSES

On February 1, 2022, and February 21, 2022, FID investigators canvassed the area of this incident. The digitally recorded interviews of all sworn personnel and civilian witnesses were

[20] The cinderblock and wrought iron wall was approximately 3 feet tall. Additionally, the sidewalk where the OIS occurred was approximately 4 feet wide and the apron of the driveway was approximately 7 feet long and 13 feet wide.
[21] The vehicle gate measured approximately 15 feet wide.
[22] California License Plate No. 6ZDN422.
[23] California License Plate 7ZRT678.
[24] California License Plate No. 7MVU225.

stored in the LAPD Training Evaluation and Management System. There were three witnesses who only heard shots. The number of gunshots heard by these witnesses ranged from three to four. Copies of their statement forms are in the FID casebook.

## SUSPECT INFORMATION

**Jonathan Murillo-Nix** was a male Hispanic, with black hair and brown eyes. At the time of the incident, he was 5 feet 4 inches tall, weighed 124 pounds, and had a date of birth of [redacted].

Murillo's CII Number (A38981796) indicated he had one prior arrest for a violation of California Vehicle Code section 23152(E) VC, Driving Under the Influence, in 2021. He had no prior contact with the MEU and was not on parole or probation at the time of this incident **(Addendum No. 1)**.

**The below listed Investigative Reports were completed in conjunction with this investigation:**

| Report Title | Victims | DR Nos. | Hyperlink |
|---|---|---|---|
| Criminal Threats | Elenilson Echeverria | 2216-04944 | **Addendum No. 2** |
| ADW on Police Officer | Officer J. Martinez<br>Officer Gutierrez<br>Officer Griffin | 2216-05080<br>2216-05082<br>2216-05083 | **Addendum No. 3** |

## INJURIES

Once Murillo was in custody, Officer S. Martinez placed him in a right lateral recovery position. Approximately one minute after Murillo was handcuffed, RA 98, staffed by FFPMs Gelinas and Larson and FF Polgar, arrived at the driveway. Less than two minutes later, Murillo was placed in the RA and transported to Providence Holy Cross Medical Center. At 0357 hours, Murillo was pronounced deceased by Doctor Bricker **(Addendum No. 4)**.

## EVIDENCE

Forensic Science Division (FSD) Firearms Analysis Unit (FAU) Supervising Criminalist Julia Wilkinson, Serial No. N4403, and Criminalists II John Flores, Serial No. N6278, Maria Gonzalez, Serial No. N6268, and Tracy Ng, Serial No. N4952, responded to this incident and processed the crime scene **(Addendum No. 5)**.

There were 59 items of evidence booked in conjunction with this investigation, including a knife with a damaged purple handle (Item No. 22) and a knife with a serrated blade (Item No. 21) **(Addendum No. 6)**.

## CORONER'S INVESTIGATION

**Coroner's Response**
On February 1, 2022, Providence Holy Cross Medical Center staff reported Murillo's death to the County of Los Angeles Department of Medical Examiner-Coroner. Murillo's death was subsequently assigned Coroner Case No. 2022-01389.

On February 1, 2022, at 0911 hours, Murillo's remains were transported from the hospital to the Los Angeles County Forensic Science Center (FSC) by Forensic Attendant Gerardo Meza.

**Autopsy**
On February 5, 2022, Deputy Medical Examiner Doctor Juan Carrillo performed a post-mortem examination of Murillo's remains. Force Investigation Division Detective III Anthony Rheault, Serial No. 33961, Detective Fuller, and Los Angeles County District Attorney Investigator Oscar Rodriguez were present during the examination. Doctor Carrillo's findings were documented in Autopsy Report No. 2022-01389 **(Addendum No. 7)**.

Doctor Carrillo classified the manner of death as Homicide and ascribed the cause to gunshot wounds. Doctor Carrillo identified six gunshot wounds and numbered them as indicated below.[25]

**Gunshot Wound No. 1** entered the left side of Murillo's upper chest. The bullet had a trajectory from front to back, left to right, and in a horizontal to slightly downward angle. A copper-jacketed projectile and a separate fragment were recovered from Murillo's spine.

