Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohhlegal.com
Carolyn M. Aguilar, Esq. (SBN: 289550)
caguilar@ohhlegal.com
**ORBACH HUFF + HENDERSON LLP**
6200 Stoneridge Mall Road, Suite 225
Pleasanton, California 94588
Tel: (510) 999-7908; Fax: (510) 999-7918

Attorneys for Defendants OFFICERS JESUS MARTINEZ and KYLE GRIFFIN

HYDEE FELDSTEIN SOTO, City Attorney
SCOTT MARCUS, Chief Assistant City Attorney (SBN: 184980)
CORY M. BRENTE, Senior Assistant City Attorney (SBN: 115453)
CHRISTIAN R. BOJORQUEZ, Deputy City Attorney (SBN: 192872)
christian.bojorquez@lacity.org
200 N. Main Street, 6th Floor, City Hall East
Los Angeles, California 90012
Tel: (213) 978-7023; Fax: (213) 978-8785

Attorneys for Defendant CITY OF LOS ANGELES

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIBEL MURILLO, individually and as successor-in-interest Of The Estate of deceased, JONATHAN MURILLO-NIX,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES, a governmental entity; JESUS MARTINEZ, individually; KYLE GRIFFIN, individually; and DOES 1- 10, inclusive,<br><br>Defendants. | Case No.  22-cv-03188-DMG (SKx)<br><br>**REPLY IN SUPPORT OF DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>DATE:      December 15, 2023<br>TIME:       2:00 p.m.<br>DEPT:      Courtroom 8C<br>JUDGE:    Hon. Dolly M. Gee |

ORBACH HUFF + HENDERSON LLP

# TABLE OF CONTENTS

**Page(s)**

I.   SUMMARY OF ARGUMENT ........................................................................ 1

II.  PLAINTIFF HAS FAILED TO OFFER ADMISSIBLE EVIDENCE TO
     CONTRADICT THE UNDISPUTED FACTS ........................................... 1

    A.   The Officers' Use of Force Was Reasonable ................................... 4

    B.   The Decedent's Continued Movement .............................................. 6

        1.   The Officers Were Not Required to Use Lesser Force
            Alternatives, Nor Was a Further Warning Required ........................... 8

        2.   An Alleged Mental Health Crisis is Not a License to
            Harm Others ........................................................................ 10

    C.   The Officers' Actions Did Not "Shock the Conscience" ............... 10

    D.   The Officers are Entitled to Qualified Immunity ........................... 12

    E.   Plaintiff's State Law Claims Fail .................................................... 17

    F.   The Claim for Punitive Damages is Deficient ............................... 19

III. CONCLUSION ......................................................................................... 19

CERTIFICATE OF COMPLIANCE .............................................................. 20

ORBACH HUFF + HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.D. v. Markgraf,*
712 F.3d 446 (9th Cir. 2012) .................................................................. 11

*Aldini v. Johnson,*
609 F.3d 858 (6th Cir. 2010) .................................................................. 12

*Anderson v. Creighton,*
483 U.S. 635 (1987) ............................................................................... 17

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ................................................................................. 3

*Behrens v. Pelletier,*
516 U.S. 299 (1996) ............................................................................... 13

*Blankenhorn v. City of Orange,*
485 F.3d 463 (9th Cir. 2007) .................................................................. 18

*Boar, Inc. v. County of Nye,*
2010 U.S. Dist. LEXIS 133334 (D. Nev. Oct. 15, 2010) ........................ 3

*Bryan v. MacPherson,*
630 F.3d 805 (9th Cir. 2010) .................................................................. 10

*City of Escondido v. Emmons,*
139 S. Ct. 500 (2019) ............................................................................. 14

*County of Sacramento v. Lewis,*
523 U.S. 833 (1998) .......................................................................... 10, 11

*Cruz v. City of Anaheim,*
765 F.3d 1076 (9th Cir. 2014) ................................................................ 13

*Dang v. Cross,*
422 F.3d 800 (9th Cir. 2005) .................................................................. 19

ORBACH HUFF + HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*Darrah v. City of Oak Park,*
   255 F.3d 301 (6th Cir. 2001) ..................................................................... 11

*Daubert v. Merrell Dow Pharms.,*
   509 U.S. 579 (1993) .................................................................................... 2

*Davis v. Scherer,*
   468 U.S. 183 (1984) .................................................................................... 3

*Edwards v. Baer,*
   863 F.2d 606 (8th Cir. 1989) ..................................................................... 3

*Estate of Adomako v. City of Fremont,*
   No. 17-cv-06386-DMR, 2019 U.S. Dist. LEXIS 104482 (N.D. Cal. June
   21, 2019) ..................................................................................................... 7

*Est. of Hernandez v. City of Los Angeles,*
   No. 220CV04477SBKSX, 2021 WL 4139157 (C.D. Cal. Aug. 10, 2021) ................... 8

*Est. of Larsen v. Murr,*
   511 F.3d 1255 (10th Cir. 2008) .................................................................. 5

*Estate of Toribio v. City of Santa Rosa,*
   381 F.Supp.3d 1179 (N.D. Cal. 2019) ....................................................... 6

*Faulks v. Wells Fargo & Co.,*
   231 F.Supp.3d 387 (N.D. Cal. 2017) .......................................................... 11

*Foster v. City of Fresno,*
   392 F.Supp.2d 1140 (E.D. Cal. 2005) ........................................................ 7

*Foster v. City of Indio,*
   908 F.3d 1204 (9th Cir. 2018) ................................................................... 2

*Garcia v. United States,*
   826 F.2d 806 (9th Cir. 1987) ..................................................................... 9

ORBACH HUFF + HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*George v. Morris,*
 736 F.3d 829 (9th Cir. 2013) ............................................................... 13

*Glass v. Intel Corp.,*
 No. CV-06-1404-PHX, 2009 WL 649787 (D. Ariz. March 11, 2009) ........................ 2

*Glenn v. Washington Cnty.,*
 673 F.3d 864 (9th Cir. 2011) ............................................................... *passim*

*Graham v. Connor,*
 490 U.S. 386 (1989).......................................................................... 17

*Guidroz-Brault v. Mo. Pac. R.R. Co.,*
 254 F.3d 825 (9th Cir. 2001) ............................................................... 2

*Hartsel v. Keys,*
 87 F.3d 795 (6th Cir. 1996) ................................................................ 3