**Gunshot Wound No. 2** entered the exterior side of Murillo's right forearm and exited the interior side of the forearm and then entered the right side of Murillo's abdomen. The bullet had a trajectory from back to front, right to left, and slightly downward. A copper-jacketed projectile was recovered from Murillo's left chest musculature. There was no exit wound. This wound was described as not immediately incapacitating but potentially fatal.

**Gunshot Wound No. 3** entered the back side of Murillo's right hand and exited the palm. The bullet had a trajectory from back to front, right to left, and slightly downward. No projectile was recovered from the wound.

**Gunshot Wound No. 4** entered Murillo's left elbow. The bullet had a trajectory of back to front, right to left, and upward. There was no exit wound, and no projectile was recovered from the wound.

**Gunshot Wound No. 5** entered Murillo's right upper back and exited the left side of the chest. The bullet had a trajectory from back to front, right to left, and downward. No projectile was recovered from the wound. This wound was described as rapidly fatal.

[25] According to Doctor Carrillo, the numbering does not reflect the sequence of injury.

**Gunshot Wound No. 6** entered Murillo's right rear hip area. The bullet had a trajectory from back to front, right to left, and slightly downward. A projectile was recovered from the right side of Murillo's pelvis.

**Abrasions**
During the examination, Doctor Carrillo also documented eight abrasions on Murillo's left lower back, the rear of his left shoulder, right wrist, left chest, right hip, left knee, right forehead, and right cheek. Doctor Carrillo did not render an opinion as to the cause of these abrasions.

**Toxicology**
On June 11, 2022, a Laboratory Analysis Summary Report was approved by the Los Angeles County Department of Medical Examiner-Coroner, Supervising Criminalist I Sarah Buxton de Quintana. The analysis documented that Murillo's blood alcohol content was .02% and noted the presence of Delta 9 - Tetrahydrocannabinol (THC) in his blood at the time of his death **(Addendum No. 8)**.

## WEAPONS

**Officer J. Martinez** was armed with his Department-authorized Smith & Wesson, M&P, M2.0 Compact 9mm, semiautomatic pistol. When loaded to capacity, the pistol held 16 rounds of Department-approved, Speer LE Gold Dot G2, 9mm ammunition, with fifteen rounds in the magazine and one round in the chamber of the pistol. The pistol was carried in a Department-approved holster.

On February 1, 2022, at approximately 1225 hours, Detective Fuller conducted a post-incident examination of Officer J. Martinez' duty handgun. He determined the pistol was loaded with 13 rounds of Department-approved, Speer LE Gold Dot G2, 9mm ammunition. One round was in the firing chamber and 12 rounds were in the magazine. Officer J. Martinez possessed two additional magazines, which were both loaded to capacity with 15 rounds of the same Department-approved ammunition.

On March 2, 2022, Criminalist II Kuang Siu, Serial No. N4617, finalized a Laboratory Report documenting the test firing of Officer J. Martinez's pistol. The pistol was found to be functional, and the trigger pull value was within the Department's established range **(Addendum No. 9)**.

**Officer Griffin** was armed with his Department-authorized Smith & Wesson, M&P, 9mm, semiautomatic pistol. When loaded to capacity, the pistol held 18 rounds of Department-approved, Speer LE Gold Dot G2, 9mm ammunition, with 17 rounds in the magazine and one round in the chamber of the pistol. The pistol was carried in a Department-approved holster.

On February 1, 2022, at approximately 1237 hours, Detective Fuller conducted a post-incident examination of Officer Griffin's duty handgun. He determined the pistol was loaded with 14 rounds of Department-approved, Speer LE Gold Dot G2, 9mm ammunition. One round was in the firing chamber and 13 rounds were in the magazine. Officer Griffin possessed two additional magazines which were both loaded to capacity with 17 rounds of the same Department-approved ammunition.

JSID

On March 1, 2022, Criminalist Flores, finalized a Laboratory Report documenting the test firing of Officer Griffin's pistol. The pistol was found to be functional, and the trigger pull value was within the Department's established range **(Addendum No. 10)**.