*Hayes v. County of San Diego,*
 736 F.3d 1223 (9th Cir. 2013) .............................................................. 12

*Hopson v. Alexander,*
 71 F.4th 692 (9th Cir. 2023) ............................................................... 3

*J.A.L. v. Santos,*
 724 Fed.Appx. 531 (9th Cir. 2018)........................................................... 18

*J.P. v. City of Porterville,*
 801 F.Supp.2d 965 (E.D. Cal. 2011) ......................................................... 7

*Kiles v. City of N. Las Vegas,*
 276 F. App'x 620 (9th Cir. 2008)............................................................ 12

*Lal v. California,*
 746 F.3d 1112 (2014)........................................................................ 10

*Liebenstein v. Crowe,*
 826 F. Supp. 174 (E.D. Wis. 1992) .......................................................... 9

ORBACH HUFF + HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*MacEachern v. City of Manhattan Beach*,
623 F.Supp.2d 1092 (C.D.CA 2009) ...................................................... 11

*Maddox v. City of Los Angeles*,
792 F.2d 1408 (9th Cir. 1986) ............................................................ 3

*McLenagan v. Karnes*,
27 F.3d 1002 (4th Cir. 1994) ............................................................. 7

*Monette v. Electronic Data Sys. Corp.*,
90 F.3d 1173 (6th Cir. 1996) ............................................................ 3

*Mulligan v. Nichols*,
835 F.3d 983 (9th Cir. 2016) ........................................................... 18

*Nelson v. City of Davis*,
685 F.3d 867 (9th Cir. 2012) ........................................................... 10

*Norton v. City of S. Portland*,
831 F.Supp.2d 340 (D. Me. 2011) ..................................................... 16

*Pearson v. Callahan*,
555 U.S. 223 (2009) ...................................................................... 12

*Plumhoff v. Rickard*,
134 S. Ct. 2012 (2014) ............................................................... 8, 17

*Porter v. Osborn*,
546 F.3d 1131 (9th Cir. 2008) ....................................................... 17, 18

*Reese v. Anderson*,
926 F.2d 494 (5th Cir. 1991) ........................................................ 11, 12

*Reese v. Cty. of Sacramento*,
888 F.3d 1030 (9th Cir. 2018) .......................................................... 7

*Ryburn v. Huff*,
132 S. Ct. 987 (2012) ................................................................... 13

ORBACH HUFF + HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*Ryder v. City of Topeka*,
   814 F.2d 1412 (10th Cir. 1987) ......................................................... 7

*S.B. v. Cnty of San Diego*,
   864 F.3d 1010 (9th Cir. 2017) ...................................................*passim*

*S.R. Nehad v. Browder*,
   929 F.3d 1125 (9th Cir. 2019) ......................................................... 4

*Saucier v. Katz*,
   533 U.S. 194 (2001) ....................................................................... 12

*Scott v. Harris*,
   550 U.S. 372 (2007) ..................................................................... 1, 2

*Scott v. Henrich*,
   39 F.3d 912 (9th Cir. 1994) ........................................................ 5, 6

*Sherrod v. Berry*,
   856 F.2d 802 (7th Cir. 1988) ........................................................... 7

*Smith v. Agdeppa*,
   81 F.4th 994 (9th Cir. 2023) ..................................................... 2, 14

*Smith v. City of Hemet*,
   394 F.3d 689 (9th Cir. 2005) ........................................................... 4

*Street v. J.C. Bradford & Co.*,
   886 F.2d 1472 (6th Cir. 1989) ......................................................... 3

*Tennessee v. Garner*,
   471 U.S. 1 (1985) ..................................................................... 9, 17

*Thompson v. Hubbard*,
   257 F.3d 896 (8th Cir. 2001) ........................................................... 8

*Thrifty Oil Co. v. Bank of Am. Nat'l Tr. & Sav. Ass'n*,
   322 F.3d 1039 (9th Cir. 2002) ......................................................... 2

ORBACH HUFF + HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*Vance v. Peters*,
    97 F.3d 987 (7th Cir. 1996) .......................................................................... 3

*Villiarimo v. Aloha Island Air, Inc.*,
    281 F.3d 1054 (9th Cir. 2002) ...................................................................... 2

*Vos v. City of Newport Beach*,
    892 F.3d 1024 (9th Cir. 2018) ........................................................ 12, 14, 16

*Wilkinson v. Torres*,
    610 F.3d 546 (9th Cir. 2010) ....................................................................... 7

*Zion v. Cty. of Orange*,
    874 F.3d 1072 (9th Cir. 2017) .................................................................. 12

## State Cases

*Brown v. Ransweiler*,
    171 Cal.App.4th 516 (2009) ....................................................................... 17

*Cornell v. City & County of San Francisco*,
    17 Cal.App.5th 766 (2017) ......................................................................... 18

*Hayes v. County of San Diego*,
    57 Cal.4th 622 (2013) ........................................................................... 17, 18

*Koussaya v. City of Stockton*,
    54 Cal.App.5th 909 (2020) ..................................................................... 17, 18

## Federal Statutes

42 U.S.C. section:
    1983.............................................................................................................. 11

## State Statutes

Government Code section:
    820.2............................................................................................................. 18

ORBACH HUFF + HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

## **Federal Rules**

Federal Rules of Evidence:

401................................................................................................................3
402.............................................................................................................2, 3
403................................................................................................................2
407................................................................................................................3
602.............................................................................................................2, 3
701.............................................................................................................2, 3
702................................................................................................................2
800................................................................................................................2
802.............................................................................................................2, 3
901................................................................................................................2

## **Local Rules**

Local Rule:

11-6.1.........................................................................................................20

Reply ISO Defs' Joint MSJ or, in the Alternative, Partial Summary Judgment [22-cv-3188-DMG (SKx)]

ORBACH HUFF + HENDERSON LLP

Defendants CITY OF LOS ANGELES ("City") and OFFICERS JESUS MARTINEZ ("Martinez" or "Officers") and KYLE GRIFFIN ("Griffin" or "Officers") (collectively "Defendants") submit this reply in support of their Joint Motion for Summary Judgment or, in the alternative, Partial Summary Judgment ("Motion").