> **Note:** Officers J. Martinez and Griffin were in the same general area during the OIS. Seven discharged cartridge cases were collected from that area during the subsequent investigation. This information, along with the post-incident examination of Officers Griffin and J. Martinez' duty handguns, was consistent with Officer Griffin having fired four rounds and Officer J. Martinez having fired three rounds during the incident.

**Murillo** was armed with two fixed blade knives that were subsequently booked as Item Nos. 21 and 22.

**Item No. 21** was a Hampton Forge bread knife with a serrated blade that was approximately eight inches long. The knife was collected from the west walkway of 12935 Desmond Street by Criminalist Ng.[26]

**[Photograph of the Hampton Forge bread knife, Item No. 21]**

**Item No. 22** was a Farberware kitchen knife with a blade that was approximately four inches long. The knife was collected by Criminalist Ng from the adjacent front yard of 12927 Desmond Street. At the point that it was collected, Criminalist Ng noted that the knife was missing the majority of its purple plastic handle. While processing the scene, Criminalist Ng located multiple fractured pieces of the knife's purple handle on the sidewalk, east planter, and driveway areas of 12935 Desmond Street and in the front yard of the adjacent residence. The fractured handle pieces were booked as Item Nos. 27-32.

[26] On March 30, 2022, Technical Investigation Division (TID) Forensic Print Specialist II Patrick Thompson, Serial No. V8913, completed a Laboratory Examination Report documenting the chemical processing of the Hampton Forge bread knife, Item No. 21, and the Farberware knife with the damaged handle, Item No. 22, possessed by Murillo for latent fingerprints. Additionally, the two knives recovered from the northeast bedroom, Item Nos. 23 and 24, and a knife with a purple handle collected from a kitchen drawer, Item No. 25, were also processed. According to the report, no latent prints were developed **(Addendum No. 11)**.

**[Photograph of the Farberware knife, Item No. 22]**

On May 9, 2022, Criminalist Ng finalized a Laboratory Report documenting a Bullet Path Analysis and Fracture Match Examination that she completed on the Farberware knife and fragmented plastic pieces. After examining the evidence, Criminalist Ng determined that the fractured purple plastic fragments were originally part of the Farberware knife that was impacted by a bullet **(Addendum No. 12)**.

**[Image of the Farberware knife (Item No. 22) and handle pieces (Item Nos. 27-31), Post-Fracture Match]**

**Note**: Although the investigation did not locate images or video footage showing Murillo holding a knife at the time of the OIS, the following information was established during the investigation.

- When interviewed after the OIS, Officer Piche, who was on the west side of the property, told FID investigators he observed Murillo holding a purple knife in his right hand immediately before he ran to the front of the residence. Officers Knolls and Gutierrez who were at the front of the residence, both told FID investigators that they also observed Murillo holding a knife in his right hand as he ran toward them.

- On April 26, 2022, Criminalist Ng finalized a Laboratory report documenting the swabbing of Murillo's knives and the fractured handle pieces for DNA. On June 13, 2022, FSD Criminalist II Kari Mar, Serial No. N4622, finalized a laboratory report documenting the DNA testing of the knives and purple plastic pieces. The

report concluded that Murillo's DNA was present on the purple plastic handle fragments **(Addendum No. 13)**.[27]

- During the Fracture Match Analysis, Criminalist Ng determined the Farberware's purple plastic handle had been impacted by a bullet.

- During Murillo's autopsy, Doctor Carrillo determined Murillo was struck by a bullet on his right hand. According to the autopsy report, Gunshot Wound No. 3 was sustained when a bullet penetrated the back of Murrillo's right hand and exited through his right palm.

- As the OIS occurred, an item can be seen on Officer Gutierrez' BWV in the air between Murillo's position and the location where the Farberware knife was later collected by Criminalist Ng. That item is identified with a red circle in the image below.

**[An enhanced and lightened image from Officer Gutierrez' BWV at the time of the OIS]**

[27] Additionally, the laboratory report documented that Murillo's DNA was also present on the handle of the Hampton Forge bread knife. The swab of Item No. 22 (Farberware knife blade with damaged purple handle) was not tested due to the insufficient amount of DNA. Additionally, two knives were collected from the northeast bedroom, Item Nos. 23 and 24 and were later swabbed for DNA. Item No. 24 tested positive for Murillo's DNA; however, the investigation did not determine when or if Murillo possessed the knife during this incident.