## I.    SUMMARY OF ARGUMENT

Plaintiff MARIBEL MURILLO ("Plaintiff") creates a false narrative that is unsupported and directly contradicted by the video evidence.  Plainly stated, Plaintiff relies on inadmissible evidence and gross misinterpretations of the evidentiary and testimonial record to argue the existence of a triable issue of fact where none exists. Plaintiff selectively edits and takes out of context certain facts to manufacture disputes. For example, Plaintiff utterly ignores the threats by Decedent Jonathan Murillo-Nix ("Murillo-Nix").  She similarly ignores Murillo-Nix's actions in ignoring the Officers' directives, instead charging toward the Officers while armed with two knives.  Plaintiff cannot will-away the relevant and material facts.

Ultimately, the videos speak for themselves and clearly depict the truth of the incident.  While on summary judgment the Court draws inferences in favor of the non-moving party, allegations that are directly contradicted by the record are not entitled to such deference.  Consequently, Plaintiff's fictitious assertions that Murillo-Nix was not aggressive, did not advance on the Officers, or was never armed with a knife – all of which are directly contradicted by the videos – are unavailing.  The Officers' use of force in protecting themselves from Murillo-Nix was lawful and Defendants are entitled to summary judgment.

## II.    PLAINTIFF HAS FAILED TO OFFER ADMISSIBLE EVIDENCE TO CONTRADICT THE UNDISPUTED FACTS

This matter is ripe for summary adjudication, especially as the entirety of the incident was recorded on video.  See *Scott v. Harris*, 550 U.S. 372, 378 (2007) (where there is "a video tape capturing the events in question" and "[t]here are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that

ORBACH HUFF + HENDERSON LLP

what it depicts differs from what actually happened," the Court is not obligated to accept contrary assertions from the plaintiff); accord *Thrifty Oil Co. v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002) ("Where, as here, the case turns on a mixed question of fact and law and the only disputes relate to the legal significance of undisputed facts, the controversy collapses into a question of law suitable to disposition on summary judgment.").

Rather than concede the videos accurately depict the entirety of the incident, Plaintiff attempts to distract by relying on the inadmissible opinions from experts, who were neither present at the incident to establish foundation, nor are their second-guess conjectures adequate to support a genuine issue of material fact. *Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001) (expert declaration should not include unsupported speculation and subjective beliefs); FRE 402, 403, 602, 701, 702, 800, 802 and 901; *Scott v. Harris*, 550 U.S. at 385 (arguments based on what the officers could have done do not create a genuine dispute of material fact); *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 590 (1993). The unsupported beliefs and speculations proffered by Plaintiff's experts fail to raise any triable issues and are precisely the kind of speculation and conjecture "that courts have held will not defeat a motion for summary judgment." *Glass v. Intel Corp.*, No. CV-06-1404-PHX, 2009 WL 649787, at *7 (D. Ariz. March 11, 2009); see also *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002).

Plaintiff's misdirection and misrepresentations of the evidence do not meet her burden. Both the Supreme Court and the Ninth Circuit have reversed trial courts where a plaintiff presented no evidence or where plaintiff's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. at 380; see also *Foster v. City of Indio*, 908 F.3d 1204, 1217-18 (9th Cir. 2018) (reversing district court's finding of genuine dispute of fact when plaintiff's bare allegation alone, without evidence, was insufficient); *Smith v. Agdeppa,* 81 F.4th 994, 1003 (9th Cir. 2023) (finding that plaintiff's alleged disputes of fact were insignificant

ORBACH HUFF + HENDERSON LLP

1    and noting cases). "Although we 'assum[e] that the version of material facts asserted by

2    the [plaintiff] is correct,' we may consider facts offered by the defendant that are

3    'uncontradicted by any evidence in the record.'" *Hopson v. Alexander*, 71 F.4th 692, 697

4    (9th Cir. 2023) (citations omitted). Moreover, the administrative interviews and BOPC

5    findings proffered by Plaintiff are inadmissible hearsay, irrelevant, and evidence of

6    subsequent remedial measures. FRE 802, 602, 701, 401, 402, 407; *Maddox v. City of Los*

7    *Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986); see also, *Boar, Inc. v. County of Nye*, 2010

8    U.S. Dist. LEXIS 133334, *19, 2010 WL 5070888 (D. Nev. Oct. 15, 2010).

9           Established precedent likewise supports the exclusion of evidence pertaining to

10   whether the Officers complied with department policies. Indeed, the breach of such

11   guidelines is not dispositive to the determination of whether an officer violated a

12   constitutional right. *See*, *Davis v. Scherer*, 468 U.S. 183, 194 (1984); *Edwards v. Baer*,

13   863 F.2d 606, 608 (8th Cir. 1989) ("While the unfortunate incident that gave rise to this

14   lawsuit would not have occurred if [the defendant police officer] had followed the

15   department's guidelines, police department guidelines do not create a constitutional

16   right."); *Vance v. Peters*, 97 F.3d 987, 995 (7th Cir. 1996) ("The hearing officer's

17   decision that C.O. Roy used excessive force was based upon the standards set forth in the

18   prison's internal rules or policies not on Eighth Amendment criteria.").

19          "[N]ot every issue of fact or conflicting inference presents a genuine issue of

20   material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The

21   test is whether the party has presented a jury question as to each element. *Hartsel v. Keys*,

22   87 F.3d 795, 799 (6th Cir. 1996). Plaintiff must present more than a mere scintilla of

23   evidence; she must present evidence on which the trier of fact could reasonably find for

24   her. *Id*.; *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986). Mere speculation

25   will not suffice; "the mere existence of a colorable factual dispute will not defeat a

26   properly supported motion for summary judgment. A genuine dispute between the parties

27   on an issue of material fact must exist to render summary judgment inappropriate."

28   *Monette v. Electronic Data Sys. Corp*., 90 F.3d 1173, 1177 (6th Cir. 1996).

- 3 -

Faced with the videos of Murillo-Nix's criminal conduct, Plaintiff declares that the Officers' credibility cannot be considered, citing *S.R. Nehad v. Browder,* 929 F.3d 1125, 1133 (9th Cir. 2019). In *Nehad,* however, there were significant issues regarding credibility, where the officer had allegedly shot a suspect claiming the suspect had a knife, but later conceded the suspect never had a knife. *Id.* at 1133. Additionally, eyewitness testimony and video evidence refuted that the suspect had a knife. *Id.*

However, this is not a case where the facts turn on the officers' credibility, especially where little (if any) officer testimony is utilized to support Defendants' Motion. For example, Defendants are not relying on the Officers' testimony to show Murillo-Nix charged with a knife; this is easily observable from the videos. Plaintiff's pure speculation to the contrary disingenuously attempts to manipulate and misrepresent the facts to confuse and mislead. Such antics should not be countenanced. Rather, summary judgment should be granted.