FID No. F004-22
Page 27

12927 Desmond Street

[West facing photograph showing the location of the Farberware knife in the yard of 12927 Desmond Street]

21
21

[Photograph of the Farberware knife, as found in the yard of 12927 Desmond Street]

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER LADA 0043

**FIREARMS ANALYSIS**

On April 26, 2022, Criminalist Ng finalized a Laboratory Report documenting the Bullet Path Analysis at 12935 Desmond Street. Criminalist Ng identified two bullet pathways (A and B) **(Addendum No. 14)**.

**Pathway A** including Impact A, was a non-penetrating impact on the east planter wall in the front yard of 12935 Desmond Street. Pathway A was determined to be consistent with a bullet traveling from south to north, west to east, and in a downward direction.

**Pathway B** including Impact B, was a non-penetrating impact on the east planter wall in the front yard of 12935 Desmond Street. Pathway B also included Impact B1, a perforating impact to a plant in the east planter. Pathway B was determined to be consistent with a bullet traveling from south to north, west to east, and in a downward direction.

On May 25, 2022, Criminalist II Annette Woiwode, Serial No. N4427, finalized a Laboratory Report documenting the comparison of test-fired bullets with bullets and bullet fragments collected from the scene and autopsy. The report concluded that Item Nos. 9, 10, 11, 13, 51B1, and 51C1, were fired from Officer Griffins duty pistol. Item Nos. 8, 12, 51A1, and 51A2 were fired from Officer J. Martinez' duty pistol **(Addendum No. 15)**.

**The below items were matched to Officer Griffin's Pistol**

| Item No. | Item | Location Recovered |
|---|---|---|
| No. 9 | Bullet Fragment | Sidewalk |
| No. 10 | Fired Bullet | Driveway |
| No. 11 | Fired Bullet | East walkway |
| No. 13 | Bullet Fragment | Driveway |
| No. 51B1 | Fired Bullet | Autopsy |
| No. 51C1 | Fired Bullet | Autopsy |

**The below items were matched to Officer J. Martinez' Pistol**

| Item No. | Item | Location Recovered |
|---|---|---|
| No. 8 | Fired Bullet | Curb |
| No. 12 | Fired Bullet | East Planter |
| No. 51A1 | Fired Bullet | Autopsy |
| No. 51A2 | Fired Bullet Fragment | Autopsy |

## VISUAL DOCUMENTATION

**Digital In-Car Video System (DICVS)**
The OIS was not captured on any of the officers' DICVS. Videos from the DICVS equipped units that responded to this incident have been archived in Coban and remain available for review.

**Body Worn Video (BWV)**
Force Investigation Division investigators identified 52 BWVs as being related to this incident. These BWVs were tagged in Evidence.com under Identification No. 22020100000313 and remain available for review.

**Other Department Video**
No other Department video was located.

**Social Media**
The FID Cyber Unit monitored social media sites, from the date of the incident until the submission of this investigative report. No social media posts were found.

**Photographs**
On February 1, 2022, TID Photographer III Gary Raives, Serial No. V9103, photographed the scene as well as the involved and percipient officers. The photographs are stored under Control Nos. 0802885 and 0802886.

On February 8, 2022, and April 25, 2022, TID Photographer III Gregory Backer, Serial No. N5831, photographed evidence items at FSD. The photographs are stored under Control Nos. 0800901 and 0800968.

JSID

**[This space intentionally left blank]**

**COMMUNICATIONS**

A copy of the Communications Division Incident Recall and digital recordings of the Base Frequency and Tactical Channel 41, at the time of this incident, are stored at Communications Division.

DAVID SMITH, Lieutenant II
Officer-in-Charge, Administrative Investigation Section A
Force Investigation Division

**APPROVED:**

RAUL JOVEL, Captain
Assistant Commanding Officer
Force Investigation Division

Date: March 15, 2023

JSID