### A.     The Officers' Use of Force Was Reasonable

A careful reading of Plaintiff's opposition suggests that she does not dispute any of the facts or evidence proffered by Defendants related to Murillo-Nix's actions. Rather, Plaintiff argues that her subjective interpretation and opinions should control. However, such speculation and conjecture does not amount to admissible facts, nor does it supplant the legal axioms by which the Officers' actions are adjudged.

In evaluating the reasonableness of force, the "most important" factor is whether the suspect posed an "immediate threat to the safety of the officers or others." *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005). Thus, the key question is whether the totality of the circumstances known to the Officers reasonably supported their conclusion that Murillo-Nix posed an imminent threat when they fired their weapons. On this issue, there are absolutely no factual disputes. The videos undeniably depict Murillo-Nix charging toward the Officers while armed with knives. SUFs 25-27. Significantly, both of the Officers received an announcement seconds before using lethal force that Murillo-Nix was armed with two knives, with the Officers thereafter personally observing at least

- 4 -

ORBACH HUFF + HENDERSON LLP

one knife in Murillo-Nix's hand.  SUFs 27, 34-35.  Notably, the Officers resorted to lethal force only after Murillo-Nix closed to within 7 feet, with the final shot while Murillo-Nix was an arms-length away, ultimately falling at the Officers' feet.  SUFs 34-35.  No published case has ever concluded that an irrational, non-compliant armed individual charging at an officer and closing to within 7 feet did not amount to a "significant threat of death or serious physical injury," especially after prolonged verbal negotiations and less-lethal options had failed.  To the contrary, "[a]n officer's use of deadly force is reasonable [ ] if the 'officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994).

The Officers would have absolutely been in more danger had they waited for Murillo-Nix to advance closer, especially given the pace of his advance, his failure to follow direct commands, as well as his threats to both his family and the Officers.  These facts are more than sufficient to confirm the Officers had "probable cause to believe that the suspect pose[d] a significant threat of death or serious physical injury to the officer." *Henrich*, 39 F.3d at 914.  Indeed, "[a] reasonable officer need not await the 'glint of steel' before taking self-protective action; by then, it is 'often . . . too late to take safety precautions.'" *Est. of Larsen v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008).  A suspect armed with a knife while running at a fully uniformed officer who is holding a weapon and shouting commands to stop and drop the knife is a paradigmatic example of a "tense, uncertain, and rapidly evolving" situation.  *Henrich*, 39 F.3d at 914.

In a Machiavellian effort to avoid summary judgment, Plaintiff contends that Murillo-Nix was unarmed or that the knife was ejected in the first rounds of fire.  Even assuming those assertions were factually supported, they fail to demonstrate that the Officers' actions were unreasonable, especially given the information known at the time.  Assuming arguendo that the knife was shot out of Murillo-Nix's hand, the use of lethal

force was still objectively reasonable, especially as less than 10 seconds[1] elapsed between the initial use of less-lethal force (the first 40mm round) and the final lethal round.  SUFs 36-37.  Furthermore, even if the Officers mistakenly believed Murillo-Nix was armed, the Officers' actions were nevertheless objectively reasonable.  *Estate of Toribio v. City of Santa Rosa*, 381 F.Supp.3d 1179, 1189 (N.D. Cal. 2019).

The Officers were faced with a quickly advancing armed suspect who, in a manner of seconds, could have killed or significantly injured either the Officers or others in close proximity.  Under these facts, the Officers' decision to deploy deadly force to stop Murillo-Nix's imminent threat was objectively reasonable and did not violate the constitution.  *Henrich*, 39 F.3d at 914.

### B.  The Decedent's Continued Movement

Apparently conceding that the Officers' decision to use lethal force was reasonable, Plaintiff fixates on the final lethal shot, which was fired less than two seconds after the first lethal shot.  As depicted by the videos, this was a very rapidly evolving situation which resulted in the Officers being confronted with an imminent threat and firing a total of seven shots within less than two seconds.  Despite the minuscule elapsed time between the first and last lethal shot, Plaintiff opines that Murillo-Nix had ceased his attack and no longer posed an imminent threat when the final shot was fired.  This conclusion is reached by slowing down the video and viewing it frame-by-frame, something that the Officers did not have the luxury of doing.  However, even the slowed video confirms that Murillo-Nix was still advancing upon the Officers when the final shot was fired; only after the final shot did he cease to pose an imminent threat.  Contrary to Plaintiff's assertions, Murillo-Nix was *absolutely not* lying prone on the ground when any shot was fired.  SUF 36.

---

[1] From the moment Officer Schlesinger fired a foam projectile from a 40mm launcher at Murillo-Nix in the back of the property until the last lethal shot was fired by Officer Martinez, only 10 seconds elapsed.  SUFs 34-35, 37.  The seven lethal shots were fired within that window, with all lethal shots fired in less than 2 seconds.  SUF 36.

ORBACH HUFF + HENDERSON LLP

Where officers do not shoot "mindlessly" and instead fire in rapid continuous succession until they can "ensure the elimination of a deadly threat," the Ninth Circuit has rejected a test that would require officers to "reevaluate whether a deadly threat has been eliminated after each shot" as "[s]uch a requirement places additional risk on the officer not required by the Constitution." *Wilkinson v. Torres*, 610 F.3d 546, 552 (9th Cir. 2010) (directing grant of summary judgment even though reason to believe three shots in second volley fired after "any safety risk had been eliminated"). Other courts have similarly held that officers cannot reasonably be expected to immediately perceive a change in a suspect's threatening behavior when firing in rapid succession. See *J.P. v. City of Porterville*, 801 F.Supp.2d 965, 987 (E.D. Cal. 2011) ("In this quickly evolving situation, that some of the shots may have hit [decedent] as he was slumping or had dropped is not sufficient to show excessive force."); *Foster v. City of Fresno*, 392 F.Supp.2d 1140, 1158 (E.D. Cal. 2005) (granting summary judgment even where dispute of fact as to unarmed decedent's movements as shots fired because four shots fired "in rapid succession"); *Estate of Adomako v. City of Fremont*, No. 17-cv-06386-DMR, 2019 U.S. Dist. LEXIS 104482, at *23 (N.D. Cal. June 21, 2019) (upholding reasonableness of three shots in rapid succession in the course of two seconds without pausing where no reason to believe officer actually fired after seeing decedent was "walking away and no longer posed a threat"). These authorities further confirm that the Officers' use of force was reasonable and summary judgment is appropriate.

Plaintiff has no response to Defendants' cited cases on this issue either. Furthermore, there are numerous cases finding the use of deadly force reasonable despite a later discovery that the suspect was unarmed; reasonableness is determined based upon the information available to the officer *at the time the force is applied*, not based upon later-acquired information. See, e.g., *Sherrod v. Berry*, 856 F.2d 802, 804-05 (7th Cir. 1988); *McLenagan v. Karnes*, 27 F.3d 1002, 1005 (4th Cir. 1994); *Reese v. Anderson*, 926 F.2d 494, 496, 500-01 (5th Cir. 1991); *Ryder v. City of Topeka*, 814 F.2d 1412, 1421 (10th Cir. 1987). "An officer is not constitutionally required to wait until he sets eyes

ORBACH HUFF + HENDERSON LLP

1  upon the weapon before employing deadly force to protect himself ….” *Thompson v.*
2  *Hubbard*, 257 F.3d 896, 899 (8th Cir. 2001).  Here, there is no evidence to suggest the
3  Officers believed Murillo-Nix to be unarmed.  In fact, the evidence is to the contrary
4  (SUFs 25-27, 34-36) and confirms the Officers were entitled to use lethal force to defend
5  their lives.

6      As the High Court has stated, “if police officers are justified in firing at a suspect
7  in order to end a severe threat to public safety, the officers need not stop shooting until
8  the threat has ended.”  *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2021-22 (2014); see also,
9  *Est. of Hernandez v. City of Los Angeles,* No. 220CV04477SBKSX, 2021 WL 4139157,
10  at *5 (C.D. Cal. Aug. 10, 2021) (“it is important to evaluate the shooting in the real-world
11  context in which it occurred. . . . The question is not whether another officer might have
12  waited to evaluate the rising man’s next move to see if he would stop, charge at the
13  officer, or advance toward the crowd. The question is whether firing six shots under these
14  circumstances was unconstitutional. The Supreme Court answered that question in
15  *Plumhoff*: the shooting must stop when ‘the threat has ended.’  572 U.S. at 777-78.”).

16      When evaluated in light of *Plumhoff*, *Hernandez* and the other similar holdings,
17  there is no question that the Officers’ use of lethal force was objectively reasonable.
18  While the officer in *Hernandez* was 44 feet away and had at least 6 seconds, the Officers
19  here were a mere 7 feet away from Murillo-Nix and had less than 2 seconds to respond to
20  the imminent threat.

21          **1.    The Officers Were Not Required to Use Lesser Force**
22                  **Alternatives, Nor Was a Further Warning Required**

23      Plaintiff next opines that the Officers should have employed lesser alternatives,
24  such as less-lethal force or issued verbal warnings before resorting to deadly force.
25  Initially, Plaintiff’s contentions rest on the faulty premise that warnings were not given
26  and that less-lethal options were not employed.  Both statements are flatly contradicted
27  by the evidence (including specifically the videos of the incident), which reflect the
28  extensive efforts by the Officers to communicate with Murillo-Nix and reach a peaceful

ORBACH HUFF + HENDERSON LLP

- 8 -

resolution for over more than an hour prior to the shooting.  During those efforts, numerous officers repeatedly attempted to engage Murillo-Nix, including warning that lethal force may be used if he did not come out unarmed.  SUF 21.  Lethal force was only utilized when Murillo-Nix unexpectedly charged from the house while armed with at least one knife, directly at the Officers.

Contrary to Plaintiff's assertions, the Officers *did* attempt several lesser force alternatives, none of which were successful.  Those efforts included verbal negotiations for over an hour, the use of 40mm foam rounds by Officer Schlesinger and Officer Tykhomyrov (SUFs 28-30), as well as multiple bean bag rounds by Officer Gutierrez.  SUF 31.  None of these measures were successful in deterring Murillo-Nix's armed attack on the Officers.

Turning next to Plaintiff's assertions that the required warning was not given, that statement is both factually and legally incorrect.  As referenced above, the videos reflect numerous warnings being given to Murillo-Nix over the hour preceding the use of lethal force.  In fact, Officer Martinez was still attempting to communicate with Murillo-Nix over the PA system within seconds of Murillo-Nix presenting as an imminent threat.  SUFs 19, 21-24.

Regardless, there is no *per se* requirement for a warning of "we'll shoot" prior to the use of lethal force.  *Tennessee v. Garner*, 471 U.S. 1, 11 (1985) (warning required only "where feasible" to a suspect who "poses no immediate threat to the officer and no threat to others"); *Garcia v. United States*, 826 F.2d 806, 812 (9th Cir. 1987) (distinguishing *Garner* and holding that no warning required under constitution); *Liebenstein v. Crowe*, 826 F. Supp. 174, 185 (E.D. Wis. 1992) (concluding that neither case law nor statute confers on a suspect the right to be warned before use of lethal force).  The law only requires that a warning be issued *when feasible* and not when a suspect poses a clear imminent threat.  *Garner,* 471 U.S. at 11.  Given the extremely abbreviated time between Murillo-Nix exiting the home and the final shot – less than 10 seconds – further verbal warnings were simply not feasible.

- 9 -

### 2. An Alleged Mental Health Crisis is Not a License to Harm Others

Next, Plaintiff implies that Murillo-Nix's purported "mental health crisis" somehow excuses his threats and actions. Notably, Plaintiff offers no facts to support their position that Murillo-Nix's mental state was anything other than an irrational individual. Notwithstanding, the Ninth Circuit has "refused to create two tracks of excessive force analysis, one for the mentally ill and one for serious criminals." See *Bryan v. MacPherson*, 630 F.3d 805, 829 (9th Cir. 2010). Even if Plaintiff could prove Murillo-Nix was actually mentally ill and that the Officers had some knowledge thereof, they were not required to put themselves in danger when Murillo-Nix posed an imminent risk of death or serious bodily harm. See *Lal v. California*, 746 F.3d 1112, 1114 (2014) (holding that officers were justified in shooting a mentally ill person holding a football-sized rock over his head because he posed an imminent danger to the officers); *Nelson v. City of Davis*, 685 F.3d 867, 880 (9th Cir. 2012) ( "the degree of threat posed by the suspect is the most important factor" in a reasonableness analysis). The knowledge that Murillo-Nix was allegedly mentally ill would not have changed the fact that he was charging towards the Officers while armed and that all of the other less-lethal efforts had failed.

### C. The Officers' Actions Did Not "Shock the Conscience"

In arguing the Officers' actions "shocked the conscience," Plaintiff pointedly ignores how rapidly this matter escalated. Instead, they argue that this was a slow-progressing matter, which "lasted longer than an hour." Opp. at 12:27. Plaintiff's position is blatantly contradicted by the videos which show Murillo-Nix *sprinting* at the Officers and reaching them within *10 seconds* of exiting the home. SUF 37. There is no question the Officers did not have the opportunity to deliberate; because officers often times must act quickly, the courts have declined to unnecessarily restrict the timeframe for a meaningful opportunity for actual deliberation. For example, in *County of Sacramento v. Lewis*, 523 U.S. 833, 866 (1998), the chase lasted approximately five

- 10 -

ORBACH HUFF + HENDERSON LLP

minutes, yet the Court found insufficient time to deliberate.  See also *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (sixty-seven seconds between the pepper spray and shooting); *MacEachern v. City of Manhattan Beach*, 623 F.Supp.2d 1092, 1100 (C.D.CA 2009) (court applied purpose to harm standard where officer had twenty to twenty-five seconds to decide whether to shoot).  Thus, without any evidence of a subjective intent to harm Murillo-Nix, the Officers' actions, even if wrongful under the Fourth Amendment, could not have violated the Fourteenth Amendment's "shock the conscience" standard.

"Whether a defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court." *Faulks v. Wells Fargo & Co.*, 231 F.Supp.3d 387, 411 (N.D. Cal. 2017), aff'd, 728 F. App'x 781 (9th Cir. 2018). Furthermore, when an officer is confronted with a fast-paced situation in which deliberation is not practical, his conduct will only shock the conscience if the act was committed with a "purpose to harm unrelated to law enforcement activities." *Wilkinson*, 610 F.3d at 554.  Under the "purpose to harm" test promulgated in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), "it is the [officer's] intent to inflict force beyond that which is required by a legitimate law enforcement objective that 'shocks the conscience' and gives rise to liability under § 1983." *Porter*, 546 F.3d at 1140, citing *Lewis*, 523 U.S. at 836.  "*Lewis* contemplates such 'rare situations where the nature of an officer's deliberate physical contact is such that a reasonable factfinder would conclude the officer intended to harm, terrorize or kill.'" *Porter* at 1141.

Unlike an excessive force claim under the Fourth Amendment which looks at objective reasonableness, a claim under the Fourteenth Amendment considers the subjective intent of the officer. *A.D. v. Markgraf*, 712 F.3d 446, 453 (9th Cir. 2012) ("bully[ing] a suspect or get[ting] even").  To establish the officer's subjective intent, a "substantially higher hurdle must be surpassed to make a showing of excessive force under the Fourteenth Amendment than under the 'objective reasonableness' test of *Graham*." *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001).  This is because "actions that do not violate the Fourteenth Amendment's shock-the-conscience

ORBACH HUFF + HENDERSON LLP

standard may nevertheless violate the Fourth Amendment's reasonableness standard for excessive force." *Aldini v. Johnson*, 609 F.3d 858, 867 (6th Cir. 2010).  "[W]hen an officer encounters fast-paced circumstances presenting competing public safety obligations, the purpose to harm standard must apply."  *Porter*, 546 F.3d at 1139.  In the seconds between Murillo-Nix exiting the residence while armed, rushing directly at the Officers and ultimately coming to rest at the Officers' feet, the Officers did not have time to deliberate.

Nor is there any evidence that the Officers acted with a subjective purpose to harm Murillo-Nix for reasons that were unrelated to legitimate law enforcement objectives. SUF 41.  *Hayes v. County of San Diego*, 736 F.3d 1223, 1230 (9th Cir. 2013).  Instead, the shooting served the legitimate law enforcement purpose of stopping a dangerous suspect from inflicting great bodily injury or death on another.  See *Zion v. Cty. of Orange*, 874 F.3d 1072, 1077 (9th Cir. 2017); *Hayes*, 736 F.3d at 1230-31.  In fact, as clearly shown on the videos, Officer Martinez was trying to engage Murillo-Nix up until seconds before Murillo-Nix charged him with a knife.  SUF 35.  Accordingly, Plaintiff's claims fail in their entirety.

### D.     The Officers are Entitled to Qualified Immunity

Even assuming arguendo that either of the Defendant Officers violated the Fourth Amendment by using deadly force against Murillo-Nix, they did not violate a right that was "'clearly established' at the time of Defendant's alleged misconduct."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  "In the context of excessive force claims, the [United States] Supreme Court has held that qualified immunity serves 'to protect officers from the sometimes 'hazy border between excessive and acceptable force,' and to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'"  *Kiles v. City of N. Las Vegas*, 276 F. App'x 620, 621-22 (9th Cir. 2008), quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

In opposing qualified immunity, Plaintiff cites to a trio of cases – *Vos, Glenn*, and *S.B.* – which purportedly put the Officers on notice that their actions would be unlawful.

ORBACH HUFF + HENDERSON LLP

Ironically and further refuting Plaintiff's assertions, two of the three cases actually involve the Ninth Circuit granting qualified immunity.

Plaintiff argues there are "disputed issues of material fact [which] preclude granting qualified immunity." Opp. at 13:17. However, none of the imagined factual disputes are material, especially as the entirety of this incident was captured on video. In *Behrens v. Pelletier*, 516 U.S. 299 (1996), the Supreme Court clarified that the critical issue is whether the facts that are disputed are *material* to the immunity defense.

Here, there can be no question that the Officers believed Murillo-Nix had a knife, even if the knife was shot from his hand during the use of lethal force. While Plaintiff avers that Murillo-Nix was unarmed, there is simply no evidence to support such conjecture and speculation. *All* of the evidence is to the contrary. Even accepting Plaintiff's speculation that Murillo-Nix had disposed of the knife between the time the first and last shots were fired, there is no evidence to suggest that the Officers *believed* he was unarmed.

The test of reasonableness in this context is highly deferential to the police officer's need to protect himself and others. As such, an officer is not constitutionally required to wait and see until he sets eyes upon a weapon before employing deadly force to protect himself or others. *Cruz v. City of Anaheim*, 765 F.3d 1076, 1077-1078 (9th Cir. 2014); *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013), cert. denied, 134 S. Ct. 2695 (2014) (observing that an officer need not "delay their fire until a suspect turns his weapon on them; if the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat" sufficient to warrant the use of deadly force). A contrary rule would place not only the lives of law enforcement in danger, but would also endanger the public's safety. *Ryburn v. Huff*, 132 S. Ct. 987, 991 (2012) (warning judges to "be cautious about second-guessing an officer's assessment, made on the scene, of the danger presented by a particular situation").

///

- 13 -

The cases Plaintiff relies upon – *Vos, Glenn*, and *S.B.* – simply cannot be held to have "clearly established" the contours of Murillo-Nix's rights.  To the contrary, each case confirmed that the officers were entitled to qualified immunity.  The standard is *not* whether clearly established law supported an officer's actions, rather it is whether an officer's conduct was prohibited by clearly established law.  The Supreme Court recently reminded the Ninth Circuit of this standard in *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019).  The Ninth Circuit also re-confirmed this standard in *Smith v. Agdeppa*, 81 F.4th 994, 1004, n.4 (9th Cir. 2023) ("the burden is not on the officers to prove they fit perfectly within the facts of a case granting qualified immunity; the burden is on the plaintiff to show a violation of a clearly established right in the specific circumstances at issue.").  The issue is whether Plaintiff's proffered cases are sufficiently on point to have put the officers on notice that their actions *here* would be unlawful.  Those cases do not.

Plaintiff's reliance on *Vos v. City of Newport Beach*, 892 F.3d 1024 (9th Cir. 2018) is misplaced.  Although the suspect in *Vos* had been acting erratically prior to the officers' arrival, no officer believed the subject held a weapon.  *Vos*, 892 F.3d at 1030, 1032.  Additionally, "and perhaps most significantly," the officers in *Vos* had the suspect surrounded and contained, with ample lesser alternative uses of force available and waiting to be deployed, including a 40mm projectile launcher and a canine unit.  Yet, the officers chose not to use those alternatives, instead resorting directly to lethal force.  *Vos* at 1032-1033.  By comparison, the Officers here attempted to negotiate with Murillo-Nix for well over an hour.  When those efforts failed and Murillo-Nix charged, less lethal force was deployed – only when those efforts failed did the Officers resort to lethal force.  Despite actions by the officers in *Vos* that are far more egregious, the Corut of Appeal confirmed that the officers in *Vos* were entitled to qualified immunity.  *Vos* at 1036.

Plaintiff's citation to *Glenn v. Washington Cnty.*, 673 F.3d 864, 867-68 (9th Cir. 2011) is somewhat unexpected as it, too, supports the Officers' actions.  In relevant part, the *Glenn* court confirmed that "Officers need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of

ORBACH HUFF + HENDERSON LLP

conduct [the courts have identified] as reasonable." *Glenn* at 876.  Notwithstanding, *Glenn* is factually inapposite.  In that matter, officers were informed that a teenager was highly intoxicated and threatening to kill himself with a pocketknife.  The officers set up a staging area down the block, given the teenager's threats that he would kill himself.  *Id.* at 868.  Yet, inexplicably, two officers, with handguns drawn and aimed, went directly to the house, and riled the teen by swearing and pointing their guns at him.  *Id.* at 868-869. Another officer then arrived with a less-lethal bean bag and was instructed to shoot the teen.  *Id.* at 869.  As the teen attempted to step away, he was fatally shot 8 times.  *Id.* There is no indication in the facts of that case that the teen ever threatened the officers or anyone else prior to force being used.  *Id.* at 873-874.  Additionally, the lethal rounds were fired before the last bean bag being fired.  *Id.* at 869.  Thus, the officers in *Glenn* (similar to *Vos*) did not attempt to utilize the less-lethal alternatives, though they were available.  Whatever the merits of *Glenn,* its starkly different facts cannot have put the Officers here on notice that their actions would be unlawful.

Lastly, in *S.B. v. Cnty of San Diego,* 864 F.3d 1010 (9th Cir. 2017), the facts are not at all similar, especially with sufficient detail to put the Officers on notice that their actions would be unlawful here.  In *S.B.,* family members of a man (Brown) reported to a local fire station that Brown was acting strangely, and although he had knives available to him, they did not know if he was armed, nor was there any report that he had threatened them with knives.  When officers responded to Brown's home (where presumably no one else was inside), they quickly cornered an obviously heavily intoxicated Brown into a kneeling position on the kitchen floor with a less-lethal taser and lethal firearms pointed at him.  *Id.*  When the officers then attempted to handcuff Brown, Brown swiftly reached into his pocket and brandished a knife.  *Id.*  One of the officers then immediately shot and killed Brown, assuming that Brown was intending to strike one of the handcuffing

Reply ISO Defs' Joint MSJ or, in the Alternative, Partial Summary Judgment [22-cv-3188-DMG (SKx)]

ORBACH HUFF + HENDERSON LLP

1   officers.  *Id.*  While the Court concluded that a jury[2] could find the officer's actions were

2   objectively unreasonable, the Court nonetheless granted qualified immunity.  *Id.* at 1017.[3]

3        Again, the facts of this matter are distinctly different from those in *S.B.*  Murillo-

4   Nix made multiple threats over several hours that he wanted to kill his stepfather.  SUF 1,

5   23.  Murillo-Nix was also visibly violent, breaking down the bedroom door and throwing

6   things at the officers from the bedroom window.  Notwithstanding Murillo-Nix's clear

7   violence toward others, the officers still tried to negotiate with Murillo-Nix for over an

8   hour.  In *S.B.*, it was unclear whether Brown was intending to advance toward an officer;

9   by comparison, there is no dispute that Murillo-Nix was charging directly at the Officers

10  when lethal force was used.  Thus, *S.B.*, like *Vos* and *Glenn*, cannot constitute clearly

11  established law to preclude qualified immunity in this case.

12       Having dispensed with the legal authorities that Plaintiff incorrectly claims

13  established the contours of Murillo-Nix's rights, a review of the relevant precedent is

14  necessary.  In addition to the cases cited in Defendants' moving papers, *Norton v. City of*

15  *S. Portland*, 831 F.Supp.2d 340, 363-64 (D. Me. 2011) is instructive, holding that deadly

16  force against a suspect holding a knife and moving closer to officers "appears objectively

17  reasonable and, at the very least, is entitled to qualified immunity."  Even had the

18  Officers here misjudged whether lethal force was objectively reasonable, neither

19  Supreme Court nor circuit precedent in existence at the time was sufficient to put them on

20  notice that using deadly force – especially when differentiating between the seven shots

21  fired in less than two seconds – would violate Murillo-Nix's Fourth Amendment rights.

22

23  [2] Plaintiff claims that the *S.B.* Court found "that the deputy's "use of deadly force was not
24  objectively reasonable, and therefore violated Brown's Fourth Amendment Right against
    excessive force."  Opp. at 17:14-15.  Plaintiff's assertion is incorrect – the *S.B.* Court
25  actually found that when drawing all justifiable inferences in plaintiff's favor, a
    reasonable jury *could* conclude the use of force was unreasonable.  That is significantly
26  different from deeming force unreasonable as a matter of law and falls woefully short of
27  "clearly establishing" the contours of the right.
28  [3] Notably, the Court in *S.B.* partially relied upon caselaw that was later reversed in *Kisela*.
    See, *S.B.*, at 1014, n.4.

ORBACH HUFF + HENDERSON LLP

A reasonable officer would not have found fair warning in *Garner*, *Graham* (*Graham v. Connor*, 490 U.S. 386 (1989))*, or any other precedent at the time, that they could not use deadly force to defend against an imminent threat posed by an armed, noncompliant and rapidly advancing suspect.

Similarly, the Officers' belief that Murillo-Nix was continuing to advance until the final shot was fired was reasonable. Indeed, no published case has ever delineated precisely when an armed suspect who is in the process of attacking regains his status as an imminent threat (assuming he ever ceased being such). Established precedent is to the contrary. See *Plumhoff*, 134 S. Ct. 2012 ("[I]f police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended."). Even if the Officers may have been mistaken, any such mistake was reasonable. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Thus, the Officers are entitled to qualified immunity.

**E.   Plaintiff's State Law Claims Fail**

Plaintiff makes a passing reference that the pre-shooting conduct of the Officers may render their later conduct unreasonable, but this misstates the law. Since the Supreme Court decided *Hayes*, the California appellate courts have put the concept of pre-shooting conduct into the proper perspective. In *Koussaya v. City of Stockton*, 54 Cal.App.5th 909, 936 (2020), the Court noted that an officer's pre-shooting conduct need not be the "most reasonable" action that is least likely to cause harm, it only needs to "fall within the range of conduct which is reasonable." *Koussaya*, 54 Cal.App.5th at 936, citing *Brown v. Ransweiler*, 171 Cal.App.4th 516, 537-538 (2009); *Hayes v. County of San Diego*, 57 Cal.4th 622, 632 (2013). The court emphasized:

> We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure." [Citation.] Placing the burden of proof on the plaintiff to establish that an officer's use of force was unreasonable 'gives the police appropriate

maneuvering room in which to make such judgments free from the need to justify every action in a court of law. *Koussaya*, 54 Cal.App.5th at 936.

Consistent with this view, the Ninth Circuit also observed that "California law does not require officers to 'choose the most reasonable action or the conduct least likely to cause harm' (citation omitted) and 'law enforcement personnel have a degree of discretion as to how they choose to address a particular situation.'" *J.A.L. v. Santos*, 724 Fed.Appx. 531, 534, 2018 U.S. App. LEXIS 2916 (9th Cir. 2018). Similar analysis by federal courts affirm the limited impact of pre-shooting conduct on the otherwise reasonable use of force. For example, in *Mulligan v. Nichols*, 835 F.3d 983, 991 (9th Cir. 2016), the Ninth Circuit noted that, even under *Hayes*, a plaintiff must show a causal link between the allegedly negligent pre-shooting tactics and the ultimate use of force in order to support the existence of any negligence liability. Other than vomiting a laundry list of allegedly negligent pre-shooting tactics, Plaintiff fails to demonstrate how any of those tactics support the existence of negligence liability. Mere allegations are insufficient. Consequently, Plaintiff has failed to demonstrate that her negligence and other state law claims survive.

Similarly, Plaintiff's citation to *Blankenhorn v. City of Orange,* 485 F.3d 463, 487 (9th Cir. 2007) does not preclude the immunity under Government Code section 820.2 because the Officers' actions in this case were entirely reasonable.

Surprisingly, Plaintiff's Opposition fails to meaningfully oppose summary judgment as to the Bane Act claim. In fact, Plaintiff merely links the Bane Act and negligence claims, essentially arguing they are subject to the same analysis. Plaintiff ignores that a claim under the Bane Act requires more than mere negligence, i.e., a specific intent to harm Plaintiff. As Plaintiff has failed to refute this element, her claim necessarily fails. *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043-45 (9th Cir. 2018) (the Bane Act requires a showing of "specific intent to violate the arrestee's right to freedom from unreasonable seizure."), quoting *Cornell v. City & County of San Francisco*, 17 Cal.App.5th 766, 801 (2017).

- 18 -

### F.     The Claim for Punitive Damages is Deficient

Plaintiff also ignores that while there is no evidence that the Officers acted with malice, oppression, or reckless disregard toward Murillo-Nix.  SUFs 41, 45.  Further, the City, a public entity, cannot be liable for punitive damages under the governing law.  See *Dang v. Cross*, 422 F.3d 800, 810 (9th Cir. 2005).

## III.    CONCLUSION

For the reasons stated above, Defendants respectfully request this Motion be granted in its entirety and judgement entered in favor of Defendants.

Dated:  December 1, 2023         Respectfully submitted,
                                 **ORBACH HUFF + HENDERSON LLP**

                                 By: _/s/ Kevin E. Gilbert_
                                      Kevin E. Gilbert
                                      Carolyn M. Aguilar
                                      Attorneys for Defendants
                                      OFFICER JESUS MARTINEZ and
                                      OFFICER KYLE GRIFFIN

ORBACH HUFF + HENDERSON LLP

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,601 words, which complies with the word limit of L.R. 11-6.1.

Dated:  December 1, 2023    Respectfully submitted,
**ORBACH HUFF + HENDERSON LLP**

By:  _/s/ Kevin E. Gilbert_
      Kevin E. Gilbert
      Carolyn M. Aguilar
      Attorneys for Defendants
      OFFICER JESUS MARTINEZ and
      OFFICER KYLE GRIFFIN

ORBACH HUFF + HENDERSON LLP